**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: SERESTO FLEA AND TICK COLLAR MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3009 |
| | Master Docket Case No. 1:21-cv-04447 |
| | Hon. John R. Blakey |
| This Document Relates to: *Dahlgren v. Bayer Healthcare LLC, et al.*, Case No. 1:21-cv-04489 (S.D.N.Y.) | |

**AMENDED COMPLAINT**

Plaintiff Darlene Dahlgren ("Plaintiff") on behalf of herself and all others similarly situated, by her attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

**INTRODUCTION**

1.      Seresto flea and tick collars (the "Seresto Collars")—some of the top-selling flea and tick preventative collars in the country—have been associated with tens of thousands of pet injuries and approximately 2,500 pet deaths. Defendants Bayer Healthcare LLC, Bayer Corporation, and Bayer AG (collectively "Bayer") and Elanco Animal Health, Inc. ("Elanco") (collectively, "Defendants") hid that information from, and patently misled, consumers. Indeed, even after reports of Seresto's serious side effects became public, Defendants have downplayed the reports and continued to represent that Seresto is safe for pets to use when it is not.

2.      The danger of Seresto Collars is so severe that it instigated a Congressional investigation by the House Committee on Oversight and Reform's Subcommittee on Economic and

Consumer Policy. After an in-depth, 16-month investigation that involved review of internal documents of the Defendants, which were not made available to the public, the House Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy issued a report in June of 2022 (the "Seresto Congressional Report") recommending a recall of the Seresto Collars due to the dangers they posed to pets and humans.[1]

3.      Indeed, since Seresto Collars were launched in 2012, the U.S. Environmental Protection Agency ("EPA") has received reports of approximately 2,500 pet deaths and more than 98,000 other incident reports—all linked to the collars. Seresto's danger stems from its unique combination of imidacloprid and flumethrin, two dangerous pesticides that, together, magnify their harmful effects. According to one retired EPA employee, Seresto Collars "have the most incidents of any pesticide pet product she's ever seen."[2]  And as stated in the Seresto Congressional Report: "[t]he Seresto collar had nearly three times the rate of total incidents, and nearly five times the rate of "Death" or "Major" incidents, as the second most dangerous flea and tick product.  The [Seresto] collar had nearly 21 times the rate of total incidents, and over 35 times the rate of "Death" or "Major" incidents, as the third most dangerous product."[3]

4.      Moreover, due to the dangers and risks posed by the Seresto Collars, Canada—after reviewing incident and toxicology studies—banned the sale of the Seresto Collar within its borders based on its conclusion that the Seresto Collar posed too great a risk to animals and humans to be

---

[1] Staff Report (June 15, 2022), *available at* https://oversight.house.gov/sites/democrats.oversight. house.gov/files/2022.06.15%20ECP%20Seresto%20Staff%20Report%20FINAL.pdf (hereinafter "Seresto Congressional Report").
[2] Popular Flea Collar Linked to Almost 1,700 Pet Deaths, USA Today (Mar. 2, 2020), *available at*, www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001.
[3] Seresto Congressional Report at 1.

safe for use. Other countries have required that severe warnings be placed on the packaging of the Seresto packaging to warn consumers of the risk, such as including a poison warning.[4]

5.     At no point have Defendants disclosed this information to United States consumers. To the contrary, they have maintained and represented that Seresto Collars are safe for pets to use. Despite Defendants' claims, Seresto Collars have resulted in millions of dollars in damages for pet owners—both in the form of collars that they overpaid for or would have never purchased had consumers known of Seresto's dangers, and also in veterinary and other medical expenses incurred by pet owners with pets injured by the Seresto Collar and its pesticides.

6.     Even worse, according to a senior scientist at the Center for Biological Diversity—an expert on pesticide regulations in the United States—the reported deaths and injuries are "just the tip of the iceberg." "Most of the time, people are not going to make the connection or they're not going to take an hour or so out of the day and figure out how to call and spend time on hold."[5]

7.     Defendants, of course, have not warned consumers because Seresto Collars accounted for more than **$300 million in revenue in 2019 alone**. Seresto pet collars are an enormous business segment, and, consequently, Defendants have refused to make the product safer or warn consumers about the potential risks. While Defendants sell Seresto Collars as "veterinary medicine," that is a misnomer. The over-the-counter collars do not constitute "medicine" but rather, are toxic pesticides that can harm—and even kill—pets.

---

[4]     *E.g.*, https://www.amazon.com.au/Seresto-Over-Flea-Collar-Collars/dp/B01FXI5CHY/ref=sr_1_1?crid=1W7YYEQYPKA3J&keywords=Seresto&qid=1661356304&sprefix=seresto%2Caps%2C123&sr=8-1 (last visited Nov. 3, 2022) (Amazon Australia's Seresto Collar listing, which includes a warning to "not allow children to play with the collar" and poison warning).
[5] Popular Flea Collar Linked to Almost 1,700 Pet Deaths, USA Today (Mar. 2, 2020), *available at*, www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001.

## JURISDICTION

8.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 ("CAFA") because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

9.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

**Plaintiff Darlene Dahlgren**

10.      Plaintiff Darlene Dahlgren is a resident of the State of New York. She purchased a Seresto Collar for her dog, Snookie. She used the Seresto Collar on Snookie, which caused her serious health issues. Plaintiff Dahlgren purchased the Seresto Collar from Petco. Plaintiff Dahlgren purchased the Seresto Collar because, consistent with Defendants' representations, she believed it would promote her dog's health and not cause her harm.

**Defendants**

11.      Defendant Bayer Healthcare LLC is a Delaware limited liability company headquartered in Whippany, New Jersey. It initially developed the Seresto pet collar and manufactured, advertised, labeled, and sold Seresto from 2013 until August 2020, when Bayer Healthcare LLC sold its Animal Health Division, including all rights to the Seresto product, to Elanco Animal Health LLC. Seresto Collars manufactured and labeled by Defendant Bayer are still sold today in May 2022.

12.     Defendant Bayer Corporation is the parent of Defendant Bayer Healthcare LLC and is the co-creator and manufacturer of the Seresto Collars at issue.

13.     Defendant Bayer AG is the parent of Defendant Bayer Corporation and the co-creator and co-manufacturer of the Seresto Collars at issue.

14.     Defendant Elanco Animal Health Inc. is the world's second-largest animal health company.  It is headquartered in Greenfield, Indiana and incorporated in Indiana.  In August 2020, Elanco acquired Bayer's animal health division, including Seresto, for $7.6 billion. Elanco continues today to own, manufacture, advertise, and sell the Seresto pet collar. The company touts itself as a "global leader in animal health dedicated to innovating and delivering products and services to prevent and treat disease in . . . pets."[6] Elanco asserts it adheres to core values and "cultivat[es] a culture of integrity, respect for people, and excellence."[7]

## FACTUAL ALLEGATIONS

### General Factual Allegations Relevant to Each Plaintiff and Putative Class Member

15.     At the time of purchase, Plaintiff reasonably believed the Seresto Collars were a safe and effective means of flea and tick prevention and did not present a risk to her pet's health to use, based on a review of the Seresto Collar's packaging. Plaintiff purchased the Seresto Collars with the intention of ensuring her pet's health and safety.

16.     On the front of each package, in bold and capitalized font, where it cannot be missed by consumers, the Seresto Collars promise to provide "8 MONTH PROTECTION" for one's pet. Yet despite Defendants' representations, the Seresto Collars did not provide 8 months of protection but instead posed a significant risk to pets for the reasons described herein.

---

[6]   *See*   https://investor.elanco.com/#:~:text=Elanco%20Animal%20Health%20(NYSE%3A%20 ELAN,and%20society%20as%20a%20whole.
[7] https://www.elanco.com/en-us/about-us/governance/e-and-c.

17. Nowhere on the Product packaging or labeling were there warnings or other representations indicating that the Seresto Collars may harm or kill pets, or that the Seresto Collars could cause any adverse side effects at all. For this reason, Plaintiff never viewed or read any such warnings.

18. Had Defendants disclosed the existence of the serious safety risks associated with use of the Seresto Collars, and made Plaintiff aware of such risks, Plaintiff either would not have purchased or used the Seresto Collar, or else would have paid significantly less for it. Consequently, Plaintiff did not receive the benefit of her bargain.

19. Due to Defendants' misrepresentations and omissions, Plaintiff did not receive the product she intended to purchase—that is, a flea and tick collar which was fit for its ordinary purpose, the safe administration of flea and tick prevention to her dog. Thus, Plaintiff did not receive the benefit of her bargain.

20. If the Seresto Collars functioned as advertised—and did not pose any serious risk to her pet, to herself, or to others, associated with the Seresto Collar's use—Plaintiff likely would, or at least would consider, purchasing additional Seresto Collars again in the future. Alternatively, if the Court were to issue an injunction ordering Defendants to comply with advertising and warranty laws, and to remediate the serious and ongoing safety risks associated with Seresto Collars, Plaintiff likely would, or at least would consider, purchasing additional Seresto Collars again in the future. However, as currently labeled and advertised, Plaintiff is unable to rely on the current labeling and advertising of the Seresto Collars when considering whether, in the future, to purchase the Seresto Collars again.

**Pet Flea and Tick Collars**

21. The United States consumer market for pet products is substantial. Pet owners

purchase a wide variety of products to ensure the health and safety of their pets.

22.     An important element of a pet's health regimen includes flea and/or tick preventative medication. The American Kennel Club, for example, writes that "dog owners know that their canine companion's warm body and soft fur is a personal paradise for these insects" and that "once they move in – and begin feeding on your pet's blood – they can cause a wide range of health problems, from skin infections to Lyme disease."[8] One such purported flea and tick preventative medication is Seresto, a brand of pet collars that is marketed as safe for the pet, but capable of killing and repelling fleas and ticks when worn by the pet.

23.     A pest repellant collar is a device used to protect dogs and cats from fleas and ticks. The collar is a plastic strip made by mixing a pesticide with plastic resins and molding the mixture into a thin strip.[9,10] They are designed to deliver enough pesticide to continually kill fleas and/or ticks for several months.[11] The pesticide must be safe for prolonged skin contact with animals and non-toxic in the event the animal chews on the collar.[12]

24.     The collars are designed to provide animals with effective protection against parasitic infestations.[13] To achieve this goal, both the pesticide composition and the components used to make the collar must be carefully selected. The most important selection criterion is that the pesticide must efficiently kill pests without being toxic to pets.[14]

---

[8] *See* https://www.akc.org/expert-advice/health/flea-and-tick-prevention-tips.
[9]     US Patent No.: 7,910,122 B2 (Issued Mar. 22, 2011), *available at* https://patents.google.com/patent/US7910122B2/en.
[10] *See* https://www.encyclopedia.com/science-and-technology/technology/technology-terms-and-concepts/flea-collar.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

**Defendants Created, Manufactured, Advertised, and Sold the Seresto Collars**

25.     In or around March 2012, Bayer began importing, distributing, marketing, and selling Seresto Collars across the United States. Around the time of the launch, Bayer issued a press release announcing the product and describing its supposed benefits. The press release described Seresto Collars as pet collars that offered 8 months of tick and flea prevention for dogs and cats. Bayer represented that Seresto Collars "offer[] pet owners the performance they expect from their monthly topicals, but deliver[] the active ingredients in an easy-to-use, convenient collar." Further, Bayer promoted that the collar would provide "effective protection against fleas and ticks" for "eight months", meaning pet owners would no longer suffer the "hassle of remembering to apply monthly treatments." Bayer bragged that "no other flea and tick preventative on the market provides 8 months of effective flea and tick protection with only one single application[.]"[15]

26.     In 2020, Seresto was sold to Defendant Elanco Animal Health, Inc.[16] The acquisition of the Seresto brand was a key component in Elanco Animal Health's $7.6 billion acquisition of Defendant Bayer Healthcare LLC's pet products division.[17]

27.     Elanco still owns the Seresto brand today, and Elanco still sells the Product to pet owners seeking safe and effective flea and tick prevention devices. Elanco touts itself as a "global animal health leader" that "rigorously innovate[s] to improve the health of animals", and asserts it adheres to three core values: "Integrity: Do the right thing in the right way", "Respect: Respect for

---

[15] Jan. 20, 2013 Press Release, *available at* https://www.prnewswire.com/news-releases/bayer-healthcare-introduces-seresto-offering-easy-to-use-flea-and-tick-control-for-dogs-or-cats-that-lasts-eight-months-187650591.html.

[16] *See* https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning.

[17] *Id.*

people, our customers, and the animals in their care", and "Excellence: Be accountable. Continuously improve. Deliver with discipline."[18]

28.    Upon information and belief, Defendant Bayer AG has manufactured the Seresto Collars throughout the Class Period, both for Defendant Bayer Healthcare LLC and Defendant Elanco Animal Health, Inc.

29.    Defendants fully know of the hardship, both financially and emotionally, of caring for a sick pet. For example, Defendant Elanco claims it "understand[s] the unique and loving bond pet parents share with their pets" and promises "to make sure your pets live a longer, healthier life." It also claims that its "animal research and development focuses on innovative, effective products and therapeutic solutions for pets" that "treat pain and prevent disease, enhance and extend quality of life, and improve the type of care that pets receive."[19]

30.    Defendants rake in billions of dollars from pet owners. In 2020, despite the coronavirus economic downturn, Elanco saw revenues exceed $3.25 billion. The Seresto brand and Seresto Collars, specifically, have been immensely profitable.

31.    Since 2012, Defendants have sold more than 33 million Seresto Collars in the United States.[20]

32.    Seresto Collars are currently sold for prices significantly higher than comparable products. For example, consumers may pay as much as $60 for one collar or as much as $110 for a two-collar package. In comparison, Sentry flea and tick collars sell for $6.89.[21]

---

[18] *See* https://www.elanco.com/en-us/about-us/about-elanco.
[19] *See* https://www.elanco.com/en-us/products-and-services.
[20] *See* Statement of Jeffrey Simmons (June 15, 2022), https://oversight.house.gov/sites/democrats. oversight.house.gov/files/Simmons%20Testimony.pdf.
[21] *See* https://www.petco.com/shop/en/petcostore/product/sentry-dual-action-flea-and-tick-collar-for-dogs (last visited Nov. 3, 2022).

33. The Collars are available in three sizes: Small Dogs, Large Dogs, and Cats, each of which bears the uniform front-label representation of providing "8 MONTH PROTECTION" to pets (see Image 1 below):







 

*Image 1.* **Pictures of the front and back labels on the Seresto pet collar packaging.**

34.     Seresto Collars have been extremely lucrative for Defendants. For example, in 2019, Bayer reported revenues exceeding $300 million for just its Seresto Collars.[22] Bayer's 2018 annual report indicates Bayer was "focusing on maximizing the continued growth of the innovative Seresto collar," noting it was one of Bayer's "best-selling animal health products" with 28.5% growth in sales.[23] In 2016, Bayer reported 55.4% growth in Seresto sales.[24] Similarly, in the fourth quarter of 2020 alone, Elanco earned $64 million from the sale of this product. Elanco claims that Seresto is the "#1 selling non-prescription flea and tick brand."[25]

35.     In marketing the Seresto Collars, Defendants conveyed to Plaintiff and the other Class Members that they could be safely used on their pets. The packaging itself uniformly

---

[22]  Bayer 2019 Annual Report, *available at* https://www.bayer.com/sites/default/files/2020-11/bayer-ag-annual-report-2019_6.pdf.

[23]  Bayer 2018 Annual Report, *available at* https://www.bayer.com/sites/default/files/2020-04/bayer_ar18_entire.pdf.

[24]  Bayer 2016 Annual Report, *available at* https://www.bayer.com/sites/default/files/2020-05/ar-2016.pdf.

[25]  *See* https://petbasics.elanco.com/us/our-products/seresto.

represents that it provides "8 MONTH PROTECTION." Additionally, Defendants claim the Seresto Collars can be used without consultation with a veterinarian, for example, by advertising: "**no prescription required**,"[26] "**vet-recommended**,"[27] and marketing videos on Elanco's YouTube channel featuring veterinarians promoting Seresto Collars.[28]

36.     Seresto products are intentionally marketed directly to consumers. For example, Elanco's website states that pet owners who lack professional veterinary knowledge can obtain "the information you need about this product" from Elanco's website, claiming Seresto was subject to a 2014 "in-clinic experience trial" by which veterinarians recommended the Seresto Collars (see Image 2 below):

**Field Study Enrolled Participants**

| 36 | 701 | 1576 | 432 |
| VETERINARY CLINICS | HOUSEHOLDS | DOGS | CATS |

**Veterinarian Responses**

- 97% of veterinarians were satisfied or very satisfied with Seresto® for dogs or cats after 8 months (Dogs n=32, Cats n=27)[1]

- 94% of veterinarians were likely or very likely to recommend Seresto® for their dog or cat patients (Dogs n=32, Cat n=28)[2]

*Image 2.* **A picture of Seresto's purported 2014 clinical trial results.**[29]

37.     However, the "study" touted on Elanco's website was not a genuine trial of clinical significance as Defendants merely assessed "satisfaction" over an 8-month period. And those

---

[26] *Id.* (emphasis in original).

[27] *See* https://petbasics.elanco.com/us/campaign/seresto-safety (emphasis added).

[28] *See* https://www.youtube.com/watch?v=zqhUbfgTnWg.

[29] *See* https://www.elancodvm.com/our-products/seresto/seresto-dogs#section-Concerns.

veterinarians and participants were compensated for participating in the "study."[30]

38.     Defendants' marketing also misleadingly conveys that the Seresto Collars function without entering a pet's body, stating that the "active ingredients spread from the site of direct contact **over the skin surface**,"[31] or implying that Seresto provides "nonsystematic protection," unlike oral products that enter a pet's bloodstream (see Image 3 below):



**Systemic vs. nonsystemic protection**

With oral preventives, active ingredients are ingested into the bloodstream and require fleas and ticks to bite to die. But the nonsystemic protection of Seresto® distributes them across the coat and skin — so fleas and ticks don't have to bite your pet to die.

*Image 3.* **Defendants' representation of Seresto's pesticides spreading over pets' bodies.**[32]

39.     Defendants also emphasized the importance of the "**Bayer Polymer Matrix**."[33] This is part of Defendants' patented "continuous release technology," which—they claim— "ensures that both active ingredients [*i.e.,* the pesticides] are continuously released in low concentrations" from the collar towards the animal.[34]

40.     Defendants knew or should have known that their statements and conduct caused the public and consumers to believe that the design of the Seresto Collars made pesticide

---

[30] *Id.*

[31] *See* www.petbasics.com/our-products/seresto/#additional-resources (emphasis added).

[32] *See* https://petbasics.elanco.com/us/our-products/seresto.

[33] *See* https://www.elancolabels.com/seresto-small-dog.

[34] *Id.*

overdosage and/or overexposure unlikely, demonstrated, for instance, by the following exchanges involving Defendants' distributor Chewy, who sold Seresto Collars:

**After 8 months when you remove the collar, how long do you need to wait before you can put on a new flea collar?**

3 👍  Due to Seresto's low-dose, controlled-release technology, a new collar can be applied immediately.
By chewy on Feb 6, 2019 | Report ⚐

\* \* \*

**Is this safe to use on dogs around a toddler as long as the toddler does not play with the collar?**

9 👍  The active ingredients in Seresto® are released in low concentrations from within the collar to the pets skin. As long as the child is not handling the collar it will be safe for them to be around the pet.
By chewy on Nov 7, 2018 | Report ⚐

\* \* \*

**Can I remove the collar during the night? Our dog sleep with us in bed.**

12 👍  There is no need to remove the Seresto Dog Flea and Tick Collar at night even if your pet is sleeping with you. The collars have been rigorously tested to be sure they are safe for pets and people.
By chewy on Jul 7, 2019 | Report ⚐

41.     Elanco also owns or otherwise operates the PetBasics website and YouTube Channel. One PetBasics video claims Seresto is the "#1 selling non-prescription flea and tick brand," and links to an article on Petbasics.com that states, "Seresto for Dogs offers the performance [pet owners] expect form a monthly flea and tick preventative with the non-greasy, easy-to-use convenience of a collar."[35] Elanco additionally claims Seresto Collars use an

---

[35] https://www.elancodvm.com/our-products/seresto/seresto-dogs.

"Sustained Release Technology"[36] that "works similarly to a monthly topical in the fact that the active ingredients spread from the site of direct contact over the skin surface."[37] Elanco explains that "[t]he active ingredients in Seresto are released in low concentrations from within the collar and . . . . a new supply is continuously replenished in low concentrations for 8 months."[38]

42.     Elanco asserts that Seresto "is designed to help protect pets from fleas and ticks that can negatively impact a pet's quality of life and may cause dangerous diseases" and offers information about prevention, treatment and the ways you can help protect your dog.[39]

**The Seresto Collars Use a Dangerous Combination of Pesticides**

43.     During the last few decades, in the management of pest control and pesticides' resistance, newer classes of insecticides such as pyrethroids (including Flumethrin) and neonicotinoids (including Imidacloprid) have replaced chlorinated hydrocarbons, organophosphates and carbamates classes of insecticides.

44.     Defendants advertise that they use a combination of two of these newer classes of pesticides, imidacloprid and flumethrin, with a unique, synergistic product. The labeling and package insert for Seresto Collars states the two "active ingredients" (*i.e.* pesticides) are: imidacloprid (10%) and flumethrin (4.5%).

45.     In marketing the Seresto Collars, Defendants claim that "[f]lumethrin **works together** with imidacloprid to provide **dual action** against fleas and ticks. No other product has this **combination** of ingredients" and that "[s]tudies show that fleas and ticks are highly susceptible to the **combination** of imidacloprid and flumethrin found in Seresto."[40]

---

[36] https://petbasics.elanco.com/us/campaign/seresto-safety.
[37] https://petbasics.elanco.com/us/campaign/seresto-safety.
[38] *Id.*
[39] *See* https://petbasics.elanco.com/us/campaign/seresto-safety.
[40] www.petbasics.com/our-products/seresto/#additional-resources (emphases added).

46. Imidacloprid is a member of the neonicotinoid class of insecticides, targeting mainly fleas. Flumethrin is a synthetic pyrethroid insecticide targeting mainly ticks.

47. It is well established that both imidacloprid and flumethrin are neurotoxicants, making them capable of causing adverse effects in the central and peripheral nervous system, and their functions.

48. Imidacloprid causes mitochondrial damage, the generation of excess free radicals, oxidative stress, inflammation, apoptosis (programmed cell death), and reduced energy (ATP) production, in addition to alterations in metabolism of carbohydrate, lipid, amino acids, and nucleotides.[41]

49. As a result, toxic effects occur in the nervous system, liver, kidney, heart, skeletal muscles, lungs, reproductive and developmental, dermal, immune and endocrine systems. Imidacloprid is also known to cause cancer.[42]

50. Flumethrin can also produce toxic effects in nervous, liver, renal, dermal, cardiac, endocrine, reproductive, and developmental systems due to multiple biochemical mechanisms.

51. Following dermal, oral, or inhalation exposure, both imidacloprid and flumethrin are absorbed and metabolized primarily in the liver, including through the Cytochrome P450 (CYP450) pathway, such as by CYP450-mediated polysubstrate monooxygenases (PSMOs) (oxidative metabolism).

52. However, flumethrin may inhibit CYP450 metabolism, including inhibition of

---

[41] Zheng, M., Qin, Q., et al., *Metabolic disturbance in hippocampus and liver of mice: A primary response to imidacloprid exposure*, Scientific Reps. 10, Art. 5713 (2020); Xu, X, Wang, X., et al. *Neonicotinoids: Mechanisms of systemic toxicity based on oxidative stress-mitochondrial damage*. Archives of Toxicology 96: 1493-1520 (Jun. 2020).

[42] Tomizawa, M. & Casida, JE, *Neonicotinoid insecticide toxicology: Mechanisms of selective action*, Ann. Rev. of Pharmacology & Toxicology, 45: 247-268 (2005).

CYP450-dependent PSMOs activities (oxidative degradation). Consequently, concentrations of imidacloprid and flumethrin will be substantially greater in circulation and in tissue, increasing the toxicity of both flumethrin and imidacloprid, and their harmful metabolites.

53.     Toxicity of imidacloprid in mammals may also be due to its agonist action (binding affinity) at the nicotinic acetylcholine receptors (nAChRs) present in the different regions of the brain, spinal cord, peripheral nerves, autonomic ganglia, and skeletal muscles, causing spasms, tremors, and convulsions. Overstimulation of the nerve cells causes ataxia and paralysis.

54.     This is problematic as imidacloprid stimulates nAChRs and opens sodium channels—the "on-off switches" of the neurons—in these regions of the brain, spinal cord, peripheral nerves, autonomic ganglia, and skeletal muscles, causing spasms, tremors, and convulsions. This is exacerbated because flumethrin further keeps these sodium channels open, enhancing a pathway for imidacloprid and flumethrin to enter these regions. Consequently, the synergism between imidacloprid and flumethrin produces an effect well in excess of what either compound alone can induce, resulting in neurological injury, from paresthesia to paralysis.

55.     Despite recognizing flumethrin's dangers, Defendants seemingly never engaged in any independent unbiased testing of the Seresto Collars, but instead employed company-controlled studies (for example, through former-Bayer employee and current-Elanco employee, Dorothee Stanneck, DVM). Further, the publicly available studies of the Seresto Collars make no effort to consider long-term use.

56.     Independent studies have shown that even small doses of imidacloprid can negatively affect animals.[43] Household use of imidacloprid has also cause a range of side effects

---

[43] See Petition to Cancel Registration of PNR1427 (Brand Name Seresto), Ctr. for Biological Diversity, at 5-6 (Apr. 8, 2021), available at https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/2021-4-8-Petition-to-Cancel_SerestoCollarwExhs.pdf.

in humans, including skin rash, muscle tremor, difficulty breathing, vomiting, wheezing, lock jaw, memory loss, and renal failure.[44] The EPA has found that in mammals, including humans, cats, and dogs, "[t]he nervous systems is the primary target organ of imidacloprid."[45] In studies of the effect of imidacloprid on rats and mice—often studied as surrogates for humans—dietary exposure to imidacloprid included decreased movement and body weights, tremors, thyroid effects, retinal atrophy, and brain effects.[46] Worse, the EPA found that dogs were more sensitive to imidacloprid than the standard test animals (*i.e.*, rats and mice), including at doses seven times lower than the levels of toxicity for mice and rats.[47] Dogs exposed to imidacloprid suffered from severe tremors and trembling at medium to high doses.[48]

57. In addition to the EPA's findings, the California Environmental Protection Agency assessed imidacloprid. Its investigation found that acute oral exposure of imidacloprid to rats and mice caused tremors, decreased coordination and mobility, spasms, respiratory difficulties, and lethargy.[49]

58. An independent study by Murray State University found that one of the pesticides in Seresto Collars, imidacloprid, can cross the skin barrier and enter the blood of treated pets.[50]

---

[44] *Id.* at 6.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 6-7.

[48] *Id.* at 7.

[49] *Id.*

[50] Written Statement of Karen McCormack, Retired EPA Employee; U.S. House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy Hearing on Seresto Flea and Tick Collars: Examining Why a Product Linked to More than 2,500 Pet Deaths Remains on the Market, June 15, 2022, *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/McCormack%20Testimony .pdf.

59. Finally, a systematic review of peer-reviewed literature on the health effects of neonicotinoids, like imidacloprid, on humans found imidacloprid caused malformations of the developing heart and brain, including memory loss and finger tremors.[51]

60. Significantly, during the relevant Class Period, the Seresto Collars are the only end-use product in the nation that uses flumethrin, according to the EPA. The Bayer's Crop Science Division developed flumethrin in the 1980s and intended to use it with livestock, such as cattle (*e.g.*, Bayticol, Bayvarol). However, in or around 2003, Bayer sought to expand the market for its flumethrin, and began developing applications for dogs (*e.g.*, the Kiltix collar).

61. The Kiltix collar only used 2.25% flumethrin (in combination with propoxur). In sharp contrast, the Seresto Collar uses approximately double the amount of flumethrin (4.5%). Although the Kiltix collar contains less fulmethrin than a Seresto Collar, it carries a warning in some countries, like Australia, that it may cause paralysis and weakness.[52]

62. Intoxication of flumethrin can affect the nervous and muscular systems. Recent studies have shown that mammalian exposure to pyrethroids caused learning deficiencies and physiological effects associated with neurodegeneration, Alzheimer's disease, and Parkinson's disease, among others.[53] The EPA's 2012 human health risk assessment of flumethrin in pet collars indicated it has similar toxic effects to other pyrethroids. These included pawing, burrowing, writhing, salivation, coarse tremors, decreased body weights, and impaired motor activity.[54]

---

[51] *Id.* at 8.

[52] *See* Kiltix Tick Collar, *Vetshop Australia.com*, https://www.vetshopaustralia.com.au/dog-supplies/flea-tick/kiltix-tick-collar (last visited Nov. 3, 2022) (listing "Side Effects" including vomiting, diarrhoea, salivation, lethargy, and neurologic signs (weakness, paralysis)).

[53] *See* Petition to Cancel Registration of PNR1427 (Brand Name Seresto), Ctr. for Biological Diversity, at 8-9 (Apr. 8, 2021), *available at* https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/2021-4-8-Petition-to-Cancel_SerestoCollarwExhs.pdf.

[54] *Id.* at 9.

63.     Defendants have represented that they "thoroughly test[ed] Seresto, **including its active ingredients and collar components**, as part of its development for registration in the U.S. and approval globally" and also that defendants "closely monitor Seresto continuously to ensure its performance."[55] Defendants have conveniently hidden the tens of thousands of safety incident reports from consumers.

64.     Bayer, in fact, was well-aware of and previously acknowledged the risk of flumethrin outside of the context of its pet collars. According to the registration statement filed by Bayer's Animal Health Division with the EPA concerning flumethrin, Bayer warned of "Hazards to Humans and Domestic Animals," including that it "may be fatal if swallowed or absorbed through the skin" that it is also "[h]armful if inhaled" and that one should "[a]void breathing [its] dust." Specifically, the warning states:[56]

## PRECAUTIONARY STATEMENTS

### Hazards to Humans & Domestic Animals

**WARNING**
May be fatal if swallowed or absorbed through the skin. Do not get in eyes, on skin, or on clothing. Harmful if inhaled. Avoid breathing dust. Wash thoroughly with soap and water after handling and before eating, drinking, chewing gum, using tobacco or using the toilet. Wear coveralls worn over short-sleeved shirt and short pants, socks, chemical-resistant footwear, and gloves. Remove and wash contaminated clothing before reuse. Wear a dust/mist filtering respirator (MSHA/NIOSH approval number prefix TC-21C), or a NIOSH approved respirator with any N, R, P, or HE filter. Prolonged or frequently repeated skin contact may cause allergic reactions in some individuals.

65.     The Seresto Collars' "unique pharmacological synergism" that Defendants tout thus results in **increased toxicity**. Defendants knew or should have known of the increased toxicity

---

[55] www.petbasics.com/our-products/seresto (emphasis added).
[56] Flumethrin Technical, Notice of Pesticide Registration (Feb. 13, 2013), at 3, *available at* https://www3.epa.gov/pesticides/chem_search/ppls/011556-00154-20130314.pdf.

since the Seresto Collars' introduction in 2012, and, in fact, studies have long shown the toxicity of both pesticides alone and of their dangerous effects when combined.

66.     As Defendants admitted, these two pesticides are dangerous alone and are even worse when combined due to their "synergistic" effect.[57] It is that effect that is harming, and sometimes killing, the pets that wear Seresto Collars. One former EPA employee, for example, opined that the cause of Seresto's high adverse side effects is likely due to a reaction caused by the use of imidacloprid and flumethrin in combination.[58] As Nathan Donley, a scientist at the Center for Biological Diversity, explained when discussing the number of complaints, "[y]ou don't even see these kinds of numbers with many agricultural chemicals."[59]

67.     Indeed, although all flea and tick collars rely on some type of pesticides, no other flea and tick product has garnered as many complaints or resulted in as many complications as Seresto Collars. For instance, other flea and tick collars using different pesticides have had significantly fewer complaints than the Seresto brand. From 1992 to 2008, the EPA received about 4,600 incident reports regarding pet collars that use a different pesticide, tetrachlorvinphos, including 363 reported deaths. That is 30 times fewer incidents and 10 times fewer deaths than Seresto Collars have caused in just half the time (only 8 years). The National Resources Defense Council in 2009, before Seresto Collars were on the market, found tetrachlorvinphos was one of the most dangerous pesticides at that time. The far higher number of complaints from Seresto

---

[57] Petition to Cancel Registration of PNR1427 (Brand Name Seresto), Ctr. for Biological Diversity, at 10-11 (Apr. 8, 2021), *available at* https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/2021-4-8-Petition-to-Cancel_SerestoCollarwExhs.pdf.
[58] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning.
[59] *Id.*

Collars and the severity of the adverse effects suggest that the pesticides in Seresto Collars are the most dangerous flea and tick pesticides on the market.

68.     Defendants were also on notice of the dangers that flea and tick collars pose when they release too much of the product too quickly. For instance, a study done by the Natural Resources Defense Council in 2009, three years before Bayer first released Seresto, found that the chemicals in flea and tick collars "are highly hazardous to animals and humans, and can damage the nervous system (including the brain), and cause cancers."[60] That study determined that "high levels of pesticide residue can remain on a dog's and cat's fur for weeks after a flea collar is put on an animal" and that "[r]esidue levels produced by some flea collars are so high that they pose a risk of cancer and damage to the neurological system of children up to 1,000 times higher than the EPA's acceptable levels."[61]

69.     Notably, Defendants advertise that the Seresto Collars' pesticides or "active ingredients" spread on the pet's body, "spread[ing] from head to toes" and do so "continuously" over 8 months.[62]

70.     Moreover, the Seresto Collars contain a third, undisclosed ingredient that may be toxic in high doses. Seresto Collars have a third, unspecified "Tradesecret" ingredient. This secret ingredient is toxic at the following rates: with respect to dermal toxicity, the mystery ingredient indicates for LD50 rabbit: > 5,000 mg/kg; with respect to oral toxicity, it indicates for LD50 rat: 4,640 mg/kg, and with respect to acute toxicity, the "Tradesecret" ingredient indicates LD50 intravenous mouse: 23 mg/kg. Furthermore, this "Tradesecret" chemical can enhance the toxic

---

[60] Miriam Rotkin-Ellman, et al., *Issue Paper: Toxic Chemicals in Flea and Tick Collars*, Natural Resource Def. Council (2009).
[61] *Id.*
[62] https://petbasics.elanco.com/us/campaign/seresto-safety.

effects of flumethrin.[63]

71.     In addition, the Seresto Collar's design exposes pets to high, dangerous levels of pesticides over an 8-month span (since the Seresto Collars are meant to be worn continuously for 8 months). That is not the case with most flea and tick preventatives.

72.     Defendants, by contrast, advertised the Seresto Collar as a "set-it and forget-it" product that packed 8 months' worth of product into a single collar. Supposedly, Seresto Collars are designed to prevent pesticides from being released in high doses. However, Defendants acknowledged that Seresto Collars release the pesticides "continuously" and that the pesticides spread throughout the pets' skin, and that the pesticides become effective within just 6 hours of application. The quick effectiveness of Seresto Collars' pesticides suggests that the pesticides are actually spreading quickly in high doses—an unsafe dosage of this pesticide combination—instead of in small, steady doses over 8 months, as indicated on the front of the packaging.

73.     Others have raised the same concern. For example, the California Department of Pesticide Regulation rejected certain studies when evaluating Seresto Collars, finding that "the multiple collar tests evidently greatly under-estimate exposures" and thus, the Department "did not accept th[ose] adult dog and cat studies[.]"[64]

74.     Because Seresto Collars' "Sustained Release Technology" continuously releases imidacloprid and flumethrin over an 8-month span, it ensures a high pesticide exposure—and the exposure to the dangerous synergistic effects of the two pesticides together—which can result in numerous and often dangerous side effects to consumers' pets.

---

[63] Seresto Collar Materials Safety Data Sheet, at 5, *available at* https://datasheets.scbt.com/sc-395480.pdf.
[64] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost-1700-pet-deaths-the-epa-has-issued-no-warning.

75. Whether the dangers stem from the combination of two pesticides (which no other product uses), the third secret ingredient that is toxic, the amount of pesticide in the Seresto Collar, or a defective pesticide release technology, Seresto Collars cause significant harm. Given the many complaints issued to Defendants, to government agencies like the EPA, or made publicly online, Defendants knew or should have known Seresto Collars were dangerous to pet health. But Defendants failed to warn the public and, instead, represented that Seresto Collars were safe and effective.

**Numerous Consumer Complaints Put Defendants on Notice of Seresto's Harmful Effects**

76. Separate and apart from the EPA data, there are numerous non-EPA reports of serious adverse incidents involving the Seresto Collars, of which Defendants knew or should have known. For example, users of the Seresto Collars reported to Defendants, directly or via its retailers and distributors, that the Seresto Collars caused pets to suffer seizures, liver failure, an inability to walk, disorientation and aggression, cancerous tumors, severe skin damage, brain damage, severe vomiting, bloody bowel movements, pain, and death, including these examples from online reviews:

 Hjorrdis

⭐☆☆☆☆ **WARNING - This collar is extremely toxic to some cats ...**
Reviewed in the United States on June 10, 2018
**Verified Purchase**

WARNING - This collar is extremely toxic to some cats. My cat stopped eating, and by the time I realized it was the collar's fault she had already started liver failure. We are force feeding her to get her back up to snuff. The packaging warns about dermatitis issues, but not at all about the potential for toxins to cause your cat to stop eating. Cats cannot go without eating for long periods of time. Watch your cat VERY CAREFULLY after applying this collar and remove it if you see any signs of odd behavior - lethargy, decreased appetite, etc. It may take her days to recover after removal, so watch CAREFULLY.

\* \* \*



⭐☆☆☆☆ **If I could give a 0 I would, because this collar took my boy from me.**
By Natasha on March 30, 2021

This collar killed my dog a couple weeks ago. After I put the collar on him he began slowing down and his eyes got real puffy. I then decided to take the collar off cus my boy just wasn't his playful self anymore. Within 2 days he was dead. 😢 Don't chance this collar.

Images in this review



\* \* \*

25

 Anna T.

⭐☆☆☆☆ **LONG BUT PLEASE READ: caused permanent epileptic brain damage**
Reviewed in the United States on December 23, 2016

DO NOT GET THIS PLEASE!!! PLEASE READ MY STORY. It is long but I want everyone to be aware something that Seresto does not warn you about. I am not one to make wild, conspiracy claims about products and just trust scientists and doctors who create medication, so coming from me, this is real.

About a year ago, my parents got this collar for our family dog (not cat but this applies anyways) while I was away at university. When I came home for a break I notice my dog having these strange head tremors randomly where her head would jerk for a few seconds. My parents never noticed it until I pointed it out to them because they don't pay attention to these things, so they couldn't tell me when the head tremors started. We took her to a vet who said they were small seizures, but not dangerous ones, and because they were so small, they didn't warrant anti-seizure medication. He said the risk associated with the medicine could potentially be more harmful than these small and apparently painless seizures, which he claimed were due to old age. I did not correlate it to the flea collar because she is old, and I never was warned of any seizure side effect or anything like that due to just what i thought was a topical flea medicine. And like i said, I wasn't home for the first few months of her having the collar to notice the onset's correlation.

When the collar expired, we took it off. I noticed that the head tremors were occurring less frequently -- most days there wouldn't be any, but they were still happening on occasion and especially during car rides. I still didn't put it together that they were caused by the collar.... until this past week. We noticed fleas on her again and bought a new collar after a few months of no collar. Within 24 hours, the seizures were back and were MUCH MUCH worse than normal. The head jerking was violent and frequent and she seemed to be in pain, and during one of them she bit her tongue and it started bleeding. After the tremors stopped, she looked terrified and shocked.

I googled Seresto seizures and it turns out that there are many cases of people reporting seizures and other neurological conditions caused by this medication. I feel terrible because I didn't do any research on it the first time we had the collar. I just assumed that a topical flea medicine was no big deal, but seresto's main ingredient is a neurotoxin called Imidacloprid that messes up the brain functioning of insects, and in some cases: dogs too. ***I figured it was a pesticide but not a freaking neurotoxin!!!***

I called the vet and he backed this up saying that it is possible and he has seen it before in dogs. I feel terrible that I didn't correlate it the first time, but mainly I am FURIOUS that neither the vet nor seresto's warnings say ANYTHING about seizures. The only warnings on the pamphlet say skin irritations and hair loss in the area. Yet it has become very obvious to me and to many other people online who experienced the same thing, that this neurotoxin is a toxin to dogs as well. In the information pamphlet they also use a bunch of different words to describe Imidacloprid avoiding what it actually is: a poisonous toxic brain-altering pesticide. Imidacloprid is criticized as causing the endangerment of bees and frogs... like this is no joke. If I would have known that this is a TOXIN TO THE BRAIN, i would've never purchased it, but i just never would've thought such a thing, and they never call it a neurotoxin in any of their warnings. Its just absurd and nefarious for them to not put any warnings at all about what this pesticide is actually capable of doing. But unfortunately, animal medications have a lot less restrictions than human medications.

The vet said that removal will probably reduce but not cure, because the part of the brain that causes seizures has been altered permanently. I am devastated. It is NOT WORTH IT. PLEASE! Some of the cases online reported medical emergencies near to death because of violent seizures, birth defects, and other serious issues due to Seresto. Fleas are nothing compared to epileptic brain damage and death. Get flea soaps or literally anything else other than something that contains a freaking neurotoxin.

* * *

 Tim S.

⭐☆☆☆☆ **BEWARE!!!**
Reviewed in the United States on June 11, 2020
**Verified Purchase**

Please beware of this product or for that matter maybe any other flee/tick collars. I have two dogs and saw the high rating on this product and decided to purchase and give a try. The day after receiving this product I placed them (correctly, according to the instructions) on my dogs. Since then, about 5 days after putting collars on, one of my dogs has become deathly sick, she has had uncontrollable diarrhea and now is going on 3 days of not eating anything, I am fearfully that she is not going to make it. My other dog, just starting a day ago, has stopped eating. I took the collars off both dogs yesterday 6.10.2020. This is the only change that has occurred with my dogs, all regular food and water has not changed. I am no scientist, however, the only variable that has changed since both of them being sick, is the fact that I purchased this product and placed it on my dogs. My only hope, beside that my dogs live through this, is that others read this post and DO NOT PURCHASE THIS PRODUCT and DO NOT PUT IT ON YOUR PETS. I feel terrible, because when it comes down to it, it was me that put the freaking collar on my dogs and now there is a very high chance that I will be the one responsible for killing my best friends. I am not looking for a refund, I am only writing this so that others will hopefully use better judgement than I did when deciding to use this product or others similar to it!!!!

Update...Had to put down one of my dogs yesterday 6.15.2020

* * *



⭐☆☆☆☆ **WARNING: Cancer Causing Collar**

By Carolyn K. on March 15, 2019

Please don't risk it! My healthy 8 year old cat developed oral cancer (squamous cell carcinoma) which escalated rapidly and I had to have her euthanized just 4 weeks after she displayed symptoms. Cats who wear flea collars are at least 5 times more likely to develop this deadly and horrifying cancer. I did not know this until it was too late. I truly believe the cause of my girl's cancer was wearing this flea collar. Cats should not be in these things - with the amount of licking they do they are exposed to the toxic pesticides to an unsafe degree. She was unable to groom, eat or drink because the growth under her tongue caused her so much pain. I wish I could go back and never order this collar. I might would still have my sweet girl.

Images in this review

 

\* \* \*

 Lou

⭐☆☆☆☆ **Tremors Can Be A Side Effect**

Reviewed in the United States on April 29, 2018

Verified Purchase

I put the collar on my adult male cat and after about 48 hours he starting exhibiting tremors in his head. His head and ears were twitching. Both of the main ingredients in Seresto (Imidacloprid and Flumethrin) list tremors as a possible side effect in addition to a number of other things. I removed the collar and within 12 hours the tremors stopped.

\* \* \*

27

 Tina Carroll

⭐☆☆☆☆ **Caused Problems with Hind legs//Hip**

Reviewed in the United States on April 24, 2018

Verified Purchase

One week after putting this color on my schnoodle, he started having problems with his hind legs. This progressed until he could hardly walk. removed the collar and took him to the vet. X-rays didn't show anything wrong so he was given pain medication. 5 days later he was fine. One week later I put the collar back on him and he began to have problems again with his hind legs. Took the collar off again and two days later he was fine. My only conclusion is that his problems were caused by this collar. Unfortunately, its passed the 30 days from purchase and I cannot return it. Would love to have my money back.

\* \* \*



⭐☆☆☆☆ **STAY AWAY FROM SERESTO COLLAR.**

By Rickmans on March 12, 2020

People are rite. My little dog started having seizures so I was told she needs an MRI. I spent $3,300 to have one done and found out parts of her brain are completely gone. I have posted a picture of her MRI so everyone can see for there self. All the white spots except for the two round spots in the middle are missing brain. Since I took off the collar she has had no seizures at all. I did wash her with dawn dish soap to remove any residue from her skin as well. Stay away from these collars. I have spent $22,000 in vet bills so far. I would take this very serious. That's why I added my little ones MRI so you can see the damage this stupid collar has caused.

Images in this review

  

\* \* \*

28

 Carolyn Seibel

★☆☆☆☆ **Can kill your dog**

Reviewed in the United States on April 5, 2021

This product caused my jog to get a massive cancerous tumor on her neck. She died within a few months. A few weeks ago there was an article on the front page of USA today about how this product is responsible for more than 1700 deaths that have been reported. It's poison.

* * *



★☆☆☆☆ **DANGEROUS: This product should not be on the market**

By davereader on August 29, 2019

My cat has been suffering from wounds and sores from severe chemical burns caused by this dangerous product. It is a reaction that some animals suffer from but if you read the reviews here or Google Serento Cat Collars, you will see hundreds of instances of injuries and even death. Some people swear by the collar and have had no problem for years. Then suddenly their pet gets burned. My cat has been treated for a few months now and new sores keep popping up - the vet believes this is because the toxicity is in the cat's bloodstream. I not only do not recommend this product to anyone but I will be doing everything I can to have this product pulled from the market. STAY AWAY!

Images in this review



* * *

 Vanessa D

⭐☆☆☆☆ **Possibly a neurotoxin**
Reviewed in the United States on June 27, 2020
Verified Purchase

Ok, the good: The collar is easy to adjust and apply. It has no discernible odors. It appears to be effective on fleas. Now for the bad: I put this collars on my cat, I noticed immediately that loose fur from her neck was collecting around the collar. I left it on thinking maybe it was just the rubbing and presence of something that is new . I let my cat out as I usually do. A few hours latter I called to her, she did not come. I gave her 10 minutes thinking she was near and will appear soon. I called again, no cat. I kept calling, I walked out into the yard to see if she had gotten her new collar caught on something, nothing. The next day I called to her, no cat. I walked around my complex looking for her, no cat. 48 hours and I am in a panic, called animal control no cat. A neighbor that I do not know but lives one complex away called me to tell me my cat was outside her unit and had been for a few days. This unit looks the same as mine but clear across from mine (there is a marsh canal between us). She must have gotten confused and walked all the way out to this other unit. This has never happened before, I've lived here for two years. When I got to the other unit, I called my cat, she did not appear to know me or where she was at. My cat was clearly disorientated and frightened I immediately took her home and removed the collar. She whimpered the rest of the day, shaking in her sleep, traumatized and still disorientated. The next day she was laying around still not herself, better but unsteady. I'm not sure if it was the collar that made her disorientated or not. I have a strong suspicion it was. My cat is fine now. I returned the collar and do not recommend it.

\* \* \*

 Elizabeth Chaves

⭐☆☆☆☆ **HIGHLY DANGEROUS Flea and Tick Collar made by BAYER**
Reviewed in the United States on July 13, 2019
Verified Purchase

Had my dogs groomed. Bought a new Seresto Collar and put it on them the following day. Within 12 hours both dogs became lethargic along with episodes of continuous (severe) vomiting and diarrhea. The episodes were so bad that blood began to appear in both the vomiting and diarrhea. I couldn't think of where this all be coming from. They're both indoor dogs that weigh 7 and 6 pounds. The only thing new was putting the Seresto Collar on them, so I thought it would be best to remove the collars, which we did just prior to bringing them into the vet. After being evaluated, they received fluids and meds. While there we learned that another person was in just a few days prior with their dog who had the same symptoms soon after the Seresto Collar was put on him. We left the vet with meds and ~ $500.00 bill. Thankfully both dogs were still alive and were better by the following day. I contacted Bayer to make them aware and to consider taking responsibility for the situation that had occurred. The representative was extremely insensitive to the situation that had occurred telling me that there was no way the Seresto Collar could've been the cause because it's not ingested. She told me that it had to be something else that caused them to get so sick. Regardless of whether ingested or topical the collar has chemicals on it, which caused my dogs acute illness. Bayer took absolutely NO RESPONSIBILITY and worse yet showed no empathy to what we'd experienced. I would HIGHLY RECOMMEND staying away from the SERESTO COLLAR and any other BAYER PRODUCTS.

3 people found this helpful

| Helpful | Report abuse |

 BTaylor

⭐☆☆☆☆ **Beware of Siezures**
Reviewed in the United States on November 4, 2018
Verified Purchase

Good news.... no fleas..... Bad news.... seizures. I bought this collar May 31, 2018 for my 15 lb Bichon. In September I started noticing her moods change. She would sit frozen and gaze into space and could not move. Then my groomer told me she had an "episode" at the groomers.... like she had "checked out" and not coherent. Then in late September she was playfully walking up the driveway when all of a sudden she froze and collapsed. Kept trying to stand up and could not. I grabbed her in my arms to take her inside the house. I sat her down and she walked off as if nothing happened. I called my vet and they dismissed anything I tried to tell them. She has had 3 more seizures that I know of to date. She also started to pee in bed. I know that the seizures that I have witnessed coincide with the bed peeing. I believe that after her seizures she cannot control her bladder. Going to have to find another way to keep the fleas at bay..... Can no longer put this on my dog.

* * *

 katie kehoe

⭐☆☆☆☆ **Do not buy**

Reviewed in the United States on March 13, 2021

Do not buy. Gave my dog skin cancer malignant around her neck. Needed surgery. Cancer related to chemicals the collars releases. DO NOT BUY.....

| Helpful | Report abuse |

* * *

 Sharon Goodson

⭐☆☆☆☆ **CAN MAKES DOGS VERY VERY ILL!**

Reviewed in the United States on April 24, 2020

**Verified Purchase**

My 2 dogs got sick from these collars within 48 hours. 3 YO Shih Tzu recovered in three days. 14 YO maltese pooped straight blood for 30 hours and throwing up. Still sick, not eating, will drink water on 4th day since started. I took collar off maltese and bathed well. I had previously used the collars and they are good but will never ever ever put another flea collar on my dogs. Will updated if maltese recovers. I googled and many people had same problem and had to put their dogs down. Bayer is aware of problem but keep selling at exorbitant rates for the collars.

* * *



★☆☆☆☆ **Dog had massive hives after three days of use which ...**

By Amazon Customer on September 6, 2016

Dog had massive hives after three days of use which were discovered upon returning from dinner. Please make sure to monitor your dog everyday preferably during the morning and evening to determine if they will experience any side effects. I was skeptical after reading other posts which is why I was continuously monitoring. The customer service representative for Seresto was professional in all regards. The company offered a reimbursement on the product. Medical services are reimbursed on a case by case basis. Make sure you save all contents of the packaging, as you will need these numbers when calling the number on the back of the tin can. Our dog had just went to the vet with a clean bill of health. Seresto requested medical records for any form of reimbursement related to medical expenses.

Images in this review



\* \* \*

 sarah warda

⭐☆☆☆☆ **ALMOST KILLED MY DOG - DO NOT BUY!!**

Reviewed in the United States on May 15, 2020

Verified Purchase

I only wish I had done more research and read reviews before I purchased. After wearing the collar for 10 days, my dog suddenly began twitching and convulsing, became very disoriented and erratic, and kept leaning his head back and waving it slowly side to side. He could barely walk and his tongue moved oddly like had suffered a stroke. Thankfully I was present for his traumatic neurological episode and brought him to an animal hospital immediately. The only thing that has recently changed in his routine was the Soresto collar, his first time wearing one. I started doing research, and discovered thousands have reported seizures and even death from the use of these collars. I removed the collar immediately in his condition improved. Within hours he was able to walk again, after 24 hours he finally ate and drink water, and after 48 hours was able to close his eyes fully and sleep, which he hadn't done since the episode. Read the reviews, this is NOT a safe product.

\* \* \*

 Jennifer Theobald

⭐☆☆☆☆ **Caused Emergency vet visit**

Reviewed in the United States on June 27, 2020

Verified Purchase

These irritated my dog's necks causing them to break out in hot spots and get a bacterial infection. We ended up needing to find emergency vet care in Missouri and had to pay the vet bills there along with the cost of a different tick prevention treatment. When I called my vet at home they said that they definitely don't recommend them because of how nasty they are.

\* \* \*

 Robert B.

⭐☆☆☆☆ **GAVE MY DOG A SEIZURE!!!**

Reviewed in the United States on July 14, 2020

Verified Purchase

My dog has been doing perfectly fine and then this past friday I put the new collar on him. Last night, he had 2 seizures at 915pm and then another while at the 24 hour Vet Emergency Room! He had to have an IV and blood work done, multiple tests, the whole thing. After someone asked if I recently changed his flea collar I started doing research and turns out I'm not the only one who's dog has had a seizure because of their collar! And even the Vet Neurologist said they have heard of cases using this collar for flea prevention causing seizures! I finally picked up my dog 22 hours later and now I've got a $1,500 vet bill to pay because of this stupid collar! Do your research people! Because you can bet for dang sure this company will not reimburse me for my vet bill! I'll be lucky just to get my $90 back. DO NOT BUY THIS COLLAR!

9 people found this helpful

| Helpful | Report abuse |

\* \* \*

33



⭐☆☆☆☆ **Do not recommend this collar to anyone.**

By Chelsea Sadowski on May 6, 2018

I would do ZERO stars if that was an option. I had this collar on my cat for 4 days, it was loose enough to easily spin around and fit 2 fingers between the collar and her skin. This morning she was acting odd so I started checking her out and realized that the collar has totally irritated her skin and taken a significant amount of hair off! Her skin is raw bloody and irritated. We cut off the collar and I'm taking her to the vet tomorrow. I do not recommend this collar for anyone!

Images in this review

 

\* \* \*

 Rex Kramer

⭐☆☆☆☆ **Made both of our pets very sick**

Reviewed in the United States on October 5, 2016

**Verified Purchase**

I wrote a previous review regarding our cat and forgot to follow up with the same collar on our small dog. Pretty much the same effect on both animals. Within two weeks, no more fleas, with the tradeoff being a dog that is constantly vomiting.

Huge waste of money on a product "highly recommended" by both our vet and groomer. If you want no fleas and possibly a dead pet, this is the product for you!

\* \* \*

34



⭐☆☆☆☆ **don't poison your dog with this product**

By I Sing to Yahuah on August 30, 2017

product burned my dogs neck within 3 days. he was scratching his face a lot day 2, we thought maybe it's allergies to rag week. day 3 he started walking slowing, staggering and exhibiting odd behavior. he wouldn't shake his head and yiped when we touched him. then i noticed a bloody wound under the collar that night. the pesticide had burned the skin and hair away and was sending poison directly into his system. because i waited to use it after the flea medication wore off a couple weeks later i've not only lost $50 I now have a sick dog.

Images in this review



* * *

 Justine Coleman

⭐☆☆☆☆ **Severe Neurological Reaction...**

Reviewed in the United States on January 3, 2018

**Verified Purchase**

The good news was that my dog had no fleas. The bad part...my dog started experiencing very severe neurological symptoms about 8 weeks into use of the collar. We initially did not think it was the collar. The started knuckling a lot while she was playing and would lose her footing easily while running. This was very out of the norm for her. Then she would be walking and her two back legs would just go out and she could not get up. She was unable to jump on the bed or the couch and had to be picked up. She would have random severe muscle spasms while laying down. We took the collar off and went to the vet, who was very concerned. Thank goodness all of her blood work was good and there was no kidney or liver issues or detected cancer. It took about 5 months before she was back to more normal. Her one back leg still doesn't seem to be the same, but she is alive. If your dog starts experiencing any of the above mentioned symptoms, take off the collar immediately. I wish I had never bought this. I believe it almost killed my dog.

* * *

 Chrissy G

⭐☆☆☆☆ **Poisoned my dog**

Reviewed in the United States on April 19, 2020

Verified Purchase

55 lb dog. My dog wore this for a few days. Went from being a healthy happy energetic dog to lethargic, vomiting, struggling to poop then diarrhea. Constantly sleeps, won't eat or drink, has to see the vet tomorrow morning. I couldn't get the collar off so I cut it off. I've had my dog for 6 years, and he's precious to us. Now he's poisoned from this damn collar. Never again. Shame on this company. This is happening far too often.

UPDATE: confirmed from vet this collar was poisoning my dog and had I left it on it could have killed him. It was shutting his organs down and causing a severe intestinal blockage. What scares me is that I have a toddler that snuggles our dog and what could this collar have done to my child!?!? This product is not safe. I'm angry I bought it. Waste of money.

\* \* \*

 PATRICIA J JOHNSON

⭐☆☆☆☆ **DON'T USE WILL INJURE YOUR DOG.**

Reviewed in the United States on November 25, 2016

Verified Purchase

I PURCHASED THIS COLLAR FOR SMALL DOGS AND WITHIN 3 WKS. MY DOG HAD A SEIZURE, BECAME VERY LETHARGIC, AND HAS SINCE SUCCUMBED TO THE TOXIN POISON WITHIN HER BLOOD. SHE HAD TWO SEIZURES WITHIN A MONTH, LOST HER MOBILITY, HAD HER BARK CHANGED, AND FINALLY IT EFFECTED HER NERVOUS SYSTEM. MY DOG WAS A 3 YR OLD CHIHUAHUA AND SHE EXPERIENCED ALL OF THE POSSIBLE RECORDED SIDE EFFECTS. BAYER COMPANY HAS AGREED TO PAY PART OF THE $1600.00 PLUS FOR THE VET BILLS AND IMMEDIATELY AGREED TO REFUND MY FLEA COLLAR PRICE AND THE VET BILLS. CHECK OUT THE "SIDE EFFECTS FOR SERESTO FLEA AND TICK COLLAR". YOU WILL BE SHOCKED. IT DOES NOT EFFECT ALL DOGS BUT MORE THAN LESS ARE EFFECTED (BURNS THE NECK ON THE DOGS). HARMFUL FOR CHILDREN IF THEY TOUCH IT AND PUT THEIR HANDS IN THE MOUTH. READ THE REVIEWS.

75 people found this helpful

| Helpful | | Report abuse |

 C. Skipper

⭐☆☆☆☆ **No more messy drops or sprays, so far I love this collar! - UPDATED!**

Reviewed in the United States on April 10, 2016

Verified Purchase

I have been very pleased with the collar. It is easy to use and adjust to fit, no messy drops to spill or have your pet rub them off onto the carpet or furniture. Ginger has had no negative reaction other than a little hair loss around her neck which was listed as a side effect but may just be part of her seasonal shedding. No sign of fleas or ticks on her at all, and the ticks have been particularly bad this year. Hopefully it will be just as effective in the summer months when the flea population typically explodes in the neighborhood.

Update 4/24/16: After wearing the collar for approximately 2 weeks, Ginger began to display signs of lethargy, hair thinning first at the neck then all over, loss of appetite, stumbling, thick discharge from eyes, then vomiting and diarrhea. Immediately removed the collar and bathed her in Dawn detergent, washed all of her bedding and her regular collars. Took her to the vet who treated her for mild shock and dehydration, ran blood work (came back normal) and administered fluids and anti-nausea/anti-diarrhea meds. Tonight she is mostly back to her old self. Vet says she had a toxic reaction to the flumethrin in the collar. Will be returning it tomorrow!

77.    The above consumer comments and reviews also demonstrate that consumers have incurred significant veterinary costs as a direct result of harm caused to pets by the Seresto Collars.

78.    In addition, a former-EPA section chief, Karen McCormack, who worked for the

EPA for more than 40 years, stated that the Seresto Collars have the most incidents of any pesticide

pet product that she observed during her lengthy career at the EPA, with climbing incidences.[65]

79.     Defendants' labeling and warning for the Seresto Collars misleadingly downplay

any risk of the Seresto collar (including its ingredients and components). The package insert states,

"Individual sensitivities, while rare, may occur after using ANY pesticide product for pets" and

that "As with any pesticide product, do not allow small children to play with the collar or reflectors,

or to put them into their mouths."[66] These generic warnings fall far short of adequate, especially

where Defendants' marketing of the Seresto Collars is targeted at laypersons lacking specialized

veterinary knowledge or training.[67]

80.     Defendants did not adequately warn and disclose that the Seresto Collars are unique

in that they were, and are, the only end-use pet product using flumethrin (a Bayer-created

pesticide), nor did Defendants warn of the associated risks. As Bayer admitted in the 2014

Materials Safety Data Sheet for Seresto ("MSDS"), under the category of "Acute Dermal

Toxicity," flumethrin is "Harmful in contact with skin."[68] Indeed, an EPA memorandum from

September 2019 indicated that over a two-and-half-year period (January 2016 to August 2019),

the self-reported incidents of flumethrin injuring a human (*i.e.*, pets' owners) totaled almost 1,000

injuries:[69]

---

[65] Popular Flea Collar Linked to Almost 1,700 Pet Deaths, USA Today (Mar. 2, 2020), *available at*, www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001.
[66] https://www.elancolabels.com/seresto-small-dog.
[67] *See* https://www.elancodvm.com/our-products/seresto/seresto-dogs#section-Concerns.
[68] Seresto Collar Material Safety Data Sheet, at 5, *available at* https://datasheets.scbt.com/sc-395480.pdf.
[69] EPA Memo re Flumethrin, at pg. 4 (9/17/19). For instance, a twelve-year-old boy who slept in bed with a dog wearing the collar was hospitalized due to seizures and vomiting; *Popular Flea Collar Linked to Almost 1,700 Pet Deaths*, USA Today (Mar. 2, 2021).



Figure 1. Flumethrin Incidents Reported to Main and Aggregate IDS from 2013 to 2018

Of the 19 major severity incidents that were further reviewed, the symptoms most often reported were dermal (n=8) and neurological (n=7). Note that a patient could exhibit multiple symptoms. Dermal symptoms reported include rash, redness, skin lesions, hives, and pruritus. Neurological symptoms reported include headaches, numbness, tingling and one person reported seizures.

81. The actual number is certainly higher as not all exposures and injuries would have been reported to the EPA.

82. The Seresto Collars' labeling and warnings are also misleading as the only adverse effects expressly addressed are "site reactions" (*e.g.*, dermatitis, inflammation, eczema, or lesions). No other risks are disclosed, nor are any other warnings provided to consumers, including the risk of death, organ failure, loss of bodily function, seizures, and other major health incidents, such as those described above. This serious omission is even more concerning considering the adverse incidents documented by the EPA.

83. In contrast with the information that Defendants provided to consumers with the Seresto Collars, a June 2016 document indicates that Defendants were aware, or should have been aware, that the Seresto Collars could cause neurological symptoms (*e.g.*, ataxia, convulsions, and tremors), and the product should not be used if neurological symptoms manifest after using the

Seresto Collars.[70]

84.     On March 17, 2021, the U.S. House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy requested that Elanco "immediately institute a temporary recall of all Seresto flea and tick collars . . . following reports that the collars may have killed thousands of pets and may have caused injuries to many more pets as well as humans," citing EPA documents that indicated "Seresto collars were associated with almost 1,700 pet deaths, over 75,000 incidents involving harm to pets, and nearly 1,000 incidents involving human harm."[71] The Subcommittee noted that the "packaging for Seresto collars contains no disclaimer warning that the risks of toxicity may be so great that they could possibly be responsible for thousands of pet deaths."[72]

85.     The Subcommittee then conducted an in-depth investigation of Defendants and the Seresto collar, including review of documents not made available to the public. After its extensive investigation, the Subcommittee issued a formal report in June of 2022, which concluded that the Seresto Collars on the market should be recalled, and that future sale of Seresto Collars should be banned in the United States.[73]

86.     Indeed, the Subcommittee's recommendation is in line with countries such as Canada that have already banned sale of Seresto Collars within its borders due to the risk to the health of pets and humans that the Seresto collars pose. Specifically, in 2016, Canada's Pest Management Regulatory Agency ("PMRA")—based on a review of incident and toxicology

---

[70]    *See*    https://investigatemidwest.org/2021/08/13/the-epa-internally-raised-concerns-about-seresto-flea-collar-for-years-new-records-reveal.

[71]    *See*    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-03-17.RK%20to%20Simmons-Elanco%20re%20Pet%20Collars.pdf.

[72] *Id.*

[73] *See* Seresto Congressional Report at 22.

studies—concluded that the collar posed too great a risk to pets and their owners to be sold in Canada.

87.     In short, Defendants have entirely omitted the dangerous safety concerns associated with the Seresto Collars—omitting key information from consumers and misrepresenting the safety and efficacy of the product.

88.     Defendants still deny any issues with the Seresto Collars. On March 19, 2021, Elanco claimed that "[a]ll data and scientific evaluation used during the product registration process and through Elanco's pharmacovigilance review supports [the Seresto Collar's] safety profile and efficacy. Therefore, no market action, such as a recall, is warranty, nor has it been suggested by any regulatory agency. Elanco continues to stand behind the safety profile for Seresto. The product remains available to consumers across the U.S. and around the world for protection of pets from fleas and ticks, which can negatively impact their quality of life and may act as vectors of dangerous disease."[74] This misleading message of safety was repeated by Jeffrey Simmons, the Chief Executive Office of Elanco, before Congress on June 15, 2022, when he testified that: "Seresto [is] a proven solution that is not only effective at protecting dogs and cats from disease-carrying fleas and ticks, but also has a strong safety profile."[75]

89.     Accordingly, Defendants are not only omitting safety information from the Seresto Collars but are also actively misleading consumers into believing the Seresto Collars are effective and safe.

---

[74] Mar. 19, 2021 Press Release, *available at* https://investor.elanco.com/press-releases/press-releases-details/2021/Elanco-Stands-Behind-Seresto-and-its-Safety-Profile/default.aspx.
[75] Statement of Jeffrey Simmons (June 15, 2022), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Simmons%20Testimony.pdf.

## PLAINTIFF'S SPECIFIC FACTUAL ALLEGATIONS

90.     Plaintiff Darlene Dahlgren is a resident of New York. She purchased a Seresto Collar for her dog, Snookie, as part of Snookie's health regimen in order to prevent her from being infested and/or harmed by fleas and ticks. She purchased one Seresto Collar on June 27, 2020, from the Petco store in Port Chester, New York.

91.     At the time of purchase, Plaintiff Dahlgren reviewed the Product's packaging and retail information. Plaintiff Dahlgren trusted Defendant's products and this trust contributed to her decision to purchase the Seresto Collar. Plaintiff Dahlgren reasonably believed the Seresto Collar was a safe and effective means of flea and tick prevention and did not present a risk to her pet's health, based on a review of the Seresto Collar's packaging. She purchased the Product with the intention of ensuring her dog's health and safety.

92.     On the front of the Product's package, in bold and capitalized font, where it cannot be missed by consumers, the Seresto Collars promise to provide "8 MONTH PROTECTION" for one's pet. Yet despite Defendants' representations, the Seresto Collar posed a significant risk to Plaintiff Dahlgren's dog for the reasons described herein.

93.     Nowhere on the Product packaging or labeling were there warnings or other representations indicating that the Seresto Collar may harm or kill pets, or that the Seresto Collars could cause any adverse side effects at all. For this reason, Plaintiff Dahlgren never viewed or read any such warnings.

94.     After purchasing the Product, Plaintiff Dahlgren placed the Seresto Collar around her dog's neck as directed by the manufacturer's instructions. However, shortly after putting the Seresto Collar on her dog, Snookie suffered seizures, vomiting, and dizziness and loss of balance on several occasions.

95.     Plaintiff Dahlgren understandably grew concerned. She called her local veterinarian and followed all medical instruction received. Plaintiff Dahlgren's efforts did not resolve her dog's health conditions, which developed shortly after first applying the Seresto Collar. However, after she removed the Seresto Collar from her dog, the seizures and vomiting stopped.

96.     Prior to using the Seresto Collar, Plaintiff Dahlgren's dog, Snookie, was in excellent health and never had any major health issues.

97.     The Product harmed both Plaintiff Dahlgren and her dog, Snookie. The Product caused her dog to experience seizures and vomiting. Plaintiff Dahlgren was also harmed economically because she spent more money than she would have on the Product, which did not perform as advertised and poses a serious risk to animals and humans. Due to Defendants' misrepresentations and omissions, she did not receive the Product she intended to purchase: a flea and tick collar which was fit for its ordinary purpose—the safe administration of flea and tick preventatives to her dog. She did not receive the benefit of her bargain.

98.     If the Seresto Collars functioned as advertised—and did not pose any serious risk to her dog, to herself, or to others, associated with the Products' use—Plaintiff Dahlgren would likely purchase or would consider purchasing additional Seresto Collars again in the future. Alternatively, if the Court were to issue an injunction ordering Defendants to comply with advertising and warranty laws, and to remediate the serious and ongoing safety risks associated with Seresto Collars, Plaintiff Dahlgren would likely purchase or would consider purchasing additional Seresto Collars again in the future. However, as currently labeled and advertised, Plaintiff Dahlgren is unable to rely on the current labeling and advertising of the Seresto Collars when considering whether, in the future, to purchase the Seresto Collars again.

## CLASS DEFINITION AND ALLEGATIONS

99.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and 23(c)(4),

Plaintiff brings this action on behalf of herself and the following proposed Nationwide Classes:

> **Purchaser Class:** All persons in the United States who purchased a Seresto Collar for use on a pet and not for resale during the Class Period.

> **Pet Injury Class:** All persons in the United States who owns a pet that suffered injury caused by using a Seresto Collar during the Class Period.

100.    The Class Period begins from the length of the greatest applicable statute of

limitations to the present.

101.    Alternatively, Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2),

23(b)(3) and 23(c)(4), Plaintiff brings this action on behalf of herself and the following proposed

subclass:

> **New York Purchaser Subclass:** All persons in the State of New York who purchased a Seresto Collar for use on a pet and not for resale during the Class Period.

> **New York Pet Injury Subclass:** All persons in the State of New York who owns a pet that suffered injury caused by using a Seresto Collar during the Class period.

102.    Excluded from the Classes are: (i) Defendants, any entity in which any Defendant

has a controlling interest or which has a controlling interest in any Defendant, and Defendants'

legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii)

Defendants' employees, officers, directors, agents, and representatives and their family members;

(iv) all persons who make a timely election to be excluded from the class; and (v) judge(s) and

staff to whom this case is assigned, and any member of the judge's or judges' immediate family.

103.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

104.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Members of the proposed Classes are so numerous that the individual joinder of all absent Class Members is impracticable. Class Members have purchased hundreds of thousands of the Seresto Collars during the Class Period.  Further information regarding the number of Class Members is ascertainable by appropriate discovery. Plaintiff is informed and so believes, based upon the nature of the trade and commerce involved, that the proposed Classes include many thousands of Class Members who are geographically diverse so that joinder of all Class Members is impracticable.

105.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of putative members of the Purchaser Class in that each purchased a Seresto Collar for use on a pet and each member of the Pet Injury Class because each owns a pet who suffered an injury caused by using a Seresto Collar.  Plaintiff and the Class Members were comparably injured through Defendant's uniform course of misconduct described herein. Plaintiff and Class Members all suffered the same harm as a result of Defendants' common, false, deceptive, and misleading acts and practices in the sale of the Seresto Collars. By advancing her claims, Plaintiff will also advance the claims of all Class Members because Defendants' unlawful conduct caused and continues to cause all Class Members to suffer similar harm.

106.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff's interests and the interests of all other members of each respective class are identical, and Plaintiff is cognizant of her respective duties and responsibilities to the Class Members. Further, the interests of the Class Members are

not conflicting or divergent but, rather, are common. Accordingly, Plaintiff can fairly and adequately represent the interests of both classes. Moreover, Plaintiff's counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiff and her counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class Members' interests.

107. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. Among the questions of law or fact common to the proposed Classes are:

a. whether Seresto Collars pose safety risks to Class Members' pets, as described herein;

b. whether Defendants knew or should have known that Seresto Collars pose safety risks to Class Members' pets, described herein;

c. whether Defendants failed to warn consumers regarding the safety risks the Seresto Collars pose to Class Members' pets, as described herein;

d. whether Defendants failed to disclose material information concerning the safety risks posed by the Seresto Collars to Class Members' pets;

e. whether Defendants' representations and omissions concerning the Seresto Collars involved representations and omissions of material fact;

f. whether Defendants concealed the safety risks posed by Seresto Collars to Class Members' pets, as described herein;

g. whether Defendants breached warranties with purchasers when they marketed and sold Seresto Collars as being safe for pets, which posed risks

known to Defendants but unknown and undisclosed to consumers, as described herein;

h.    whether Defendants engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Seresto Collars that pose safety risks pets, as described herein;

i.    whether Defendants conduct violates the consumer protection statutes at issue in this litigation;

j.    whether Defendants breached express warranties to Class Members;

k.    whether Defendants breached implied warranties of merchantability to Class Members;

l.    whether Defendants were negligent in selling the Seresto Collars;

m.    whether Defendants' conduct was unjust and in violation of principles of justice, equity, and good conscience;

n.    whether Plaintiff and Class Members conferred financial benefits on Defendants by purchasing the Seresto Collars;

o.    whether it is unjust for Defendants to retain the benefits conferred by Plaintiff's and Class Members' overpayments for the Seresto Collars;

p.    whether Plaintiff and the Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages and the amount thereof; and

q.    whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

108.     **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

109.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the class as a whole. Plaintiff asserts claims for injunctive relief and restitution arising from Defendants' false, misleading, and deceptive advertising and Defendants' failure to disclose the material risks of use of the Seresto Collars on pets.

110.     **Certification of Particular Issues – Federal Rule of Civil Procedure 23(c)(4)**. This action is also properly maintainable under Rule 23(c)(4) in that particular issues common to the Classes, as described above in part, are most appropriately and efficiently resolved via class action, and would advance the disposition of this matter and the parties' interests therein.

## **TOLLING OF STATUTES OF LIMITATION**

111.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

112.    Because the defects in the Seresto Collars could not be detected until after they manifested, and, additionally, because Defendants have denied and purposefully concealed the defects in the Seresto Collars and the dangers of their pesticides, Plaintiff and the Class Members were not reasonably able to discover the problem, despite their exercise of due diligence.

113.    Defendants knew, or should have known, about the defects from the outset after appropriate reasonable safety studies had been conducted, or after they received adverse incident reports through the EPA, or after product complaints were submitted to retailers/distributors. Yet, Defendants have concealed or failed to disclose the dangerous safety defects associated with the Seresto Collars. Plaintiff and others similarly situated could not have known about the safety issues prior to reports in March 2021, or even thereafter as Defendants have continued to deny any safety issues with the Seresto Collars, specifically continuing to represent that the Seresto Collars are safe.[76]

114.    Defendants did not inform Plaintiff about the defects inherent in the Seresto Collars even though Defendants knew about the defects at the time of purchase.

115.    Plaintiff and the Class Members had no realistic ability to discern that the Seresto Collars were defective and dangerous and could cause their pets' harm. Under the discovery rule, the statute of limitations does not begin to run until the time at which a reasonable individual could have discovered the defect. That rule is applicable to the claims asserted by Plaintiff and the Class Members.

---

[76] *See* www.petbasics.com/campaign/seresto-safety (last visited Nov. 3, 2022).

116.    Any applicable statute of limitation is tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein. Defendants are further estopped from relying on any statute of limitation because of their concealment of the defects in the Seresto Collars.

117.    Defendants are estopped from relying upon any statutes of limitations or statutes of repose by reason of their fraudulent and negligent misrepresentations, suppression, and concealment of material facts, and any applicable statutes of limitations and/or repose are tolled by such conduct.

118.    As a result of Defendants' omissions and misrepresentations, Plaintiff and the Class Members did not know—and could not know—about the defects inherent in the Seresto Collars.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE INDIANA DECEPTIVE**
**CONSUMER SALES ACT ("IDCSA")**
**Ind. Code § 23-5, *et seq*.**
**(By Plaintiff Individually and on Behalf of the Nationwide**
**Purchaser Class and the Nationwide Pet Injury Class against Elanco)**

119.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

120.    The Indiana Deceptive Consumer Sales Act ("IDCSA") was enacted to "simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices[,]" "protect consumers from suppliers who commit deceptive and unconscionable sales acts[,]" and "encourage the development of fair consumer sales practices." Ind. Code § 24-5-0.5-1(b). The act is intended to be "liberally construed and applied to promote its purposes." *Id.* § 24-0.5-5-1(a).

121.    The IDCSA prohibits "deceptive representations as to the subject matter of a consumer transaction," including: "[t]hat such a subject of a consumer transaction is of a particular

standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not" and that "[t]he consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it." *Id.* § 24-5- 0.5-3(a)(1), (11).

122. Under the IDCSA, a "consumer transaction" means "a sale, lease, assignment, award by chance or other disposition of an item of personal property, real property, [or] a service . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." *Id.* § 24-5-0.5-2(a)(1).

123. A person relying on an "uncured or incurable deceptive act may bring an action for damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." *Id.* § 24-5-0.5-4.

124. An "uncured deceptive act" means a deceptive act where a consumer who has been damaged by such act has given notice to the supplier and either (1) no offer to cure has been made to such consumer within 30 days or (2) the action has not been cured as to such consumer within a reasonable time after the consumer's acceptance of the offer to cure. *Id.* at § 24-5-0.5-2(7).

125. An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with the intent to defraud or mislead. *Id.* at § 24-5-0.5-2(8).

126. Defendants represented in the Seresto Collar packaging, labeling, marketing, advertising, and promotion that the Seresto Collars provide a safe means of flea and tick prevention for consumers' pets. Defendants have continued to tout the safety of the Seresto Collars even though the Seresto Collars have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm.

127. Contrary to these representations, the Seresto Collars pose an unreasonable safety risk to pets.

128. Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

129. Defendants have committed an "incurable deceptive act" within the meaning of the IDCSA, as follows:

a. Defendants manufactured, distributed, marketed, advertised and sold the Seresto Collars, which posed serious safety risks to pets (as evidenced by the thousands of injuries and deaths), and which serious safety risks existed when the Seresto Collars left Defendants' control and at the point of sale;

b. Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, but omitted and failed to disclose or concealed these risks from consumers;

c. Defendants knew the serious safety risks posed by the Seresto Collars were unknown to consumers, and would not be easily discovered by Plaintiff and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Seresto Collars;

d. Defendants warranted that the Seresto Collars are part of a pet's regular health regimen and provide a safe means of flea and tick prevention, when, in fact, the Seresto Collars pose serious safety risks to pets; and

51

e. Defendants represented to consumers, including Plaintiff and Class Members, that the Seresto Collars are safe and fit for the use for which they were intended, despite the fact that Defendants knew, or otherwise should have known, that the Seresto Collars were unsafe and unfit as part of a pet's health regimen, posing serious safety risks to consumers' pets.

130. Contrary to Defendants' warranties and representations that the Seresto Collars were safe and suitable for their intended use, the Seresto Collars, which are marketed as being part of a pet's regular health regimen, are unsafe as designed, manufactured, marketed, and sold. The Seresto Collars posed serious and continuous safety risks to pets.

131. Defendants had exclusive knowledge of material facts concerning the serious safety risks posed by the Seresto Collars to pets.

132. Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and the other Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

133. Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

134. Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants denied the existence of the serious safety risks to pets.

135. Defendants' misrepresentations were material to Plaintiff's and the other Class Members' decision to purchase the Seresto Collars. In short, no reasonable consumer would purchase a Seresto Collar that poses significant, and potentially fatal, risks of harm to their pet when other, safe alternatives exist.

136. Defendants' deceptive acts and practices, including their representations and omissions, were material, in part, because they concerned an essential aspect of the Seresto Collars, including the intended use and safety. Such facts affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether to purchase the Seresto Collars. Rather than disclose this information, Defendants marketed and labeled the Seresto Collars as a safe means of flea and tick prevention for pets.

137. Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto Collars were and are directed at consumers in a uniform manner.

138. Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and the other Class Members, would not have purchased the Seresto Collars on the same terms had they known that the Seresto Collars posed serious safety risks to them and their pets.

139. Plaintiff has provided notice to Defendants in accordance with the IDSCA. Defendants failed to respond or fail to address Plaintiff's demands, accordingly, Plaintiff also alleges here that Defendants also committed an "uncured deceptive act."

140. Plaintiff and the other Class Members seek all damages and remedies, including equitable relief, allowable under the IDCSA.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GBL § 349**
**N.Y. Gen. Bus. Law § 349**
**(By Plaintiff Individually and on Behalf of the New York**
**Purchaser and Pet Injury Subclasses against All Defendants)**

141.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

142.    New York General Business Law § 349 ("NY GBL § 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law § 349(a).

143.    Under NY GBL § 349, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.* § 349(h).

144.    Defendants' foregoing acts and practices, including their omissions, were directed at consumers.

145.    Defendants' violated NY GBL §349 by misrepresenting, omitting, concealing, or failing to disclose material facts on the labels, packaging, marketing and advertising of the Seresto Collars.

146.    Defendants represented in the Seresto Collar packaging, labeling, marketing, advertising, and promotion that the Seresto Collars provide a safe means of flea and tick prevention for consumers' pets. Defendants have continued to tout the safety of the Seresto Collars even though the Seresto Collars have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm.

147.     Contrary to these representations, the Seresto Collars pose an unreasonable safety risk to pets.

148.     Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

149.     Defendants engaged in the following deceptive and unfair acts and practices in violation of NY GBL § 349:

   a.     Defendants manufactured, distributed, marketed, advertised and sold the Seresto Collars, which posed serious safety risks to their pets, and which serious safety risks existed when the Seresto Collars left Defendants' control and at the point of sale;

   b.     Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, but omitted and failed to disclose or concealed these risks from consumers;

   c.     Defendants knew the serious safety risks posed by the Seresto Collars were unknown to consumers, and would not be easily discovered by Plaintiff and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Seresto Collars;

   d.     Defendants warranted that the Seresto Collars are part of a pet's regular health regimen and provide a safe means of flea and tick prevention, when, in fact, the Seresto Collars pose serious safety risks to pets; and

e.      Defendants represented to consumers, including Plaintiff and Class Members, that the Seresto Collars are safe and fit for the use for which they were intended, despite the fact that Defendants knew, or otherwise should have known, that the Seresto Collars were unsafe and unfit as part of a pet's health regimen, posing serious safety risks to pets.

150.    Contrary to Defendants warranties and representations that the Seresto Collars were safe and were suitable for their intended use, the Seresto Collars, which are marketed as being part of a pet's regular health regimen, are unsafe as designed, manufactured, marketed, and sold. The Collars posed serious and continuous safety risks to pets.

151.    Defendants had exclusive knowledge of material facts concerning the serious safety risks posed by the Seresto Collars to pets.

152.    Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

153.    Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

154.    Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants denied the existence of the serious safety risks to consumers.

155.    Defendants' deceptive acts and practices, including their representations and omissions, were material, in part, because they concerned an essential aspect of the Seresto Collars, including the intended use and safety. Such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether to purchase the Seresto Collars. Rather than disclose this information, Defendants marketed and labeled the Seresto Collars as a safe means of flea and tick prevention for pets.

156.    Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto Collars were and are directed at consumers in a uniform manner.

157.    Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and other Class Members, would not have purchased the Seresto Collars on the same terms had they known that the Seresto Collars posed serious safety risks to them and their pets.

158.    Defendants' unconscionable, deceptive, and/or unfair acts and practices have resulted in consumer injury or harm to the public interest.

159.    Defendants' unconscionable, deceptive, and/or unfair practices have caused actual damages to Plaintiff and Class Members who were unaware that the Seresto Collars posed a serious health risk to consumers and their pets.

160.    Plaintiff and other Class Members were injured because (a) they would not have purchased the Seresto Collars on the same terms if the true facts concerning the risks associated with use of the Seresto Collars had been known; (b) the Seresto Collars did not and cannot perform as promised due to the risks associated with the use of the Seresto Collars; and (c) they have lost the use of the Seresto Collars due to the risks associated with the use of the Seresto Collars.

161.    As a direct and proximate result of Defendants' deceptive acts and practices, including their representations and omissions, Plaintiff and Class Members have been damaged as alleged herein, and are entitled to recover the greater of actual damages or $50 statutory damages per purchase.

162.    In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GBL § 350**
**N.Y. Gen. Bus. Law § 350**
**(By Plaintiff Individually and on Behalf of the New York**
**Purchaser and Pet Injury Subclasses against All Defendants)**

163.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

164.    New York General Business Law § 350 ("NY GBL § 350") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

165.    Under NY GBL § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." *Id.* § 350-a(1).

166.    Defendants' foregoing acts and practices, including their omissions, were directed at consumers.

167.    Defendants' violated NY GBL §350 by misrepresenting, omitting, concealing, or failing to disclose material facts on the labels, packaging, marketing and advertising of the Seresto Collars.

168.    Defendants represented in the Seresto Collar packaging, labeling, marketing, advertising, and promotion that the Seresto Collars provide a safe means of flea and tick prevention for consumers' pets. Defendants have continued to tout the safety of the Seresto Collars even

though the Seresto Collars have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm.

169.    Contrary to these representations, the Seresto Collars pose an unreasonable safety risk to pets.

170.    Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

171.    Defendants' foregoing, consumer-oriented, unfair or deceptive acts and practices, as described above and herein, including their advertising, representations, and omissions, constitute false and misleading advertising in violation of NY GBL § 350.

172.    Defendants false and misleading advertising, representations, and omissions in violation of NY GBL § 350 include:

> a.    Defendants manufactured, distributed, marketed, advertised and sold the Seresto Collars, which posed serious safety risks to their pets, and which serious safety risks existed when the Seresto Collars left Defendants' control and at the point of sale;
>
> b.    Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, but omitted and failed to disclose or concealed these risks from consumers;
>
> c.    Defendants knew the serious safety risks posed by the Seresto Collars were unknown to consumers, and would not be easily discovered by Plaintiff and

Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Seresto Collars;

d.     Defendants warranted that the Seresto Collars are part of a pet's regular health regimen and provide a safe means of flea and tick prevention, when, in fact, the Seresto Collars pose serious safety risks to pets; and

e.     Defendants represented to consumers, including Plaintiff and Class Members, that the Seresto Collars are safe and fit for the use for which they were intended, despite the fact that Defendants knew, or otherwise should have known, that the Seresto Collars were unsafe and unfit as part of a pet's health regimen, posing serious safety risks to pets.

173.    Contrary to Defendants warranties and representations that the Seresto Collars were safe and were suitable for their intended use, the Seresto Collars, which are marketed as being part of a pet's regular health regimen, are unsafe as designed, manufactured, marketed, and sold. The Collars posed serious and continuous safety risks to pets.

174.    Defendants had exclusive knowledge of material facts concerning the serious safety risks posed by the Seresto Collars to pets.

175.    Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

176. Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

177. Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants denied the existence of the serious safety risks to consumers.

178. Defendants' false and misleading advertising, including their representations and omissions, were material, in part, because they concerned an essential aspect of the Seresto Collars, including the intended use and safety. Such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether to purchase the Seresto Collars. Rather than disclose this information, Defendants marketed and labeled the Seresto Collars as a safe means of flea and tick prevention for pets.

179. Defendants' false and deceptive advertising, including their misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto Collars, were and are directed at consumers in a uniform manner.

180. Defendants' advertising described herein were likely to deceive and/or mislead, and did deceive and/or mislead, consumers acting reasonably under the circumstances. Consumers, including Plaintiff and other Class Members, would not have purchased the Seresto Collars on the same terms had they known that the Seresto Collars posed serious safety risks to them and their pets.

181. Defendants' false and misleading advertising have resulted in consumer injury or harm to the public interest.

182.    Defendants' false and misleading advertising have caused actual damages to Plaintiff and Class Members who were unaware that the Seresto Collars posed a serious health risk to consumers and their pets.

183.    Plaintiff and other Class Members were injured because (a) they would not have purchased the Seresto Collars on the same terms if the true facts concerning the risks associated with use of the Seresto Collars had been known; (b) the Seresto Collars did not and cannot perform as promised due to the risks associated with the use of the Seresto Collars; and (c) they have lost the use of the Seresto Collars due to the risks associated with the use of the Seresto Collars.

184.    As a direct and proximate result of Defendants' false and misleading advertising, including their representations and omissions, Plaintiff and Class Members have been damaged as alleged herein, and are entitled to recover the greater of actual damages or $500 statutory damages per purchase.

185.    In addition, Plaintiff and Class Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**
**(By Plaintiff Individually and on**
**Behalf of All Classes against All Defendants)**

186.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

187.    Defendants had exclusive knowledge of material facts concerning the serious safety risks posed by the Seresto Collars to pets.

188.    Because the defects in the Seresto Collars could not be detected until after they manifested, and, additionally, because Defendants have denied and purposefully concealed the

defects in the Seresto Collars and the dangers of their pesticides, Plaintiff and the Class Members were not reasonably able to discover the problem, despite their exercise of due diligence.

189. Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

190. Despite Defendants' knowledge of material facts concerning the existence of the serious safety risks posed by Seresto Collars, Defendants actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

191. Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

192. Defendants undertook active and ongoing steps to conceal the serious safety risks posed by the Seresto Collars to pets. Plaintiff is unaware of anything in Defendants' advertising, labeling, marketing, or other communications to the consuming public that disclosed the truth about the serious safety risks posed by the Seresto Collars, despite Defendants' awareness of such serious safety risks. In fact, Defendants' continue to deny and conceal the existence of such safety risks associated with the Seresto Collars.

193. The facts concealed and/or not disclosed by Defendants to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Seresto Collars, including the intended use and safety. Such facts affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether to purchase the Seresto Collars. Rather than disclose this information, Defendants marketed and labeled the Seresto Collars as a safe means of flea and tick prevention for pets.

194. Defendants intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Seresto Collars.

195. Plaintiff and other Class Members, without knowledge of the true nature of the Seresto Collars, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidence by their purchase of the Seresto Collars.

196. As a direct and proximate result of Defendants' concealment and/or nondisclosure of material facts, consumers, including Plaintiff and other Class Members have been damaged as alleged herein, and are entitled to recover damages. Plaintiff and other Class Members would not have purchased the Seresto Collars on the same terms had they known that the Seresto Collars posed serious safety risks to them and their pets.

197. Plaintiff and Class Members are entitled to all relief the Court finds proper as a result of Defendants' conduct described herein

**FIFTH CLAIM FOR RELIEF**
**STRICT LIABILITY – DESIGN DEFECT**
**(By Plaintiff Individually and on**
**Behalf of All Classes against All Defendants)**

198.    Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

199.    Plaintiff brings this strict liability claim against Defendants for defective design.

200.    Defendants are liable to Plaintiff and the other Class Members under a product liability theory for marketing a defectively-designed product, as well as for failing to adequately warn of the risk of severe neurological injury caused by the chronic exposure to Seresto.

201.    The Seresto Collars, which Defendants designed, tested, manufactured, distributed, and sold, did not perform safely as an ordinary consumer would have expected them to perform when used in the intended or a reasonably foreseeable manner, in that:

      a.    As designed, manufactured, formulated, and packaged, the chemicals in the Seresto Collars were likely to be inhaled, ingested, and absorbed into the bodies of the pets who used it, and/or released in too large or too quick a dosage; and

      b.    When inhaled, ingested, or absorbed, it was likely to cause neurological damage and injury that was both permanent and cumulative, and repeated exposure were likely to cause neurological events, including seizures.

202.    At all times relevant to this litigation, Defendants engaged in the business of testing, developing, manufacturing, selling, distributing, marketing, packaging design, and promoting of the Seresto Collars, which are defective and unreasonably dangerous to consumers, including Plaintiff and the other Class Members, thereby placing the Seresto Collars into the stream of

commerce, including Plaintiff's home state. These actions were under the ultimate control and supervision of Defendants.

203.     At all times relevant, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Seresto Collars used by Plaintiff and the other Class Members, as described above.

204.     At all times relevant, the Seresto Collars were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, Plaintiff and the other Class Members.

205.     At all times relevant to this litigation, the Seresto Collars reached the intended consumers, handlers, and users or other persons coming into contact with these products in Plaintiff's home state and throughout the United States, including Plaintiff and the other Class Members, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

206.     The Seresto Collars, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

207.     The Seresto Collars, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

208. At all times relevant, Defendants knew or had reason to know that the Seresto Collars were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendants.

209. Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff's and other Class Members' pets, based upon: (1) their own internal testing, data and surveys, (2) numerous consumer complaints lodged directly with Defendants, (3) numerous consumer complaints lodged to retailers, (4) numerous consumer complaints and reports lodged with the EPA, and (5) numerous consumer complaints on online fora.

210. Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

211. Defendants products were defectively designed in that the risk of danger inherent in the synergistic effect of imidacloprid and flumethrin, as described herein, outweighed the benefits of the design, considering, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from the alternative design.

212. Therefore, at all times relevant, the Seresto Collars, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in one or more of the following ways:

67

a.  When placed in the stream of commerce, the Seresto Collars products were defective in design and formulation and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

b.  When placed in the stream of commerce, the Seresto Collars were unreasonably dangerous in that they were hazardous and posed a grave risk of central nervous system injuries and other serious illnesses, as described herein, when used in a reasonably anticipated manner;

c.  When placed in the stream of commerce, the Seresto Collars contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

d.  Defendants did not sufficiently test, investigate, or study the Seresto Collars and, specifically, the active ingredients imidacloprid and flumethrin;

e.  Exposure to Seresto Collars presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the pesticide;

f.  At the time of marketing their Seresto Collars, the Seresto Collars were defective in that exposure to  and/or use of the Seresto Collars, as described herin, could result increase risk of central nervous system injury and other severe illnesses and injuries to pets;

g.  Defendants did not conduct adequate post-marketing surveillance of their the Seresto Collars; and

h.  Defendants could have employed safer alternative designs and formulations.

213.   Plaintiff's and the other Class Members' pets were exposed to the Seresto Collars, as described above, without knowledge of their dangerous characteristics.

214.   At all times relevant, Plaintiff's and the other Class Members' pets were exposed to the use of the Seresto Collars in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

215.   Plaintiff and the other Class Members could not have reasonably discovered the defects and risks associated with the Seresto Collars before or at the time of exposure.

216.   The harm caused by the Seresto Collars far outweighed their benefit, rendering these products dangerous to an extent beyond that which an ordinary consumer would contemplate. The Seresto Collars were and are more dangerous than alternative products and Defendants could have designed the Seresto Collars (including their packaging and sales aids) to make them less dangerous. Indeed, when Defendants designed the Seresto Collars, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

217.   At the time the Seresto Collars left Defendant's control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of those pesticides.

218.   Defendant's defective design of the Seresto Collars was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Seresto Collars, including Plaintiff and the other Class Members.

219.   Therefore, as a result of the unreasonably dangerous condition of the Seresto Collars, Defendants are strictly liable to Plaintiff and the other Class Members.

220.   The defects in the Seresto Collars caused or contributed to cause injuries and damages to Plaintiff's and the other Class Members' pets, and, but for Defendants' misconduct

and omissions, Plaintiff's and the other Class Members' pets would not have sustained their injuries.

221.   Defendants' conduct, as described above, was reckless. Defendants risked the lives of pets using these products, including Plaintiff's and the other Class Members' pets, with knowledge of the safety problems associated with the Seresto Collars and the toxic combination of imidacloprid and flumethrin present. Defendants suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

222.   As a direct and proximate result of Defendants' placing defective Seresto Collars into the stream of commerce, Plaintiff's and the other Class Members' pets have suffered and continue to suffer grave injuries and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care, and treatment.

### SIXTH CLAIM FOR RELIEF
### STRICT LIABILITY – FAILURE TO WARN
#### (By Plaintiff Individually and on
#### Behalf of All Classes against All Defendants)

223.   Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above incorporates such allegations by reference herein.

224.   Plaintiff brings this strict liability claim against Defendants for failure to warn.

225.   At all times relevant, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Seresto Collars, which are defective and unreasonably dangerous to consumers' pets, including Plaintiff's and the other Class Members' pets, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of the Seresto Collars and specifically, the synergistic

effects of the active ingredients imidacloprid and flumethrin. These actions were under the ultimate control and supervision of Defendants.

226.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Seresto Collars, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiff and the other Class Members, and therefore had a duty to warn of the risks associated with the use of the Seresto Collars and the synergistic effects of imidacloprid and flumethrin.

227.    At all times relevant to this litigation, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that the Seresto Collars did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff and the other Class Members of the dangers associated with the Seresto Collars' use and exposure. Defendants, as manufacturer, seller, promoter, marketer, or distributor of pesticides are held to the knowledge of an expert in the field.

228.    At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of the Seresto Collars and imidacloprid/flumethrin-containing products because they knew, or otherwise should have known, of the unreasonable risks of harm associated with the use of and/or exposure to such products.

229.    At all times relevant to this litigation, Defendants failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by these pesticides, including Plaintiff and the other Class Members.

230.     Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

231.     Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

232.     Even though Defendants knew or should have known that the Seresto Collars posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous risks associated with their use and exposure. The dangerous propensities of these products and the toxic characteristics of the synergistic effects of their ingredients, as described above, were known to Defendants, or scientifically knowable to Defendants through appropriate research and testing by known methods, at the time they distributed, marketed, promoted, supplied or sold the products, and not known to end users and consumers, such as Plaintiff and Class Members.

233.     These products created significant risks of serious harm to consumers' pets, as alleged herein, and Defendants failed to adequately warn consumers and reasonably foreseeable users of the risks of exposure to its products by their pets. Defendants have wrongfully concealed information concerning the dangerous nature of the Seresto Collars and its active ingredients

imidacloprid and flumethrin, and further made false and/or misleading statements concerning the safety of the Seresto Collars and imidacloprid combined with flumethrin.

234. At all times relevant, the Seresto Collars reached the intended consumers, handlers, and users or other persons coming into contact with these products in Plaintiff's home states and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, promoted, and marketed by Defendants.

235. Plaintiff's and Class Members' pets were exposed to the Seresto Collars in the course of their use for flea and tick protection, without Plaintiff's and Class Members' knowledge of their dangerous characteristics to their pets.

236. At all times relevant, Plaintiff's and the other Class Members' pets used and/or were exposed to the Seresto Collars in their intended or reasonably foreseeable manner without Plaintiff's and Class Members' knowledge of their dangerous characteristics to their pets.

237. Plaintiff and the other Class Members could not have reasonably discovered the defects and risks associated with the Seresto Collars or imidacloprid/flumethrin-containing products prior to or at the time of Plaintiff's and the other Class Members' pets' exposure. Plaintiff and the other Class Members relied upon the skill, superior knowledge, and judgment of Defendants.

238. The Seresto Collars are defective because the minimal warnings disseminated with the Seresto Collars were inadequate; they failed to communicate adequate information on the dangers and safe use/exposure; and they failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including preventing flea and ticks on pets.

239.    The information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers, including Plaintiff and the other Class Members, to utilize the products safely and with adequate protection. Instead, Defendants disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to the Seresto Collars; continued to aggressively promote the efficacy of their products, even after they knew, or otherwise should have known, of the unreasonable risks from use of or exposure to the Seresto Collars; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to the Seresto Collars.

240.    To this day, Defendants have failed to adequately and accurately warn of the true risks of Plaintiff's and the other Class Members' injuries associated with the use of and exposure to the Seresto Collars and its active ingredients imidacloprid and flumethrin, a probable central nervous system toxin. In fact, Defendants continue to actively deny that the Seresto Collars pose any risk to consumers' pets.

241.    As a result of their inadequate warnings, the Seresto Collars were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed, marketed, and promoted by Defendants, and used by Plaintiff and the other Class Members on their pets.

242.    Defendants are liable to Plaintiff and the other Class Members for injuries suffered by their pets caused by Defendants' negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of these products and the risks associated with the use of or exposure to the Seresto Collars.

243. The defects in the Seresto Collars caused or contributed to cause Plaintiff's and Class Members' pets' injuries and damages, and, but for this misconduct and omissions, Plaintiff's and Class Members' pets would not have sustained their injuries and damages.

244. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with the Seresto Collars, Plaintiff could have avoided the risk of developing injuries as alleged herein.

245. As a direct and proximate result of Defendants placing defective Seresto Collars into the stream of commerce, Plaintiff's and the other Class Members' pets have suffered severe injuries and have endured physical pain and discomfort, and Plaintiff and the other Class Members have experienced financial hardship, including considerable financial expenses for veterinary care and treatment of their pets.

## SEVENTH CLAIM FOR RELIEF
**NEGLIGENCE**
**(By Plaintiff Individually and on**
**Behalf of All Classes against All Defendants)**

246. Plaintiff reasserts the allegations set forth in the factual allegation paragraphs above and incorporates such allegations by reference herein.

247. Defendants, directly or indirectly, caused the Seresto Collars to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff and the other Class Members.

248. At all times relevant, Defendants had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of the Seresto Collars, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

249.    At all times relevant, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Seresto Collars. Defendant's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using the Seresto Collars and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to the Seresto Collars, and, in particular, its active ingredients imidacloprid and flumethrin.

250.    At all times relevant, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers the Seresto Collars and, specifically, the neurotoxic properties of the chemicals imidacloprid and flumethrin.

251.    Defendants knew, or otherwise should have known, that the Seresto Collars posed serious safety risks to pets, including Plaintiff and the other Class Members, and their pets based upon: (1) their own internal testing, data, and surveys; (2) numerous consumer complaints lodged directly with Defendants; (3) numerous consumer complaints lodged to retailers; (4) numerous consumer complaints and reports lodged with the EPA; and (5) numerous consumer complaints on online fora.

252.    Accordingly, at all times relevant, Defendants knew or, in the exercise of reasonable care, should have known that use of or exposure to the Seresto Collars could cause or be associated with Plaintiff's and the other Class Members' pets' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiff's and the other Class Members' pets.

253.    Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of the Seresto Collars were unaware of the risks and the magnitude of

the risks associated with use of and/or exposure to the Seresto Collars and imidacloprid and flumethrin-containing products.

254. Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

255. As such, Defendants breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of the Seresto Collars, in that Defendants manufactured, marketed, promoted, and sold defective pesticides based collars containing the chemicals imidacloprid and flumethrin, knew or had reason to know of the defects inherent in these products, knew or had reason to know that a user's or consumer's pet's exposure to the products created a significant risk of harm and unreasonably dangerous side effects to the pet, and failed to prevent or adequately warn of these risks and injuries.

256. In breach of their duties, Defendants negligently:

    a. Failed to design, manufacturer, formulate, and package the Seresto Collars to make them unlikely to be inhaled and absorbed into the bodies of the animals who used them, and their owners;

    b. Designed, manufactured, and formulated the Seresto Collars such that it was likely to cause neurological damage that was both permanent and cumulative injury to Class Members' pets, and repeated exposures were likely to cause clinically significant neurological injury;

     c.     Failed to conduct adequate research and testing to determine the extent to which exposure to the Seresto Collars was likely to occur through inhalation, ingestion, and absorption into the bodies of animals who used it;

     d.     Failure to conduct adequate research and testing to determine the extent to which the Seresto Collars were likely to cause or contribute to causing latent neurological damage that was both permanent and cumulative and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurological injuries; and

     e.     Failed to warn that the Seresto Collars could have caused injuries to pets. causing neurologic injury that was both permanent and cumulative.

257. Despite an ability and means to investigate, study, and test the Seresto Collars and to provide adequate warnings, Defendants have failed to do so. Indeed, Defendants have wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to the Seresto Collars and imidacloprid and flumethrin.

258. Defendants were negligent in the following respects:

     a.     Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the Seresto Collars without thorough and adequate pre-and post-market testing;

     b.     Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the Seresto Collars while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to imidacloprid combined with flumethrin,

and, consequently, the risk of serious harm associated with use of and exposure to the Seresto Collars;

c.  Failing to undertake sufficient studies and conduct necessary testing and adverse event analysis to determine whether the Seresto Collars and imidacloprid and flumethrin-containing products were safe for their intended use in flea and tick control on dogs and cats;

d.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Seresto Collars to avoid the risk of serious harm associated with the prevalent use of the Seresto Collars as a pesticide;

e.  Failing to design, test, and manufacture the Seresto Collars to ensure they were at least as safe and effective as other pesticides on the market;

f.  Failing to provide adequate instructions, guidelines, and safety precautions to those consumers and their pets who Defendants could reasonably foresee would use and be exposed to the Seresto Collars;

g.  Failing to disclose to Plaintiff, Class Members, users/consumers, and the general public that use of and exposure to the Seresto Collars presented severe risks of central nervous system injury and other grave illnesses;

h.  Failing to warn Plaintiff and Class Members, consumers, and the general public that the Seresto Collars' risk of harm was unreasonable and that there were safer and effective alternative pesticides available to Plaintiff and other consumers;

i.   Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of the Seresto Collars and imidacloprid and flumethrin;

j.   Representing that their Seresto Collars were safe for their intended use when, in fact, Defendants knew or should have known that the products were not safe for their intended purpose;

k.   Failing to make and/or submit any changes to the Seresto Collars' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Seresto Collars and imidacloprid combined with flumethrin;

l.   Advertising, marketing, and recommending the use of the Seresto Collars while concealing and failing to disclose or warn of the dangers known by Defendants to be associated with or caused by the use of or exposure to the Seresto Collars and imidacloprid and flumethrin;

m.   Continuing to disseminate information to its consumers, which indicates or implies that Defendants' Seresto Collars are safe for use on dogs and cats; and

n.   Continuing the manufacture and sale of its products with the knowledge that the Seresto Collars were unreasonably unsafe and dangerous.

259.   Defendants knew, or otherwise should have known, that it was foreseeable that consumers' pets, including Plaintiff's and the other Class Members' pets, would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Seresto Collars.

260.     Plaintiff and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to the Seresto Collars and imidacloprid combined with flumethrin.

261.     Defendants' negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiff and the other Class Members suffered, as described herein, including the injuries suffered by Plaintiff's and the other Class Members' pets.

262.     Defendants' conduct, as described above, was reckless. Defendants regularly risked the lives of consumers and users of their products, including Plaintiff and the other Class Members and their pets, with full knowledge of the dangers of the Seresto Collars. Defendants made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff and the other Class Members. Defendants' reckless conduct therefore warrants an award of aggravated or punitive damages.

263.     As a proximate result of Defendants' wrongful acts and omissions in placing the defective Seresto Collars into the stream of commerce without adequate warnings of the hazardous and neurotoxic nature of imidacloprid and flumethrin, Plaintiff's and the other Class Members' pets have suffered severe, permanent physical injuries. Plaintiff and the other class Class Members have endured pain and suffering and have suffered economic losses (including significant expenses for medical care and treatment of their pets) in an amount to be determined.

**EIGHTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(By Plaintiff Individually and on**
**Behalf of All Classes against All Defendants)**

264.     Plaintiff reasserts the allegations set forth in the factual allegations paragraphs above and incorporates such allegations by reference herein.

265.     As described herein, Defendants represented in the Seresto Collar packaging, labeling, marketing, advertising, and promotion that the Seresto Collars provide a safe means of flea and tick prevention for consumers' pets.  Defendants have continued to tout the safety of the Seresto Collars even though the Seresto Collars have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm.

266.     Contrary to these representations, the Seresto Collars pose an unreasonable safety risk to pets.

267.     Defendants omitted, concealed, and failed to disclose to consumers that the Seresto Collars pose serious safety risks to pets, including that the Seresto Collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems. Rather than disclose this information, Defendants marketed the Seresto Collars as safe for their intended purpose.

268.     Due to its misrepresentations and omissions, Defendants have knowingly and unjustly been enriched at the expense of and to the detriment of Plaintiff and the Class Members by collecting excess profits to which it is not entitled.

269.     Defendants have unjustly retained those ill-gotten gains and should be required to disgorge this unjust enrichment.

## LIMITATION ON ALLEGATIONS

270.     The allegations in this pleading are made pursuant to the state laws of Indiana and New York. To the extent state law imposes a duty or obligation on the Defendants that exceeds those required by federal law, Plaintiff does not assert such claims.  All claims asserted herein run parallel to federal law—that is, the Defendants' violations of state law were also violations of

federal law. Had Defendants honestly complied with state law, they would also have complied with federal law.

271.     Additionally, Plaintiff's claims do not seek to enforce federal law. These claims are brought under State law, notwithstanding the fact that such claims run parallel to federal law.

272.     As alleged in this pleading, Defendants violated U.S.C. § 136j and 40 C.F.R. § 10(a)(5) by distributing the Seresto Collars, which were misbranded pursuant to 7 U.S.C. § 136(g).  Federal law specifically prohibits the distribution of misbranded pesticide products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of each of the Classes described in this Complaint, respectfully request the Court to enter an Order:

A.     certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), and, in the alternative, (c)(4) as set forth above;

B.     declaring that Defendants are financially responsible for notifying the Class Members of the pendency of this suit;

C.     declaring that Defendants have committed the violations of law alleged herein;

D.     providing for any and all injunctive relief the Court deems appropriate;

E.     awarding statutory damages in the maximum amount for which the law provides;

F.     awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.     providing for any and all equitable monetary relief the Court deems appropriate;

H.     awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.      awarding Plaintiff and the other Class Memberss their reasonable costs and expenses of suit, including attorneys' fees;

J.      awarding pre-and post-judgment interest to the extent the law allows; and

K.      providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 4, 2022                    Respectfully submitted,

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 545-4653
*malmstrom@whafh.com*

Rachel Soffin
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, Florida 33713
Tel: (865) 247-0080
*rsoffin@milberg.com*

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

Michael Williams
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600

Kansas City, Missouri 64105
Tel: (816) 945-7110
Fax: (816) 945-7118
*mwilliams@williamsdirks.com*

*Co-Lead Counsel for Plaintiff
and the Proposed Classes*