## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release is entered into between and among (1) the Named Plaintiffs listed below, on behalf of themselves and as representatives of the Settlement Class, and (2) Defendants Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation in order to effect a full and final settlement and dismissal with prejudice of all claims against Defendants alleged in the actions (as identified herein) comprising the multidistrict litigation proceeding known as *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.,* MDL No. 3009, Lead Case No. 1:21-cv-04447 (N.D. Ill.), on the terms set forth below and to the full extent reflected herein, all subject to the Court's approval.

## I.  DEFINITIONS

Capitalized terms, as used throughout this agreement, have the meanings set forth below.

1.      "Administrative Costs" means all reasonable and authorized non-Notice Costs and other expenses incurred by the Claims Administrator in administering the Settlement, including, but not limited to, costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, issuing and mailing Cash Payments, paying Taxes and Tax Expenses, and other reasonable and authorized fees and expenses of the Claims Administrator. To the extent possible, the Claims Administrator will delay incurring Administrative Costs until after Final Approval and after the Effective Date of the Settlement.

2.      "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release, including all exhibits hereto.

3.       "Approved Claim" means a Claim Form submitted by a Settlement Class Member that is (a) submitted timely and in accordance with the directions on the Claim Form and the provisions of this Agreement; (b) is fully completed and executed by the Settlement Class Member under penalty of perjury and provides all required information (including, to the extent applicable, Valid Proof of Purchase); and (c) is approved for payment by the Claims Administrator pursuant to the terms of this Agreement.

4.       "Attorneys' Fees and Costs" means the total award of attorneys' fees, costs, and expenses sought by Class Counsel, any Settlement Class Member's counsel and/or any law firms who have entered appearances for Settlement Class Members or Named Plaintiffs and allowed by the Court.

5.       "CAFA Notices" means the notice of this Settlement to be served or caused to be served by Claims Administrator upon State and Federal regulatory authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

6.       "Cash Payment" means the cash payment(s) to Settlement Class Members pursuant to Section IV.

7.       "Claim(s)" means the act of requesting a Cash Payment.  To make a Claim, Settlement Class Members must timely complete and submit a valid Claim Form as described in the Settlement Agreement.

8.       "Claim Deadline" means one hundred eighty (180) Days after the Preliminary Approval Order, which date shall be specified in the Class Notice.

9.       "Claim Form" means the claim form that Settlement Class Members must complete and submit on or before the Claim Deadline to be eligible for the benefits described herein, which document shall be substantially in the form of Exhibit A hereto. The Claim Form shall require a

sworn signature under penalty of perjury, but shall not require a notarization or any other verification form. No more than one Claim per Settlement Class Household shall be submitted or allowed as an Approved Claim.

10. "Claim Period" means the time in which the Settlement Class may file Claim Forms, up to and including the Claim Deadline.

11. "Claimant" means a purchaser or user of any Seresto Product for their dog or cat who submits a timely Claim Form, limited to no more than one Claim Form per Settlement Class Household.

12. "Claims Administrator" means Angeion Group, who was selected by Class Counsel and Defendants, collectively, and will have duties including the oversight of publication of Class Notice, maintaining the Settlement Website, processing of Claim Forms in connection with this Settlement, and ensuring that Cash Payments are paid from the Escrow Account.

13. "Class Counsel" or "Co-Lead Class Counsel" means Michael Williams of Williams Dirks Dameron LLC; Rachel Soffin of Milberg Coleman Bryson Phillips Grossman PLLC; and Michael R. Reese of Reese LLP.

14. "Class Member Payment List" means the list of Settlement Class Members who have been determined by the Claims Administrator to be eligible to receive Cash Payments.

15. "Class Notice" means the Court-approved forms of notice to Settlement Class Members, in substantially the same form as Exhibits B ("Short Form Notice") and C ("Long Form Notice"), which will notify Settlement Class Members of the Preliminary Approval of the Settlement and the scheduling of the Fairness Hearing, among other things.

16. "Class Notice Plan" means the Court-approved plan and schedule for the Claims Administrator providing class-wide notice of the Settlement and certification of the Settlement

Class, including the Class Notice, in accord with the Federal Rules of Civil Procedure and as approved and ordered by the Court, and providing the required CAFA Notices.

17.     "Class Notice Program" means the document provided by the Claims Administrator to Class Counsel and Defense Counsel that sets forth a detailed estimate and a "not-to-exceed" price for performing all tasks and duties regarding this Settlement.

18.     "Court" means the United States District Court for the Northern District of Illinois.

19.     "Covered Products" or "Covered Product" or "Seresto Products" or "Seresto Product" or "Collar" or "Collars" or "Products" or "Product" means, collectively, the Seresto Flea and Tick Collar for Large Dogs (above 18 pounds); the Seresto Flea and Tick Collar for Small Dogs (under 18 pounds); and the Seresto Flea and Tick Collar for Cats.

20.      "*Cy Pres* Recipient" means the American Society for the Prevention of Cruelty to Animals ("ASPCA"), contingent upon approval by the Court.  The Parties represent that neither they, nor their counsel, have any connection—professional or personal—with the *Cy Pres* Recipient.

21.     "*Cy Pres* Contribution Amount" means amounts remaining in the Net Settlement Fund following payment of all amounts due to be distributed under this Agreement, including any maximum payment of Cash Payments and *pro rata* increase of Cash Payments.  Without limiting the foregoing, the *Cy Pres* Contribution Amount shall include all uncashed Cash Payments made by check.

22.     "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be

included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday in the State of Illinois.

23.    "Death Related Costs Documentation" means invoices, receipts or other documentary proof of out-of-pocket, non-reimbursed, costs for cremation, burial or other disposal of a pet that may be reimbursed based upon criteria and procedures set forth in Section IV.3.g.

24.    "Defendants" means Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation.

25.    "Defense Counsel" means John P. Mandler, Andrea Roberts Pierson, and Andrew L. Campbell of Faegre Drinker Biddle & Reath LLP, collectively.

26.    "Deposit Amount" means the sum of five hundred thousand dollars ($500,000.00), which amount Defendants shall pay or cause to be paid into the Escrow Account within ten (10) Days after the Preliminary Approval Date to pre-pay certain of the Claims Administrator's fees and costs.  Payment of the Deposit Amount shall constitute a credit in like amount against the Settlement Amount.

27.    "Effective Date" means three (3) Days after the first business day after which the Final Order and Judgment becomes a final, non-appealable judgment approving the Settlement Agreement in all respects, as more fully set forth in Section XVI, below.

28.    "EPA Decision Document" means EPA's Memorandum in Support of the Regulatory Decision for PNR 1427 (Seresto Pet Collar, EPA Reg. No. 11556-155) issued on July 13, 2023, available at https://www.regulations.gov/document/EPA-HQ-OPP-2021-0625-0013.

29.    "Escrow Account" means the separate, interest-bearing escrow account to be established by the Claims Administrator under the terms agreed upon with Class Counsel and

**Execution Copy**

Defense Counsel. The costs of administering and maintaining the Escrow Account shall be paid from the Settlement Amount.

30. "Fairness Hearing" or "Final Approval Hearing" means the hearing conducted by the Court to determine whether to approve this Settlement and to determine the fairness, adequacy, and reasonableness of this Settlement.

31. "Final," when referring to a judgment or order, means: (a) the judgment is a final, appealable judgment; and (b) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc,* petitions for writ of *certiorari,* or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects.

32. "Final Order and Judgment" means the order defined in Section XIV, except that any enhancement or reduction to an award of Attorneys' Fees and Costs, or to Service Awards shall not constitute a material alteration.

33. "JPML" means the Judicial Panel on Multidistrict Litigation.

34. "Litigation" or "MDL Litigation" means the actions comprising the multidistrict litigation proceeding known as *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, MDL No. 3009, Lead Case No. 1:21-cv-04447 (N.D. Ill.).

35. "Medical Treatment Costs Documentation" means invoices, receipts or other documentary proof of out-of-pocket, non-reimbursed costs that evidences medical treatment that may be reimbursed based upon criteria and procedures set forth in Section IV.3.e below.

36.     "Named Plaintiffs" or "Class Representatives" means all individually named Plaintiffs in the class action Complaints that have been transferred to the MDL Litigation.

37.     "Net Settlement Fund" means the Settlement Amount minus any Court-approved Attorneys' Fees and Costs, Service Awards, and Notice Costs, and Administrative Costs.

38.     "Notice Costs" means the reasonable and authorized costs and expenses of publishing and disseminating the Class Notice, making available the Official Notice in accordance with the Preliminary Approval Order, and creating and drafting content for the Settlement Website and toll-free number, and including the Deposit Amount and any and all other reasonable and approved costs to carry out the approved Class Notice Program.   Notice Costs shall also include, subject to mutual agreement by the Parties, recommended reasonable and best efforts by the Claims Administrator to stimulate and maximize the claims rate for the Settlement Class to ensure that the maximum amount of the Net Settlement Fund goes to the Settlement Class as possible. The amount of Notice Costs will not be more than $380,000.00.

39.     "Notice Date" means the first Day on which the Claims Administrator or its designee publishes or otherwise disseminates the Class Notice, which shall be no later than thirty (30) Days after the Preliminary Approval Date.

40.     "Opt-Out" shall refer to a member of the Settlement Class who properly and timely submits a request for exclusion from the Settlement Class as set forth in Section X.  An Opt-Out may rescind a request for exclusion by timely submitting a Claim Form to the Claims Administrator to obtain benefits of the Settlement.

41.     "Opt-Out List" shall refer to the list compiled by the Claims Administrator pursuant to Section X, Paragraph 12, identifying those members of the Settlement Class who properly opt out.

42. "Opt-Out and Objection Date" means the date by which a request for exclusion must be sent to (and, if submitted online, verified by) the Claims Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and the date by which Settlement Class Members must file objections with the Court, if any, to the Settlement. The Opt-Out and Objection Date shall be one hundred and eighty (180) Days after the Preliminary Approval Date.

43. "Parties" means the Named Plaintiffs and the Defendants. The Named Plaintiffs shall be referred to as one "Party" with Defendants being the other "Party."

44. "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, member, joint stock company, estate, legal representative, trust, unincorporated association, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

45. "Pet Death Reimbursement" means the amount stated below in Section IV.3.f that a Claimant shall receive for the death of their pet, and approved by the Claims Administrator subject to the provisions set forth in Section IV.3.f.-g. below.

46. "Pet Injury Reimbursement" means the amount stated below in Section IV.3.d. that a Claimant shall receive for injuries of their pet, and approved by the Claims Administrator subject to the provisions set forth in Section IV.3.d.-e. below.

47. "Preliminary Approval Date" means the date the Preliminary Approval Order has been executed and entered by the Court.

48. "Preliminary Approval Order" means the order by which the Court directs Notice be issued to the Settlement Class after reviewing information sufficient to enable the Court to

**Execution Copy**

determine whether to provide notice of the proposed Settlement, which is attached hereto without material alteration as Exhibit D.

49.     "Protective Order" means the Stipulated Protective Order Regarding Confidentiality entered by the Court at Docket Entry 78 on July 15, 2022.

50.     "Release" means the release and discharge, as of the Effective Date, by the Named Plaintiffs and all Settlement Class Members (and their respective successors and assigns) who have not excluded themselves from the Settlement Class of the Released Persons (defined below) of and from all Released Claims (defined below).  The Release shall include the agreement and commitment by the Named Plaintiffs and all Settlement Class Members to not now or hereafter initiate, maintain, or assert against the Released Persons or any of them any of the Released Claims, whether in the Litigation or in any other court action or before any administrative body (including any regulatory entity or organization), tribunal, arbitration panel, or other adjudicating body.

51.     "Released Claims" means any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets, or liabilities, whether known or unknown, legal, equitable, or otherwise, that were asserted or could have been asserted in the Litigation, including, but not limited to, tort claims, claims for breach of express warranty, breach of implied warranty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, breach of statutory duties, actual or constructive fraud, misrepresentations, fraudulent inducement, fraudulent concealment, statutory and consumer fraud, breach of fiduciary duty, unfair business or trade practices, restitution, rescission, compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties, claims relating to the alleged mislabeling of Seresto Products and/or the alleged injury of dogs or cats, any theory of recovery, and any other claims, whether known or unknown, alleged or not alleged in the

Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Named Plaintiffs and/or any Settlement Class Member had, now have, or may in the future have up until fourteen (14) Days prior to the expiration of the Claims Period with respect to any conduct, act, omissions, facts, matters, transactions, or oral or written statements or occurrences on or prior to fourteen (14) Days prior to the expiration of the Claim Period arising from or relating to claims pertaining to the Covered Products as asserted, or that could have been asserted in the Litigation, including, without limitation, any allegation or assertion that Defendants made false and deceptive representations and warranties and omitted material information about the Seresto Products, as asserted in the Litigation by the Named Plaintiffs and/or the Settlement Class Members including, without limitation, causes of action for express warranty, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Indiana Deceptive Consumer Sales Act, California's Consumers Legal Remedies Act, California's False Advertising Law, California's Unfair Competition Law, the Connecticut Unfair Trade Practice Act, the Florida Deceptive and Unfair Trade Practices Act, the New Jersey Consumer Fraud Act, New York's Consumer Protection from Deceptive Acts and Practices Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, the Virginia Consumer Protection Act of 1977 and similar claims under the false advertising, consumer protection, and/or deceptive trade practices acts and common law and statutory law of any jurisdiction within the U.S., including federal, state, or local law. This release does not include any claims for personal injuries to humans.

52. "Released Persons" means Defendants, their respective affiliates and members, and Defendants' respective affiliates' and members' respective past, present and future predecessors, successors, assigns, parents, subsidiaries, affiliates, joint venturers, partnerships, limited liability

**Execution Copy**

companies, corporations, unincorporated entities, divisions, groups, directors, officers, shareholders, members, employees, partners, agents, insurers, reinsurers, co-insurers, and attorneys.

53.    "Releasing Persons" means the Named Plaintiffs, on behalf of themselves and all Settlement Class Members who have not excluded themselves from the Settlement Class, each of the Settlement Class Members who have not excluded themselves from the Settlement Class, and the respective heirs, administrators, representatives, agents, partners, successors, and assigns of each of the Named Plaintiffs and the Settlement Class Members who have not excluded themselves from the Settlement Class.

54.    "Service Awards" means compensation for the Named Plaintiffs in the Litigation for their time and effort undertaken in this Litigation as defined in Section XI, which shall be subject to Court approval.

55.    "Settlement" means the settlement set forth in this Agreement.

56.    "Settlement Amount" means the all-in sum of fifteen million U.S. dollars ($15,000,000.00), which shall be used to pay Cash Payments, Notice and Administration Costs (including the Deposit Amount), Attorneys' Fees and Costs, and Service Awards.

57.    "Settlement Class" or "Class" means all Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period, subject to the exclusions set forth in Section III, Paragraph 1(i)-(v) below.  Defendants agree to certification of a Class for settlement purposes only and deny that any such Class could otherwise be properly certified.

58.     **"**Settlement Class Household" for purposes of making a Claim, shall be comprised of a Settlement Class Member together with any family, which includes both immediate and extended family members, living under the same roof as the Settlement Class Member.

59.     "Settlement Class Member" means a Person who falls within the definition of the Settlement Class set forth in Section III, Paragraph 1.

60.     "Settlement Website" means *FleaandTickCollarSettlement.com* which will be a dedicated website created and maintained by the Claims Administrator, as set forth in Section IX.9.c, and will contain relevant documents and information and shall provide, at a minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Fairness Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Class Notices, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Co-Lead Class Counsel's Motion for Approval of Attorneys' Fees, Cost, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically.

61.     "Settling Parties" means, collectively, the Released Persons, the Releasing Persons, and all Settlement Class Members.

62.     "Taxes" shall mean all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Escrow Account.

63.     "Tax Expenses" shall mean expenses and costs incurred in connection with the operation and implementation of the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns).

Execution Copy

64.     "Valid Proof of Purchase" means verifiable documentation of a transaction that reflects the purchase of one or more Seresto Products on or before fourteen (14) days prior to the expiration of the Claims Period.  Examples may include but are not limited to store receipts; online purchase receipts; packaging; the Seresto Product (*i.e.*, Collar) itself; or any other contemporaneous record of purchase that is objectively verifiable.

65.     The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

## II.   <u>RECITALS</u>

1.     Beginning on March 2, 2021, no less than 21 class action complaints were filed against one or more of Defendants in various state and federal courts around the country.  Each of these lawsuits alleged generally that:  one or more of Defendants falsely labeled and marketed the Seresto Products representing that the Products would provide 8 months of protection from fleas and ticks while at the same time failing to disclose that the Products presented health risks to pets that wore the Products; the Named Plaintiffs relied on that labeling and marketing and paid a premium therefor based upon those representations in purchasing the Products; the Named Plaintiffs would not have purchased the Products and/or would not have paid a premium had they known the risks associated with the Products; the Named Plaintiffs' and Class Members' cats and/or dogs suffered injury as a result of the Product; and the Named Plaintiffs were thereby damaged.  The lawsuits asserted claims for, *inter alia,* breach of express and implied warranty, unjust enrichment, common law fraud, intentional and negligent misrepresentation, and violations of certain state consumer protection, false advertising, and unfair competition statutes.

2.     Defendants deny each and every allegation of wrongdoing, liability, and damages asserted in the Litigation, including each separate action; deny that they have engaged in any wrongdoing whatsoever; deny that they made any false and/or misleading representations or

omitted any material information about the Seresto Products; deny that the Named Plaintiffs and the putative classes were overcharged or paid a premium as a result of any conduct alleged against Defendants; deny that any cats or dogs were injured as a result of the formulation of the Seresto Products; and deny that any of the lawsuits can properly be maintained as a class action.

3.      On August 11, 2021, and in subsequent related orders, the JPML transferred all pending cases for coordinated and consolidated pre-trial proceedings to the United States District Court for the Northern District of Illinois before the Honorable John Robert Blakey The resulting multidistrict litigation was captioned *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, MDL No. 3009, Lead Case No. 1:21-cv-04447 (N.D. Ill.).

4.      On February 7, 2022, the Court appointed Michael Williams of Williams Dirks Dameron LLC; Rachel Soffin of Milberg Coleman Bryson Phillips Grossman PLLC; and Michael R. Reese of Reese LLP as Co-Lead Interim Class Counsel on behalf of the putative classes.  The Court renewed this Co-Lead Interim Class Counsel appointment on January 20, 2023.

5.      Class Counsel have made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Litigation and have engaged in investigation and discovery of the claims asserted therein including confirmatory discovery.

6.      The Named Plaintiffs and Class Counsel acknowledge that the mitigation measures in the EPA Decision Document are sufficient to put consumers on notice of any alleged risk involved in the use of a Seresto Collar and, as a result, there is no basis for a claim for Settlement Class Members for breach of express and implied warranty, unjust enrichment, common law fraud, intentional and negligent misrepresentation, and violations of certain state consumer protection, false advertising, and unfair competition statutes.

**Execution Copy**

7.      The Named Plaintiffs and Class Counsel have examined the benefits to be obtained under the terms of this Agreement, have considered the substantial risks associated with the continued prosecution of the Litigation and the likelihood of success on the merits and believe that it is in the best interests of the Class as a whole that the claims asserted in the Litigation be resolved on the terms and conditions set forth in this Agreement.  Class Counsel reached that conclusion after considering the factual and legal issues presented in the Litigation, the substantial benefits that Settlement Class Members will receive as a result of the Settlement, the substantial risks and uncertainties of continued litigation, the expense that would be necessary to prosecute the Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

8.      Defendants have denied, and continue to deny, each and every allegation of liability, wrongdoing, and damages.  Defendants further deny that the Litigation, including any separate action, may properly be maintained as a class action except for settlement purposes. Nonetheless, without admitting or conceding any liability or damages whatsoever, without admitting any wrongdoing, and without conceding the appropriateness of class treatment for claims asserted in any current or future complaint (except for settlement purposes in the Litigation), Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the substantial expense, inconvenience, burden, and disruption of continued litigation.

9.      The Parties agree and understand that neither this Agreement nor the Settlement it represents shall be construed as an admission by Defendants (any or all of them) of any wrongdoing whatsoever, including, without limitation, any admission of any violation of any

statute or law or any admission of liability based on any of the claims or allegations asserted in the Litigation.

10.     The Parties agree and understand that neither this Agreement nor the settlement it represents shall be construed or admissible as an admission by Defendants in the Litigation or any other proceedings that the Named Plaintiffs' claims or any other similar claims are or would be suitable for class treatment if the Litigation proceeded through both litigation and trial.

11.     The Parties desire to compromise and settle all issues and claims that have been brought or could have been brought against the Released Persons arising out of or related to the claims asserted in the Litigation.

## III.   PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

1.     The Parties stipulate to certification, for settlement purposes only, of a Settlement Class defined as follows:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period.

Specifically excluded from the Settlement Class are the following persons:

(i)     Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;

(ii)    Class Counsel;

(iii)   The judges who have presided over the Litigation;

(iv)    Local, municipal, state, and federal governmental agencies; and

(v)     All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

2.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, Defendants stipulate to the Court entering an order preliminarily certifying the Settlement Class, appointing the Named Plaintiffs as representatives of the Settlement Class, and appointing the following as Class Counsel for the Settlement Class:

| | |
|---|---|
| Michael Williams<br>**WILLIAMS DIRKS DAMERON LLC**<br>1100 Main Street, Suite 2600<br>Kansas City, Missouri 64105<br>Telephone: (816) 945-7110 | Michael R. Reese<br>**REESE LLP**<br>100 West 93rd Street, 16th Floor<br>New York, New York 10025<br>Telephone: (212) 643-0500 |

Rachel Soffin
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
3833 Central Avenue
St. Petersburg, Florida 33713
Telephone: (865) 247-0080

3.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, the Parties stipulate that Angeion Group will be appointed as Claims Administrator.

4.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, Defendants stipulate that the Named Plaintiffs and Class Counsel are adequate representatives of the Settlement Class.

## IV.  <u>SETTLEMENT FUND</u>

1.      <u>Settlement Payment</u>.  Pursuant to the terms and conditions set forth below, and in consideration of the promises, agreements, and undertaking of the Named Plaintiffs and Settlement Class set forth herein, Defendants agree to pay or cause to be paid the Settlement Amount into the Escrow Account.  Payment of the Settlement Amount shall be "all-in" and in full satisfaction of all Settlement costs including, without limitation, Cash Payments, the Deposit Amount, Notice Costs, Administration Costs, Attorneys' Fees and Costs, and Service Awards.  In

no event shall Defendants be obligated to contribute any amount in excess of the Settlement Amount to satisfy their Settlement payment obligations under this Agreement.

2.    <u>Establishment of Escrow Account</u>. Within ten (10) Days after the Preliminary Approval Date, Defendants will pay, or cause to be paid, the Deposit Amount of five hundred thousand dollars ($500,000.00) into the Escrow Account. Within ten (10) Days after the Effective Date, Defendants will pay, or cause to be paid, the remainder of the Settlement Amount, of fourteen million, five hundred thousand dollars ($14,500,000.00) into the Escrow Account. Any interest that accrues on the Settlement Amount in the Escrow Account shall be added to the Settlement Amount.

3.    <u>Cash Payments to Settlement Class Members</u>. In accordance with the terms of this Agreement, the Claims Administrator will distribute the Net Settlement Fund to Settlement Class Members who submit Approved Claims and have not submitted a valid and timely request for exclusion from the Settlement Class. Claimants may submit no more than one (1) Claim Form per Settlement Class Household as follows:

a.    <u>Claim Form</u>. To make a Claim under the terms of this Agreement, Settlement Class Members must submit, during the Claim Period, a Claim Form substantially similar to the Claim Form attached hereto as Exhibit A. The Parties shall work with the Claims Administrator to ensure that the Claim Form is easy to understand and complete, that the Claim Form is offered in English and Spanish consistent with guidance from the Federal Judicial Center's *Managing Class Action Litigation: A Pocket Guide for Judges*, and that the Claim Form is adapted to online use. All Claimants will be required to execute the Claim Form under penalty of perjury, affirming that they made the claimed purchases of Seresto Products as determined by the Parties.

b.      <u>No Cash Payments for Non-Economic Injury of Claimants</u>. Claimants may not receive a Cash Payment or otherwise recover for non-economic injuries (*e.g.*, emotional distress or pain or suffering) of pet owners or pets.

c.      <u>Cash Payment – Reimbursement for Collar Purchase</u>

i.      <u>Claimants without Valid Proof of Purchase</u>. Claimants without Valid Proof of Purchase shall be eligible to receive a Cash Payment of thirteen dollars ($13.00) for each Collar purchased per pet, subject to a maximum Cash Payment of twenty-six dollars ($26.00) per pet.

ii.      <u>Claimants with Valid Proof of Purchase</u>. Claimants with Valid Proof of Purchase shall be eligible to receive a Cash Payment of thirteen dollars ($13.00) for each Collar purchased for which the Claimant provides a Valid Proof of Purchase.  There is no limitation to the amount of Collars that a Claimant can seek reimbursement for with a Valid Proof of Purchase.

iii.      <u>Claimants' Right to Submit a Claim Form Without Valid Proof of Purchase and With Valid Proof of Purchase</u>. Claimants may submit a Claim Form seeking a Cash Payment without a Valid Proof of Purchase and with a Valid Proof of Purchase and receive reimbursement for both.  Claimants submitting a Claim Form seeking a Cash Payment for purchases of Collars during the Class Period without a Valid Proof of Purchase and with a Valid Proof of Purchase shall be eligible to receive a Cash Payment equal to: (a) thirteen dollars ($13.00) per Collar per pet without Valid Proof of Purchase of their purchases of Collars during the Class Period subject to a maximum Cash Payment of twenty-six dollars ($26.00) per pet, <u>plus</u> (b) thirteen dollars ($13.00) for each claim that is made with Valid Proof of Purchase of their purchases of Collars during the Class Period.

d.     <u>Cash Payment – Reimbursement for Non-Death Injury of Pet</u>.     All Claimants who allege a pet injury caused by the Seresto Collar that did not result in death shall receive one (but not both) of the following:

i.     Twenty-five dollars ($25.00) for economic injury; or

ii.     100% of any out-of-pocket, non-reimbursed costs paid by the Claimant for medical treatment based on the Medical Treatment Costs Documentation submitted by the Claimant to the Claims Administrator.

For sake of clarity, a Claimant does not need to submit Medical Treatment Costs Documentation to receive the twenty-five dollars ($25.00) payment provided that the Claimant submits a declaration under penalty of perjury in the matter described in Claim Form, substantially in the form of Exhibit A hereto, that describes the pet injury alleged to be caused by use of the Seresto Product and that Claimant experienced some economic loss related to that injury.

e.     <u>Proof Required for Medical Treatment Costs Documentation.</u>   The following constitute Medical Treatment Costs Documentation:

i.     Dated medical bills or receipts from a licensed veterinarian or other animal health care provider evidencing payments made by Claimant related to Claimant's claimed pet injury, along with medical records indicating treatment related to the injury alleged to be caused by use of the Seresto Product; <u>or</u>

ii.     A declaration supplied by a licensed veterinarian or other animal health care provider evidencing payments made by Claimant related to the Claimant's claimed pet injury, also describing the treatment related to the injury alleged to be caused by use of the Seresto Product; <u>and</u>

     a.    Dated credit card statements; check statements; or other payment documentation evidencing payment by the Claimant related to the Claimant's claimed pet injury; or

     b.    Dated bank statements evidencing payment of out-of-pocket expenses related to the Claimant's claimed pet injury.

     f.    <u>Cash Payment – Reimbursement for Death of Pet</u>.  All Claimants who had a pet death alleged to be caused by the Seresto Collar shall receive the following:

     i.    Three hundred dollars ($300.00) for pet property or replacement value, and

     ii.    100% of any out-of-pocket, non-reimbursed costs paid for the following:

     a.    Costs paid by the Claimant for medical treatment based on the Medical Treatment Costs Documentation submitted by the Claimant to the Claims Administrator; and/or

     b.    Costs paid by the Claimant for burial, cremation or other disposal of the pet as evidenced by Death Related Costs Documentation submitted by the Claimant to the Claims Administrator.

A Claimant does not need to submit Medical Treatment Costs Documentation or Death Related Costs Documentation to receive the three-hundred-dollar ($300.00) payment provided the Claimant submits a declaration under penalty of perjury in the manner described in Claim Form, substantially in the form of Exhibit A hereto, that confirms the pet death alleged to be caused by use of the Seresto Product and that Claimant experienced some economic loss related to the pet death.

A Claimant also does not need to submit Medical Treatment Costs Documentation to receive payment based on Death Related Costs Documentation provided the Claimant submits a declaration under penalty of perjury in the manner described in Claim Form, substantially in the

form of Exhibit A hereto, that confirms the pet death alleged to be caused by use of the Seresto

Product and that Claimant experienced some economic loss related to the pet death.

A Claimant also does not have to submit Death Related Costs Documentation to receive

payment for Medical Treatment Costs Documentation. A Claimant may submit a Claim Form

seeking a Cash Payment for reimbursement for costs based on both Valid Treatment

Documentation and Valid Death Related Documentation.

        g.     <u>Proof Required for Death Related Costs Documentation</u>. The following

constitute Death Related Costs Documentation:

        i.     Dated bills or receipts evidencing payments made by Claimant

related to the burial, cremation or other disposal of a pet; <u>or</u>

        ii.     A declaration supplied by the provider of pet burial, cremation,

or other pet disposal services; <u>and</u>

        a.     Dated credit card statements; check statements or other payment documentation evidencing payment by the Claimant for the burial, cremation, or other disposal of the pet; or

        b.     Dated bank statements evidencing payment of out-of-pocket expenses related to Claimant's payment for burial, cremation, or other disposal of a pet.

        4.     <u>Claim Submission</u>. Any Settlement Class Member who wishes to submit a claim

must timely complete, sign (by hard copy or electronic signature), and submit a Claim Form and

provide the Claims Administrator with all requested information (including, to the extent

applicable, Valid Proof of Purchase). Claimants shall complete a Claim Form, substantially in the

form of Exhibit A hereto. If submitted by U.S. Mail, the Claim Form must be postmarked no later

than the Claim Deadline. If submitted on-line or via electronic mail, the Claim Form must be

received no later than the Claim Deadline. All Claim Forms shall be submitted to the Claims

Administrator under penalty of perjury.

5.      <u>Claim Review</u>.  The Claims Administrator shall review and evaluate each Claim Form, including any Valid Proof of Purchase submitted therewith, for validity, timeliness, and completeness.  Failure to provide all information requested on the Claim Form will not result in immediate denial or nonpayment of a Claim.  Instead, the Claims Administrator will take reasonable and customary steps to notify the Claimant of the Claim deficiency, including but not limited to, written e-mail notification when possible, requesting the additional information necessary to demonstrate eligibility.  If, in the determination of the Claims Administrator, the Claimant completes a timely but incomplete Claim Form (e.g., the Claim Form is not signed; there is no Valid Proof of Purchase when it appears the Claimant intended to provide one or more Valid Proofs of Purchase; or there is an inadequate Valid Proof of Purchase), the Claims Administrator will take such steps to notify the Claimants of the Claim deficiency within thirty (30) Days after the Claim Deadline or within thirty (30) Days of receipt of a timely postmarked response, whichever is later.  To cure the deficiency, the Claim Form deficiency response must be submitted via the online claim portal or postmarked within thirty (30) Days after the mailing date of the notice of defect by the Claims Administrator and must cure the core defect of the Claim or the Claim will be denied.  If the Claimant cures the deficiencies identified by the Claims Administrator within the thirty (30) Day period following notice by the Claims Administrator, and the Claims Administrator thereafter determines that the Claimant's Claim is complete and valid, the Claims Administrator shall include the Claimant in the Class Member Payment List.  Claim Forms shall be reviewed and evaluated for deficiencies in the order in which they are received, to the extent practicable.  Class Counsel and Defense Counsel shall have the right to review the Claim files of the Claims Administrator at any time.  The Claims Administrator shall have the right to confer with Class Counsel and Defense Counsel with respect to any Claim.

6. <u>Verification and Investigation</u>:  Each Claimant authorizes the Claims Administrator to verify facts and details of any aspect of the claim and/or existence and amounts of the claim based upon Proof of Purchase, Medical Treatment Costs Documentation, and/or Death Related Costs Documentation.  The Claims Administrator, at its sole discretion, may request additional documentation or authorizations, which each Claimant must provide in order to receive payment. No claim will be considered complete and eligible for payment until such time that any additional documentation requested by the Claims Administrator is provided and/or deficiencies are cured. The Claims Administrator will have the discretion to undertake, or cause to be undertaken, further verification and investigation, including the nature and sufficiency of any Claim documentation.

7. <u>Fraudulent or Suspicious Claims</u>.  If the Claims Administrator, Class Counsel or Defense Counsel suspects fraud or misleading conduct with respect to any Claim, then the Claims Administrator, Class Counsel or Defense Counsel will immediately bring the Claim to the attention of the Claims Administrator. Class Counsel and Defense Counsel will then meet and confer concerning the Claim, including whether the Claim should be denied.  Class Counsel and Defense Counsel reserve the right to bring the Claim to the attention of the Court.

8. <u>Defendants' Dealings with Settlement Class Members</u>.  If contacted during the Claim Period regarding this Settlement Agreement or a Claim by a Settlement Class Member or a Claimant regarding this Settlement, Defendants will use reasonable efforts to refer that Person to the Claims Administrator by providing to that Person the name of the Claims Administrator, the domain name of the Settlement Website, and the established toll-free number regarding the Settlement.

9. <u>Distribution to Eligible Claimants</u>.  The Claims Administrator shall begin paying timely, valid, and Approved Claims within the later of sixty (60) Days after the Effective Date or

sixty (60) Days after all potential invalid claims discussed above in Section IV, Paragraph 5 have been resolved, whichever is later. The Claims Administrator shall provide Claimants with options to receive Cash Payments that will maximize how the Net Settlement Fund is distributed to the Settlement Class, including offering payment by electronic means to the extent possible. Settlement Payments issued by check will remain valid for 180 Days, and such expiration period shall be printed on the face of each check. Settlement Class Members shall not be entitled to request a reissued check after expiration of the 180-Day period. Cash Payments issued by check will be deemed void once the 180-Day period expires.

## V. PLAN OF ALLOCATION OF CASH PAYMENTS

1. No later than sixty (60) Days after all deadlines for correcting deficiencies pursuant to Section IV, Paragraph 5 have passed, the Claims Administrator will provide to Class Counsel and Defense Counsel a report containing all of the following:

   a. The total number of Claims filed and the total number of Approved Claims.

   b. The total aggregate Cash Payment amount calculated for all Approved Claims without Valid Proof of Purchase.

   c. The total aggregate Cash Payment amount calculated for all Approved Claims with Valid Proof of Purchase.

   d. The total aggregate Cash Payment amount calculated for all Approved Claims both without Valid Proof of Purchase and with Valid Proof of Purchase.

   e. The total aggregate Cash Payment amount calculated for all Approved Claims with Medical Treatment Costs Documentation.

   f. The total aggregate Cash Payment amount calculated for all Approved Claims with Death Related Costs Documentation.

       g.      The total aggregate Cash Payment amount for all Approved Non-Death Pet Injury Claims.

       h.      The total aggregate Cash Payment amount calculated for all Approved Claims for Pet Deaths.

       i.      The total aggregate Cash Payment amount calculated for all Approved Claims (collectively the "Calculated Cash Payment Total"), which amount shall be equal to the sum of the total aggregate Cash Payment amounts set forth in Section V.1 (b)-(h); and

       j.      The amount of the Net Settlement Fund.

2.      If the Calculated Cash Payment Total exceeds the Net Settlement Fund, then the Cash Payment amounts will be proportionately reduced on a *pro rata* basis to all Claimants.

3.      If the Net Settlement Fund is greater than the Calculated Cash Payment Total, then each Cash Payment shall be proportionately increased on a *pro rata* basis, up to a total Cash Payment amount equal to four (4) times the Cash Payment amount prior to the increase or until the Net Settlement Fund is exhausted, whichever occurs first.

4.      The Parties agree that any public statement relating to any Cash Payment available under the Settlement shall be limited to the terms and content of the Official Notice.

## VI.    CHARITABLE, *CY PRES* CONTRIBUTION

1.      The *Cy Pres* Contribution Amount shall be donated to the ASPCA, subject to approval by the Court after Class Counsel files a motion with the Court requesting that the *Cy Pres* Contribution Amount be donated. In calculating the *Cy Pres* Contribution Amount, the Claims Administrator shall also include all uncashed Cash Payments made by check. No remaining amounts shall revert back to the Defendants.

2.      <u>Payments to *Cy Pres* Recipients</u>. Payments to the *Cy Pres* Recipient, if any, shall be made by the Claims Administrator ninety (90) Days after the date by which the Claims

Administrator completes the process for stopping payment on any Cash Payment checks that remain uncashed.

## VII.   NOTICE COSTS AND ADMINISTRATIVE COSTS

1.      The Claims Administrator shall pay or cause to be paid all Notice Costs and Administrative Costs and all such Notice Costs and Administrative Costs shall be part of the Settlement Amount.

2.      If the Court does not approve the Settlement following the Fairness Hearing or the Settlement is reversed on appeal, the Parties will equally split the Notice Costs and Defendants will be responsible for any Administrative Costs incurred.  For Plaintiffs' side, the co-lead Class Counsel firms will bear responsibility for half the Notice Costs up to $190,000. If, however, either Party terminates the Settlement in accordance with the terms of this Agreement, the terminating Party will be responsible for all Notice Costs and all Administrative Costs.

## VIII.   TAX TREATMENT OF SETTLEMENT ACCOUNT; CONSEQUENCES OF TERMINATION

1.      The Parties will treat, and the Settling Parties will jointly move for Court approval of the Escrow Account as a "qualified settlement fund" within the meaning of Treasury Regulations 1.468B-1 through 1.468B-5, 26 C.F.R. 1.468B-1 through 1.468B-5 (1992).  They will treat the Escrow Account as a qualified settlement fund for all reporting purposes under the federal tax laws.  In addition, the Claims Administrator and, as required, Defendants will jointly and timely make the "relation-back election" (as defined in Treasury Regulation 1.468B-1) back to the earliest permitted date.  Such election will be made in compliance with the procedures and requirements contained in such regulations.  It will be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.      The Claims Administrator shall act as the Escrow Agent within the meaning of section 468B of the Internal Revenue Code of 1986 and Treasury Regulation 1.468B for the Escrow Account.  The Claims Administrator will timely and properly file all informational and other tax returns necessary or advisable with respect to the Escrow Account (including without limitation the returns described in Treasury Regulation 1.468B-2(k)).  Such returns (as well as the election described in Paragraph VIII.1) will be consistent with this Paragraph and Paragraph VIII.1 and in any event will reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Escrow Account will be paid out of the Escrow Account.

3.      All Taxes and Tax Expenses will be paid out of the Escrow Account; in no event will Defendants have any liability or responsibility for the Taxes, the Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  The Claims Administrator will indemnify and hold Defendants and Defense Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Furthermore, Taxes and Tax Expenses will be timely paid by the Claims Administrator out of the Escrow Account without prior Court order, and the Claims Administrator will be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treasury Regulation 1.468B-2(1)-(2)); Defendants are not responsible for and shall have no liability therefor, or for any reporting requirements that may relate thereto.  The Parties agree to cooperate with the Claims Administrator, each other, and their respective tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section and the Agreement.

## IX.    CLAIMS ADMINISTRATOR

1.    <u>Selection and Appointment of Claims Administrator</u>.  The Parties have agreed to have Angeion Group serve as the Claims Administrator, and will request that the Court appoint the Claims Administrator.  The Claims Administrator has provided Class Counsel and Defense Counsel with a Class Notice Program.  The Class Notice Program sets forth a detailed estimate and a "not-to-exceed" price for performing all tasks and duties regarding this Settlement.  A copy of the Class Notice Program will be attached as an exhibit to the Declaration of the Claims Administrator regarding the Class Notice Plan.

2.    Once approved by the Court, the Claims Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.  The Claims Administrator shall cause the Class Notice Program to be carried out after Preliminary Approval, including causing the Class Notice to be published and mailed and emailed (to the extent physical and email addresses are available) to Settlement Class Members who can be identified through reasonable effort as well as a process, and making the required CAFA Notices subject to mutual agreement by the Parties, to stimulate claims made by Settlement Class Members, administer the Settlement Website and Claim Forms process, and oversee the distribution of Cash Payments to Settlement Class Members in accordance with the terms of the Settlement and orders of the Court.

3.    <u>Claims Administration</u>.  After Final Approval and after the Effective Date of the Settlement, the Claims Administrator shall administer the monetary relief for Settlement Class Members pursuant to the terms of this Agreement and shall seek to resolve issues with Claim Forms in a cost effective and timely manner.  The Claims Administrator may request the assistance of the Parties to identify Settlement Class Members; to facilitate providing direct notice to Settlement Class Members who can be identified through reasonable effort and notice by

**Execution Copy**

publication; and to accomplish such other purposes as may be approved by Defendants and Class Counsel; and the Parties shall reasonably cooperate with such requests.

4.      <u>Claims Administrator Discretion</u>.   The Claims Administrator shall review and validate all Claim Forms submitted by Settlement Class Members.  The Claims Administrator shall have the discretion to accept or reject, in whole or in part, the Claim Forms submitted by Settlement Class Members with the objectives of efficiency and effecting substantial justice to the Parties and the Settlement Class Members.  Issues regarding the validity of Claim Forms that cannot be resolved by the Claims Administrator shall be submitted to Defense Counsel and Class Counsel for resolution and, if no resolution is reached, to the Court.

5.      <u>No Liability for Claims Administered Pursuant to Settlement Agreement</u>.   No Person shall have any claim against Defendants, Defense Counsel, Plaintiffs, Class Counsel, the Released Parties, and/or the Claims Administrator based on any determinations, distributions, or payments made with respect to any Claim or for the adequacy of the Class Notice Program or the Class Notice Plan. For the avoidance of doubt, in no event shall Plaintiffs, Class Counsel, Defendants, or Defense Counsel, have any liability for any claims of wrongful conduct (whether intentional, reckless, or negligent) on the part of the Claims Administrator or its agents.

6.      <u>Claims Administrator Duties</u>.  The Claims Administrator shall:

a.      Use personal information acquired as the result of this Settlement Agreement solely for purposes of providing Class Notice and evaluating and paying Claims under this Settlement Agreement.

b.      Assign a manager to oversee the protection and appropriate management of personal information including, without limitation, for purposes of maintaining its confidentiality,

and review its internal system to manage the protection of personal information to ensure consistent performance and constant improvement.

c.    Take security countermeasures to prevent unauthorized access to personal information and the loss, destruction, falsification, and/or exposure of personal information.

d.    If outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit reuse of information for other purposes.

e.    Respond immediately with appropriate measures when necessary to disclose, correct, stop using, or eliminate contents of information.

f.    Within one hundred and twenty (120) Days after the completion of the Claim Period, and in compliance with applicable retention law, destroy all personal information obtained in connection with this settlement in a manner most likely to guarantee that such information shall not be obtained by unauthorized Persons.

7.    <u>Claims Administrator Accounting</u>.  The Claims Administrator shall maintain a complete and accurate accounting of all receipts, expenses (including Notice Costs and Administration Costs), and payments made pursuant to this Settlement Agreement. The accounting shall be made available on reasonable notice to Class Counsel and Defense Counsel.

8.    <u>Removal of Claims Administrator</u>. If the Claims Administrator fails to perform adequately, the Settling Parties may agree to remove the Claims Administrator by petitioning the Court to do so.

9.    <u>Class Notice Program</u>.  The Class Notice Program used to provide notice of this Settlement to the Settlement Class shall be that which is approved in the Court's Preliminary Approval Order. The cost of the Class Notice Program shall be paid from the Settlement Amount,

which shall be deposited into the Escrow Account in accordance with Section IV.2. The Claims Administrator shall commence the Class Notice Program no later than thirty (30) Days after the Preliminary Approval Date. The Class Notice Program shall be effectuated by the Claims Administrator, and it shall include, at a minimum:

        a.      <u>E-mailed and Mailed Notice</u>. Notice of this Settlement shall be sent by electronic mail if an e-mail address is available and mailed, first-class postage prepaid, if a mailing address is available to all members of the Settlement Class who are identifiable to the Claims Administrator through reasonable means, taking into account the costs of identifying Settlement Class Members, Notice Costs, Administration Costs, and the size of the Settlement Fund.

        b.      <u>Digital Notice</u>. The Claims Administrator shall design and implement a plan for notification of the Settlement to members of the Settlement Class through digital/internet publication designed to target purchasers of the Covered Products to satisfy the due process rights of the Settlement Class. The Class Notice will be substantially in the forms attached hereto as Exhibit B (the Short Form Notice) and Exhibit C (the Long Form Notice). The Parties have also discussed certain claim stimulation efforts, if necessary, to be implemented as may be agreed following a review of claim submissions twenty-one (21) Days after the Class Notice commences.

        c.      <u>Settlement Website</u>. No later than thirty (30) Days after the Preliminary Approval Date, the Claims Administrator shall establish and make live the Settlement Website, which shall be an Internet website concerning the settlement utilizing an easily-recognized domain name. The Settlement Website shall be maintained by the Claims Administrator until one hundred and twenty (120) Days after all deadlines for correcting deficiencies in the Claim Form pursuant to Section IV.5 have passed. The domain name of the Settlement Website shall be included in all Class Notices. The Settlement Website shall provide, at a minimum: (i) information concerning

deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Fairness Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Class Counsel's Motion for Approval of Attorneys' Fees, Cost, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically, including proof of purchase. The domain name of the Settlement Website shall be owned by the Claims Administrator and may not be transferred to any Settling Party or their counsel; or to any third party without express written consent of both Class Counsel and Defendants.

   d. <u>Toll-Free Number</u>. No later than thirty (30) Days after the Preliminary Approval Date, the Claims Administrator shall establish a toll-free telephone number and facility that will provide members of the Settlement Class with information and direct them to the Settlement Website. The toll-free telephone number shall be included on the Settlement Website and in the Notice of Settlement. The telephone facility shall be capable of providing general information concerning deadlines for filing a Claim Form, opting out of or objecting to the Settlement, and the dates and locations of relevant Court proceedings, including the Fairness Hearing. The toll-free number(s) shall be maintained by the Claims Administrator during the time period that the Settlement Website is active.

   10. <u>Proof of Compliance with Class Notice Program</u>. The Claims Administrator shall provide Class Counsel and Defense Counsel with a declaration detailing all of its efforts regarding the Class Notice Program, its timely completion of the Class Notice Program, and its reach to the members of the Settlement Class, to be filed along with Plaintiffs' Motion for Final Approval of Class Action Settlement.

11.     <u>Claims Administrator Database</u>.   The Claims Administrator shall maintain and preserve records of all of its activities, in a computerized database with easily retrievable records, relative to the Settlement, including logs of all telephone calls, emails, faxes, mailings; visits to the Settlement Website; and all other contacts with actual and potential members of the Settlement Class. The database shall also include a running tally of the number and types of materials mailed or disseminated by the Claims Administrator.   The Claims Administrator shall provide Class Counsel and Defense Counsel with weekly written reports throughout the Claim Period summarizing all statistics and actions taken by the Claims Administrator in connection with administering the Settlement.

## X.     <u>SETTLEMENT NOTICE, OBJECTIONS AND OPT-OUT RIGHTS</u>

1.     Within thirty (30) Days after entry of the Preliminary Approval Order, the Claims Administrator shall commence publication of the Class Notice in the format and layout appropriate to those publications as described in the Notice Plan and shall make the required CAFA Notices.

2.     The Class Notice shall:

a.     contain a short, plain statement of the background of the Litigation and the proposed Settlement;

b.     describe the proposed Settlement relief as set forth in this Agreement;

c.     inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief and will release their claims;

d.     describe the procedures for participating in the Settlement and advise Settlement Class Members of their rights, including their right to file a Claim Form to receive a Cash Payment under the Settlement, to opt out of the same, or object thereto;

e.     explain the impact of the proposed Settlement on any existing litigation, arbitration or other proceeding;

       f.      state that any Cash Payment to Settlement Class Members under the Settlement is contingent on the Court's final approval of the proposed Settlement;

       g.      explain the procedures for opting out of the Settlement;

       h.      specify that opt-outs shall be allowed on an individual basis only and that so-called "mass" or "class" opt outs shall not be allowed; and

       i.      provide that any objection to the Settlement and any papers submitted in support of said objection will be considered only if the Settlement Class Member making an objection has followed the guidelines for objecting as set forth in the Agreement.  A Class Member who fails to follow the procedures and deadlines set forth in the Class Notice for submitting his or her comments to the proposed Settlement will waive his or her right to be heard by the Court and will waive their right to appeal.

3.      Subject to mutual agreement by the Parties, the Parties agree to follow guidance provided by the Claims Administrator concerning reasonable best practices consistent with the Class Notice Program and this Settlement Agreement to encourage the filing of valid and timely Claim Forms.

4.      Nothing in this Agreement shall limit the ability of Class Counsel to communicate orally or in writing with Settlement Class Members regarding the provisions of this Settlement and Class Counsel are authorized to do so.  Nothing in this Agreement shall limit the ability of Defendants to communicate orally or in writing with their customers in the ordinary course of business.

5.      The Settlement Website shall be maintained by the Claims Administrator until one hundred and twenty (120) Days after all deadlines for correcting deficiencies in the Claim Form pursuant to Section IV.5 have passed. At that point, the Claims Administrator shall discontinue the Settlement Website.

6.      Prior to the Fairness Hearing, the Claims Administrator shall provide to the Parties documentation reflecting that the Class Notice Program has been executed in accordance with the Preliminary Approval Order, which will be provided to the Court.

7.      Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date.  In order to object, the Settlement Class Member must file the objection with the Court on or before the Opt-Out and Objection Deadline.  The objection must provide the following:

        a.      the Settlement Class Member's printed name, address, and telephone number;

        b.      whether the Settlement Class Member is represented by counsel and, if so, contact information for his or her counsel;

        c.      evidence showing that the objector is a Settlement Class Member;

        d.      whether the objection applies to that Settlement Class Member or to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;

        e.      any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection;

        f.      the actual written or electronic signature of the Settlement Class Member making the objection; and

**Execution Copy**

g.　　a statement on whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Fairness Hearing.

8.　　Any Settlement Class Member who fails to file and serve timely a written objection and notice of his or her intent to appear at the Fairness Hearing pursuant to the above Paragraph, as detailed in the Class Notice, shall not be permitted to object to the approval of the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

9.　　A Settlement Class Member who wishes to opt out of the Settlement Class must do so on or before the Opt-Out and Objection Date. To opt out, a Settlement Class Member must inform the Claims Administrator in writing that he or she wishes to be excluded from the Settlement Class, and must send that request to the Claims Administrator by U.S. Mail, postmarked no later than the Opt-Out and Objection Date or submitted online through the claims portal and verified no later than the Opt-Out and Objection Date. The request for exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain the Settlement Class Member's name, address, telephone number, a brief statement explaining the Seresto Products the Settlement Class Member purchased to confirm membership in the Settlement Class, and a statement that indicates a desire to be excluded from the Settlement Class. A Settlement Class Member may opt out on an individual and personal basis only; so-called "mass" or "class" opt-outs, shall not be allowed.

10.　　Except for those Settlement Class Members who timely and properly file a request for exclusion, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Effective Date, will be bound by its terms, regardless of whether they file a Claim or receive any monetary relief.

Execution Copy

11.     Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.  Any statement or submission purporting or appearing to be both an objection and an opt-out shall be treated as a request for exclusion.

12.     The Claims Administrator shall provide Class Counsel and Defense Counsel with copies of all requests for exclusion to counsel for the Parties on a weekly basis by email and will provide the Opt-Out List on or before two hundred (200) Days after the Preliminary Approval Date.

## XI.   ATTORNEYS' FEES, EXPENSES, AND REPRESENTATIVE PLAINTIFFS' SERVICE AWARDS

1.     Within the time period established by the Court, and no later than thirty-five (35) Days before the Opt-Out and Objection Deadline, Class Counsel and any Settlement Class Member's counsel, may file a Motion for Approval of Attorneys' Fees and Costs, and Service Awards to be paid from the Settlement Amount, which shall be included on the Settlement Website.  The Class Notice Program shall inform the Settlement Class Members that Class Counsel may apply for attorneys' fees not to exceed thirty-eight percent (38%) of the Settlement Amount and, in addition to fees, seek reimbursement of verifiable litigation costs plus reasonable costs incurred through the Effective Date.  Defendants expressly reserve the right to oppose the Motion for Approval of Attorneys' Fees and Costs, and Service Awards.  The procedure for and the allowance or disallowance by the Court of any application for Attorneys' Fees and Costs is not a material term of the Settlement or Agreement and is not a condition of this Agreement that any particular application for Attorneys' Fees and Costs be approved.  If an application for Attorneys'

Fees and Costs is approved by the Court, Class Counsel shall provide W-9 Forms to the Claims Administrator prior to such payment.

2.      Attorneys' Fees and Costs approved by the Court shall be paid within thirty-five (35) Days after the Effective Date.  To the extent not otherwise directed by the Court, Class Counsel shall thereafter distribute attorneys' fees and costs as they deem appropriate. Under no circumstances will Defendants be liable to Class Counsel, any Settlement Class Member's counsel, any law firms who have entered appearances for Settlement Class Members or Named Plaintiffs or any other attorney or law firm, for, because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees made in accordance with this Settlement Agreement; and Class Counsel, and each of them, release Defendants from any and all disputes or claims because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees and costs made pursuant to this Settlement Agreement.

3.      Class Counsel shall move for Service Awards of fifteen thousand dollars ($15,000) to each of the Named Plaintiffs in the Litigation, as may be approved by the Court.  If approved by the Court, such Service Awards will be paid from the Settlement Amount no later than thirty-five (35) Days after the Effective Date.

4.      Any order or proceedings relating to the applications for Attorneys' Fees and Costs and Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement.

## XII.   NOTICES

1.      All Notices (other than the Class Notice and CAFA Notices) required by the Agreement shall be made in writing and mailed to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:

**Execution Copy**

Michael Williams
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7110

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Rachel Soffin
**MILBERG COLEMAN  BRYSON
PHILLIPS GROSSMAN PLLC**
3833 Central Avenue
St. Petersburg, Florida 33713
Telephone: (865) 247-0080

All Notices to Defense Counsel provided herein shall be sent to Defense Counsel, c/o:

John P. Mandler
**FAEGRE DRINKER BIDDLE & REATH, LLP**
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7221

Andrea Roberts Pierson
Andrew L. Campbell
**FAEGRE DRINKER BIDDLE & REATH, LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300

2.      The notice recipients and addresses designated above may be changed by written

notice.

3.      Upon the request of any of the Parties, the Parties agree to promptly provide each

other with copies of comments, objections, requests for exclusion, or other documents or filings

received as a result of the Class Notice.

## XIII.  **SETTLEMENT APPROVAL PROCESS**

1.      After execution of this Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order that is without material alteration from Exhibit D hereto, which:

   a.      Preliminarily approves this Settlement;

   b.      Directs that Class Notice is provided in a reasonable manner, as set forth herein, to all Settlement Class Members who would be bound by the Settlement;

   c.      Preliminarily certifies the Settlement Class;

   d.      Schedules a Fairness Hearing on final approval of this Settlement Agreement to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court, such Fairness Hearing to be no earlier than three hundred ten (310) Days after the Preliminary Approval Date, subject to Court approval;

   e.      Finds that the proposed Settlement is sufficiently fair, reasonable and adequate to warrant providing Class Notice to the Settlement Class;

   f.      Appoints the Claims Administrator in accordance with the provisions of Section IX;

   g.      Approves the Class Notice Plan, the content of which is without material alteration from Exhibits B and C hereto, and directs the Claims Administrator to publish the Class Notice in accordance with the Class Notice Plan provided for in this Agreement;

   h.      Approves the Claim Form, the content of which is without material alteration from Exhibit A hereto, and sets a Claim Deadline;

   i.      Approves the creation of the Settlement Website as defined in Section IX.9.c. above;

j.      Finds that the Class Notice implemented pursuant to this Agreement: (i) is the best practicable notice, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law;

k.      Requires the Claims Administrator to file proof of publication of the Class Notice, proof of providing the required CAFA Notice and proof of maintenance of the Settlement Website at or before the Fairness Hearing;

l.      Requires each Settlement Class Member who wishes to be excluded from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked no later than one hundred and eighty (180) Days after the Preliminary Approval Date, or as the Court may otherwise direct, to the Claims Administrator at the address on the Class Notice;

m.      Preliminarily enjoins all Settlement Class Members unless and until they have timely excluded themselves from the Settlement Class from: (i) filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before fourteen (14) Days prior to the expiration of the Claims Period; (ii) filing, commencing or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on,

relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before fourteen (14) Days prior to the expiration of the Claims Period; and (iii) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims. This Agreement is not intended to prevent Settlement Class Members from participating in any action or investigation initiated by a state or federal agency.

n. Orders that any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class (*i.e.,* becomes an Opt-Out) will be bound by all proceedings, orders and judgments in the Litigation, even if such Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release;

o. Requires each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed Settlement or to the Attorneys' Fees and Costs to file with the Court and serve on Class Counsel no later than one hundred and eighty (180) Days after the Preliminary Approval Date or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing the information outlined in Section X.7 above.

p. Provides that any response to an objection shall be filed with the Court no later than seven (7) Days before the Fairness Hearing.

q. Specifies that any Settlement Class Member who does not file a timely written objection to the Settlement or who fails to otherwise comply with the requirements of

Section X.7. shall be foreclosed from seeking any adjudication or review of this Settlement by appeal or otherwise.

r.      Requires that any attorney hired by a Settlement Class Member will be at the Settlement Class Member's expense for the purpose of objecting to this Agreement, the proposed Settlement, or the Attorneys' Fees and Costs;

s.      Requires that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Attorneys' Fees and Costs and who intends to make an appearance at the Fairness Hearing to provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and to file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date or as the Court may otherwise direct;

t.      Requires any Settlement Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing to provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and to file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date or as the Court otherwise may direct;

u.      Directs the Claims Administrator to establish a post office box in the name of the Claims Administrator to be used for receiving requests for exclusion, objections, notices of intention to appear and any other communications, and providing that only the Claims Administrator, Class Counsel, Defense Counsel, Defendants, the Court, the Clerk of the Court and their designated agents shall have access to this post office box, except as otherwise provided in this Agreement;

v.     Directs the Claims Administrator to promptly furnish Class Counsel and Defense Counsel with copies of any and all written requests for exclusion, notices of intention to appear or other communications that come into its possession, except as expressly provided in this Agreement;

w.     Directs that Class Counsel shall file their applications for the Attorneys' Fees and Costs and Named Plaintiffs' Service Awards in accordance with the terms set forth in Section XI;

x.     Orders the Claims Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than two hundred (200) Days after the Preliminary Approval Date, and then Class Counsel will file with the Court the Opt-Out List with an affidavit from the Claims Administrator attesting to the completeness and accuracy thereof no later than three (3) business days thereafter or on such other date as the Parties may direct; and

y.     Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Agreement and the proposed Settlement.

## XIV.   <u>FINAL ORDER AND JUDGMENT AND RELEASES</u>

1.     Pursuant to the schedule set by the Court in its Preliminary Approval Order and no later than thirty (30) days before the Fairness Hearing, Class Counsel shall file a motion and supporting papers requesting that the Court grant final approval of this Settlement Agreement and for entry of a Final Order and Judgment.

2.     If this Agreement (including any amendment or modification made with the consent of the Parties as provided herein) is approved by the Court following the Fairness Hearing scheduled by the Court in its Preliminary Approval Order, the Parties shall request that the Court enter a mutually-agreeable Final Order and Judgment pursuant to the Federal Rules of Civil Procedure and all applicable laws, that, among other things:

a.     Finds that the Court has personal jurisdiction over the Parties and all members of the Settlement Class and that the Court has subject matter jurisdiction to approve this Settlement and Agreement and all Exhibits thereto;

b.     Certifies a Settlement Class solely for purposes of this Settlement;

c.     Grants final approval to this Agreement as being fair, reasonable, and adequate as to all Settling Parties and consistent and in compliance with all requirements of due process and applicable law, as to and in the best interests of all Settling Parties and directs the Parties and their counsel to implement and consummate this Agreement in accordance with its terms and provisions;

d.     Declares this Agreement and the Final Order and Judgment to be binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release (as set forth in Section I.50.) maintained by or on behalf of the Named Plaintiffs and all other Settlement Class Members, as well as their respective agents, heirs, executors or administrators, successors and assigns;

e.     Finds that the Class Notice implemented pursuant to this Agreement: (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Litigation, of their right to object to or exclude themselves from the proposed Settlement, of their right to appear at the Fairness Hearing and of their right to seek monetary and other relief, (iii) constituted reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of due process and any other applicable law;

f.     Approves the Claim Form that was distributed to Settlement Class Members, the content of which was without material alteration from Exhibit A hereto;

**Execution Copy**

g.      Finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for purposes of entering into and implementing the Settlement and Agreement;

h.      Dismisses the Litigation now pending before the Court (including all of the underlying suits transferred to the Court by the JPML and all individual and class claims presented thereby) on the merits and with prejudice and without fees or costs except as provided herein, in accordance with the terms of the Final Order and Judgment as set forth herein;

i.      Adjudges that the Named Plaintiffs and the Settlement Class have conclusively compromised, settled, dismissed and released any and all Released Claims against Defendants and the Released Persons;

j.      Approves payment of the Attorneys' Fee and Expenses to Class Counsel and the Named Plaintiffs' Service Awards in a manner consistent with Section XI;

k.      Without affecting the finality of the Final Order and Judgment for purposes of appeal, reserves jurisdiction over the Claims Administrator, Defendants, the Named Plaintiffs and the Settlement Class as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the Settlement and Final Order and Judgment and for any other necessary purposes;

l.      Provides that upon the Effective Date, the Named Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class, whether or not they return a Claim Form within the time and in the manner provided for, shall be barred from asserting any Released Claims against Defendants and/or any Released Persons, and any such Settlement Class Members shall have released any and all Released Claims as against Defendants and all Released Persons;

m.      Determines that the Agreement and the Settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of, a presumption, concession or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by Defendants or any Released Persons or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

n.      Bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation or the Released Claims arising on or before fourteen (14) Days prior to the expiration of the Claims Period, and (ii) organizing Settlement Class Members who have not been excluded from the Class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before fourteen (14) Days prior to the expiration of the Claims Period, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency when legally compelled to do so;

o.      Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the

Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment except for Opt-Outs who subsequently submit Claim Forms during the Claim Period; and

                p.       Authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all Exhibits hereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Settlement Class Members.

3.      As of the Effective Date, the Releasing Persons are deemed to have fully released and forever discharged the Released Persons of and from all Released Claims by operation of entry of the Final Judgment and Order of Dismissal.

4.      Subject to Court approval, all Settlement Class Members who have not excluded themselves from the Settlement Class shall be bound by this Agreement and the Release, and Released Claims shall be dismissed with prejudice and released, irrespective of whether they received actual notice of the Litigation or this Settlement.

5.      Without in any way limiting the scope of the Release, this Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or any Named Plaintiffs or Settlement Class Members, in connection with or related in any manner to the Litigation, the Settlement, the administration of such Settlement and/or the Released Claims, as well as any and all claims for Service Awards to Named Plaintiffs.

6.      As of the Effective Date, the Released Persons are deemed to have fully released and forever discharged by operation of the entry of the Final Order and Judgment the Named Plaintiffs, the Settlement Class Members, Class Counsel or any other counsel representing the

Named Plaintiffs or Settlement Class Members, or any of them, of and from any claims arising out of the Litigation and/or the Settlement.

7.      As of the Effective Date, the Released Persons are deemed to have fully released and forever discharged each other by operation of entry of the Final Order and Judgment of and from any claims they may have against each other arising from the claims asserted by the Releasing Persons in the Litigation, including any claims arising out of the investigation, defense or Settlement of the Litigation.

8.      The Releasing Persons and the Released Persons expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

>    **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Notwithstanding California or other law, the Releasing Persons and the Released Persons hereby expressly agree that the provisions, rights and benefits of Section 1542 and all similar federal or state laws, rights, rules or legal principles of any other jurisdiction that may be applicable herein and are hereby knowingly and voluntarily waived, released and relinquished to the fullest extent permitted by law solely in connection with unknown claims that are the same as, substantially similar to, or overlap the Released Claims, and the Releasing Persons and the Released Persons hereby agree and acknowledge that this is an essential term of the Release.  In connection with the Release, the Releasing Persons and the Released Persons acknowledge that they are aware that they may hereafter discover claims currently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released

herein, and that such claims, to the extent that they are the same as, substantially similar to, or overlap the Released Claims, are hereby released, relinquished and discharged.

9.      If any Settlement Class Member brings an action or asserts a claim against the Released Persons contrary to the terms of this Agreement, the counsel of record for such Settlement Class Member shall be provided with a copy of this Agreement. If the Settlement Class Member does not within 21 Days thereafter dismiss his or her action and the action or claim is subsequently dismissed or decided in favor of the Released Persons, the Settlement Class Member who brought such action or claim shall pay the Released Persons costs and expenses, including reasonable attorneys' fees, incurred by the Released Persons in the defense of such action or claim.

10.     Nothing in the Releases shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed herein.

## XV.   WITHDRAWAL FROM OR TERMINATION OF SETTLEMENT

1.      Within twenty-one (21) Days after the occurrence of any of the following events and upon written notice to counsel for all Parties, a Party shall have the right to withdraw from the Settlement and terminate this Agreement:

        a.      If the Court fails to approve the Agreement as written or if the Court's approval is reversed or modified on any appeal;

        b.      If the Court materially alters any of the terms of the Agreement; or

        c.      If the Preliminary Approval Order, as described in Section XIII.1, or the Final Order and Judgment, as described in Section XIV, is not entered by the Court or is reversed or modified on appeal, or otherwise fails for any reason.  In the event of a withdrawal pursuant to this Section, any certification of a Settlement Class will be vacated, without prejudice to any Party's position on the issue of class certification and the amenability of the claims asserted in the

Litigation to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement.

2.      If four hundred (400) or more Settlement Class Members request exclusion from the Settlement Class, Defendants may elect, unilaterally, to rescind this Agreement by notifying Class Counsel and the Court not less than twenty-one (21) Days after the Claims Administrator provides the Opt-Out List to Class Counsel and Defense Counsel.

3.      In the event of withdrawal by Defendants in accordance with the terms set forth in this Section, the Agreement shall be null and void, shall have no further force and effect with respect to any Party in the Litigation, and shall not be offered in evidence or used in any litigation for any purpose, including, without limitation, the existence, certification, or maintenance of any proposed or existing class, or the amenability of these or similar claims to class treatment.  In the event of such withdrawal, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to Defendants, the Named Plaintiffs and the Settlement Class Members and shall not be deemed or construed to be an admission or confession in any way by any Party of any fact, matter or proposition of law and shall not be used in any manner for any purpose, and the Parties to the Litigation shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court. In the event of withdrawal by Defendants, Defendants shall be solely responsible for any and all Notice Costs and Administrative Costs incurred on or before the date of withdrawal.

## XVI. <u>EFFECTIVE DATE</u>

1.      The Effective Date of this Agreement shall be the first business day that is three (3) Days after each and all of the following conditions have occurred:

      a.      This Agreement has been fully executed by all Parties and their counsel;

      b.      Orders have been entered by the Court certifying the Settlement Class, granting Preliminary Approval of this Agreement and approving the form of Class Notice and Claim Form, all as provided above;

      c.      The Court-approved Class Notice has been duly published and Settlement Website has been duly created and maintained as ordered by the Court;

      d.      The Court has entered a Final Order and Judgment finally approving this Agreement, as provided above; and

      e.      The Final Order and Judgment has become Final.

2.      If, for any reason, this Agreement fails to become Final pursuant to Sections XIV or XV, the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be vacated, and the Parties will be returned to the status *quo ante* with respect to the Litigation as if the Parties had never entered into this Agreement.

## XVII. <u>ADDITIONAL PROVISIONS</u>

1.      <u>Integration of Recitals and Exhibits</u>.  The Recitals and Exhibits to this Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Agreement.

2.      <u>Settlement Purposes Only and No Admission of Liability</u>.  This Agreement is for settlement purposes only.  Neither the fact of nor any provision contained in this Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any

claim or any fact alleged in the Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendants or any admission by Defendants of any claim or allegation made in any action or proceeding against Defendants or any concession as to the validity of any of the claims asserted by the Named Plaintiffs in the Litigation. This Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is, or shall be construed or admissible as, an admission by Defendants that the Named Plaintiffs' claims or any similar claims are either valid or suitable for class treatment.

3.    <u>Best Efforts</u>.  If there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then the Parties shall confer in good faith regarding such matters; and such matters shall be dealt with as agreed upon by the Parties, and if the Parties cannot reach an agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Agreement in order to give this Agreement full force and effect. The execution of all such documents must take place prior to the Preliminary Approval Hearing.

4.    <u>Administration of Agreement</u>.  No person shall have any claim against the Named Plaintiffs, Class Counsel, Defendants, Defense Counsel, the Claims Administrator or the Released Persons or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

5.    <u>Communications</u>.  The Settling Parties, Class Counsel and all other counsel of record for the Named Plaintiffs and Defense Counsel hereby agree not to engage in any

communications with the media or the press, on the Internet, on social media, or in any other public forum, orally or in writing, that relate to this Settlement or the Litigation, except that such counsel may re-post a copy of the Settlement Agreement and Class Notice on his or her firm's website, without further comment or description, and Defendants may provide or post legally compelled information or disclosures (such as SEC disclosures) in order to comply with applicable federal and state laws or regulations.

6.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between and among the Settling Parties with respect to the Settlement of the Litigation.  This Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement.

7.    <u>Waiver</u>.  There shall be no waiver of any term or condition absent an express writing to that effect by the non-waiving Party.  No waiver of any term or condition in this Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Agreement.

8.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single agreement.

9.    <u>Drafting</u>.  This Agreement shall not be construed more strictly against one Party than another merely because this Agreement may have been drafted or otherwise prepared in full or substantial part by counsel for one of the Parties, it being recognized that because of the arm's-

length negotiations resulting in the Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Agreement. All terms, conditions and Exhibits are material and necessary to this Agreement and have been relied upon by the Parties in entering into this Agreement.

10. <u>Governing Law</u>. This Agreement shall be construed under and governed by the laws of the State of Indiana without regard to its choice of law provisions.

11. <u>Continuing Jurisdiction</u>. The Court shall retain continuing and exclusive jurisdiction over the Settling Parties to this Agreement for the purpose of the administration and enforcement of this Agreement.

12. <u>Enforcement</u>. In the event Defendants, the Named Plaintiffs, Class Counsel, or any Settlement Class Member fails to perform under this Agreement, counsel for the aggrieved party shall give counsel for the other party written notice of the breach. If the alleged breach is not cured to the satisfaction of the aggrieved party within twenty-one (21) Days, the other party may apply to the Court for relief. In the event of a breach, the Court may exercise all equitable powers over the breaching party(ies) to enforce this Agreement, the Final Order and Judgment, irrespective of the availability or adequacy of any remedy at law.

13. <u>Confidentiality</u>. All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Agreement.

14. <u>Non-Disparagement</u>. The Settling Parties and counsel hereto agree not to disparage each other, the Seresto Products, or the compromised claims at issue in the Litigation or Settlement. Class Counsel shall instruct each Named Plaintiff/Class Representative that any violation of this Paragraph could entitle Defendants to pursue legal action against the Named Plaintiff/Class Representative and seek, among other remedies, a refund of the Service Award in an amount that

shall not exceed the value of the Service Award. If Defendants' Counsel provides written notice to Class Counsel of a Named Plaintiff's/Class Representative's potential breach of this Paragraph, Class Counsel has agreed to forward the written notice on to the Named Plaintiff/Class Representative.

15.     <u>Defendants' Attorneys' Fees and Costs</u>. Defense Counsel shall bear their own attorneys' fees and costs in the Litigation.

16.     <u>Return of Documents</u>. Within thirty (30) Days after the Effective Date, Class Counsel will return or destroy all documents, information and material produced by Defendants to the producing Defendant.

17.     <u>Representation by Counsel</u>. The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Settlement Agreement. Each Party represents that it understands the terms and consequences of executing this Settlement Agreement and executes it and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

18.     <u>Mutual Full Cooperation</u>. The Parties agree to cooperate with each other in good faith to accomplish the terms of this Settlement Agreement, including the execution of such documents and such other action as may reasonably be necessary to implement the terms of this Settlement Agreement and obtain the Court's final approval of the Settlement Agreement, including the entry of an order dismissing the Litigation with prejudice.

19.     <u>No Tax Advice</u>. Neither the Parties nor their counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder. No Person shall rely on anything in this Settlement Agreement to provide tax advice, and any Person, including, without limitation, Named Plaintiffs and Settlement Class Members, shall obtain his,

her, or its own independent tax advice with respect to any payment under this Settlement Agreement.

20. <u>Extensions</u>.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

21. <u>Binding Effect</u>.  This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Settling Parties.

22. <u>No Prior Assignment, Transfer or Conveyance of Released Claims</u>.  The Named Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against the Released Persons that the Named Plaintiffs, or any of them, have or may have arising out of any allegations made in any of the actions comprising the Litigation or pertaining to any of the Released Claims, and no portion of any recovery or settlement to which the Named Plaintiffs, or any of them, may be entitled, has been assigned, transferred, or conveyed by or for the Named Plaintiffs, or any of them, in any manner; and no person other than the Named Plaintiffs has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of the Named Plaintiffs.

23. <u>Subheadings</u>. The headings used in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.  In construing this Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

24. <u>Stay of Proceedings</u>.  The Parties stipulate to stay all proceedings in the Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings

**Execution Copy**

shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve final judicial approval of this Agreement.

25. <u>Authority</u>. Each person executing this Settlement Agreement on behalf of any Party warrants that such person has the authority to do so. This Settlement Agreement shall be binding upon, and inure to the benefit of, each of the Settling Parties' respective agents, heirs, executors, administrators, successors, and assigns.

26. <u>Electronic Signatures Permitted</u>. This Agreement may be executed manually or using commonly accepted electronic signature software.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have executed and caused this Agreement to be executed by their duly authorized attorneys below.

**PLAINTIFFS:**

By: _Rhonda Bomwell_      12/14/2023
Rhonda Bomwell

By: _Jennifer Borchek_      12/6/2023
Jennifer Borchek

By: _[signature]_      12/8/2023
Anita Boulware-Jones

By: _Regina Bullard_      11/29/2023
Regina Bullard

By: _[signature]_      12/6/2023
Kathryn Byrd

By: _John Czerniak_      11/29/2023
John Czerniak

By: _[signature]_      11/28/2023
~~Darlene Dahlgren~~

By: _[signature]_      11/Darelke
Allison Dirk

By: _David Gjelland_      11/30/2023
David Gjelland

By: _Faye Hemsley_      11/28/2023
Faye Hemsley

**Execution Copy**

By: _____ Heather Hitt    11/28/2023
Heather Hitt

By: _____ Judy Knudson    11/29/2023
Judy Knudson

By: _____ Thomas Maiorino    12/5/2023
Thomas Maiorino

By: _____ Michael McDermott    11/29/2023
Michael McDermott

By: _____ Christina McDermott    11/29/2023
Christina McDermott

By: _____ Danielle McQuaid    11/30/2023
Danielle McQuaid

By: _____ Amanda Merriman    12/1/2023
Amanda Merriman

By: _____ Deanna Miller    11/28/2023
Deanna Miller

By: _____ Abraham Mohamed    11/28/2023
Abraham Mohamed

By: _____ Michelle Pipeling    11/29/2023
Michelle Pipeling

By: _Laura Revolinsky_
Laura Revolinsky (Dec 8, 2023 17:16 EST)
Laura Revolinsky

By: Larry Ruley          11/28/2023
Larry Ruley

By: Paula Ruley          11/28/2023
Paula Ruley

By: _____ 12/13/2023
Steven Schneider

By: Michael Shannon 12/5/2023
Michael Shannon

By: _____ 12/16/23
Larry Sites

By: Rhoda Trotter          11/28/2023
Rhoda Trotter

By: _____ 11/28/2023
Aitana Vargas

By: _____
Jennifer Walsh

62

**Execution Copy**

Approved as to Form:                    By: *Michael Williams*

Michael Williams
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7110

Approved as to Form:                    By: *Rachel Soffin*

Rachel Soffin
**MILBERG COLEMAN  BRYSON
PHILLIPS GROSSMAN PLLC**
3833 Central Avenue
St. Petersburg, Florida 33713
Telephone: (865) 247-0080

By: 

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Approved as to Form:

*Court Appointed Co-Lead Class Counsel*

**Execution Copy**

**ELANCO ANIMAL HEALTH, INC**.

By:_____

Name:_____Jeffrey N. Simmons_____

Title:_____President & CEO_____

Date:_____December 15, 2023_____

**BAYER CORPORATION**

By:_____

Name: _____

Title: _____

Date:_____

**BAYER HEALTHCARE, LLC**

By:_____

Name: _____

Title: _____

Date:_____

DocuSign Envelope ID: 8AF30DF8-B54C-4729-987C-9E7261020DD36

**Execution Copy**

**ELANCO ANIMAL HEALTH, INC**.

By: _____

Name: _____

Title: _____

Date: _____

**BAYER CORPORATION**

By: _____

Name: Keith Abrams

Title: Assistant Secretary

Date: 12/14/2023

**BAYER HEALTHCARE, LLC**

By: _____

Name: Keith Abrams

Title: Assistant Secretary

Date: 12/14/2023

**Execution Copy**

*Approved as to form:*

By: _____  _____

       John P. Mandler
       **FAEGRE DRINKER BIDDLE & REATH, LLP**
       2200 Wells Fargo Center, 90 S. 7th Street
       Minneapolis, Minnesota 55402
       Telephone: (612) 766-7221

       *Counsel for Elanco Animal Health, LLC; Bayer*
       *Corporation; Bayer Healthcare, LLC; Bayer Healthcare*
       *Animal Health, Inc.; and Bayer AG*

**Execution Copy**

## <u>EXHIBITS LIST</u>

Exhibit A:  Claim Form

Exhibit B:  Short Form Notice

Exhibit C:  Long Form Notice

Exhibit D:  Proposed Preliminary Approval Order

**EXHIBIT A**

<table>
<tr><td>
**Your claim form must be submitted online or postmarked by: [DEADLINE]**
</td><td>

# United States District Court
# Northern District of Illinois

*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*
MDL No. 3009, Lead Case No. 1:21-cv-04447

</td><td>

**SER**

</td></tr>
</table>

## CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at *FleaandTickCollarSettlement.com* or by U.S. Mail to the following address:
   *Seresto Settlement*, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

2. Please type or write your responses legibly.

3. Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned.

4. If your Claim Form is incomplete or missing information, the Claims Administrator may contact you for additional information. If you do not respond, the Claims Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5. No more than one Claim per Settlement Class Household shall be submitted or allowed as an Approved Claim.

6. If you have any questions, please contact the Claims Administrator by email at [EMAIL ADDRESS] or by mail at the address listed above.

7. **You must notify the Claims Administrator if your address changes. If you do not, you may not receive your payment.**

8. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be mailed to the Claims Administrator postmarked no later than [DEADLINE DATE].**

1

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*
MDL No. 3009, Lead Case No. 1:21-cv-04447

</td><td>

**SER**

</td></tr>
</table>

## <u>IMPORTANT DEFINITIONS</u>

1.  **Seresto Products** means, collectively, the Seresto Flea and Tick Collar for Large Dogs (above 18 pounds); the Seresto Flea and Tick Collar for Small Dogs (under 18 pounds); and the Seresto Flea and Tick Collar for Cats.

2.  **A Settlement Class Household, for purposes of making a Claim, shall be comprised of the Claimant together with any family, which includes both immediate and extended family members, living under the same roof as the Claimant.**

3.  **Valid Proof of Purchase** means verifiable documentation of a transaction that reflects the purchase of one or more **Seresto Products** on or before fourteen (14) days prior to the expiration of the Claims Period.

    Examples may include but are not limited to store receipts; online purchase receipts; packaging; the Seresto Product (i.e., a picture of Collar) itself; or any other contemporaneous record of purchase that is objectively verifiable. **Do not send the Collar with your Claim Form.**

4.  **Medical Treatment Costs Documentation:**
    -   Dated medical bills or receipts from a licensed veterinarian or other animal health care provider evidencing payments made by Claimant related to Claimant's claimed pet injury, along with medical records indicating treatment related to the injury alleged to be caused by use of the Seresto Product; <u>or</u>

    -   A declaration supplied by a licensed veterinarian or other animal health care provider evidencing payments made by Claimant related to the Claimant's claimed pet injury, also describing the treatment related to the injury alleged to be caused by use of the Seresto Product; AND one of the following:

        o  Dated credit card statements; check statements; or other payment documentation evidencing payment by the Claimant related to the Claimant's claimed pet injury; <u>or</u>

        o  Dated bank statements evidencing payment of out-of-pocket expenses related to the Claimant's claimed pet injury.

5.  **Death Related Costs Documentation**:
    -   Dated bills or receipts evidencing payments made by Claimant related to the burial, cremation or other disposal of a pet; <u>or</u>

    -   A declaration supplied by the provider of pet burial, cremation, or other pet disposal services; AND one of the following:

        o  Dated credit card statements; check statements or other payment documentation evidencing payment by the Claimant for the burial, cremation, or other disposal of the pet; or

2

| Your claim form must be submitted online or postmarked by: [DEADLINE] | **United States District Court**<br>**Northern District of Illinois**<br><br>*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*<br>MDL No. 3009, Lead Case No. 1:21-cv-04447 | **SER** |
|---|---|---|

   o  Dated bank statements evidencing payment of out-of-pocket expenses related to Claimant's payment for burial, cremation, or other disposal of a pet.

## CLAIM FORM

### I.  YOUR CONTACT INFORMATION AND MAILING ADDRESS

Provide your name and contact information below.

**First Name**

**Last Name**

**Street Address**

**City**

**State**

**Zip Code**

**Email Address**

**Phone Number**

### II.  COLLAR REIMBURSEMENT

Complete this section if you are seeking reimbursement of Seresto Products purchased on or before [14 days prior to the expiration of the Claims Period].

Enter the number of Seresto Products you are claiming <u>and</u> **providing proof of purchase** for. Claimants with Valid Proof of Purchase shall be entitled to a Cash Award in the amount of $13.00 for each Collar purchased. There is no limitation on the number of Collars that a Claimant can seek reimbursement for with Valid Proof of Purchase.

Enter the number of Seresto Products you are claiming **without** proof of purchase. Claimants without Valid Proof of Purchase shall be entitled to a Cash Award in the amount of $13.00 for each Collar purchased per pet, subject to a maximum Cash Award of $26.00 per pet.

3

<table>
<tr><td>Your claim form must be submitted online or postmarked by: [DEADLINE]</td><td>**United States District Court**<br>**Northern District of Illinois**<br><br>*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*<br>MDL No. 3009, Lead Case No. 1:21-cv-04447</td><td>**SER**</td></tr>
</table>

## III. INJURY REIMBURSEMENT

Complete this section if you are seeking reimbursement for a pet injury allegedly caused by the Seresto Collar that did not result in death. Select **one** of the options below (you <u>cannot</u> select both).

☐ Check this box if you are seeking $25 for economic loss related to the treatment of your pet's alleged injury or injuries. You must complete the **declaration section** below.

☐ Check this box if you are seeking to be reimbursed 100% of any out-of-pocket, non-reimbursed costs paid by you for medical treatment. You must provide Medical Costs Treatment Documentation.

Indicate the amount of reimbursement you are providing documentation for: [                    ]

**Declaration Section ($25 Payment)**
Identify the injury or injuries suffered by your pet that you allege were caused by the use of the Seresto Product. Check all that apply:

☐ Skin effects, including lesions and reddened, dry and irritated skin

☐ Lethargy

☐ Abnormal behavior

☐ Excessive grooming and vocalization

☐ Vomiting

☐ Diarrhea

☐ Anorexia

☐ Negative effects on one or more organ system

☐ Convulsions

☐ Muscle tremors

☐ Loss of control of bodily movements

☐ Other: _____

**Statement under penalty of perjury:**

☐ By checking this box, I hereby declare under penalty of perjury that my pet suffered the injury or injuries I identified above and that I experienced some economic loss related to the treatment of the injury or injuries.

4

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*
MDL No. 3009, Lead Case No. 1:21-cv-04447

</td><td>

**SER**

</td></tr>
</table>

## IV. PET DEATH REIMBURSEMENT

Complete this section if you are seeking reimbursement for the death of your pet alleged to be caused by the Seresto Collar. Indicate which options below you are claiming (**you can select both**).

### A. Pet Death Reimbursement

☐ Check this box if you are seeking a $300 payment, and also check the appropriate box or boxes below. By checking this box, you hereby **declare under penalty of perjury** that the death of your pet was allegedly caused by the use of a Seresto Product, and not for unrelated reasons, and that you experienced an economic loss of at least $300 in pet property or replacement costs related the death of your pet.

To seek reimbursement for the death of your pet alleged to be caused by the Seresto Collar, identify the injury or injuries suffered by your pet prior to the death that you allege were caused by the use of the Seresto Product. Check all that apply. The Claims Administrator will review this information in evaluating your claim:

☐ Skin effects, including lesions and reddened, dry and irritated skin

☐ Lethargy

☐ Abnormal behavior

☐ Excessive grooming and vocalization

☐ Vomiting

☐ Diarrhea

☐ Anorexia

☐ Negative effects on one or more organ system

☐ Convulsions

☐ Muscle tremors

☐ Loss of control of bodily movements

☐ Other: _____

### B. Pet Medical Treatment, and Costs for Burial, Cremation or other Disposal

☐ Check this box if you are seeking to be reimbursed 100% of any out-of-pocket, non-reimbursed costs paid by you for medical treatment, and costs paid for burial, cremation or other disposal of your pet. You must provide Medical Costs Treatment Documentation and/or Death Related Costs Documentation.

Indicate the amount of reimbursement you are providing documentation for: [          ]

5

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*
MDL No. 3009, Lead Case No. 1:21-cv-04447

</td><td>

**SER**

</td></tr>
</table>

## V. PAYMENT SELECTION

Please select from **one** of the following payment options:

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __   or Email Address: _____

☐ **Virtual Prepaid Card -** Enter your email address: _____

☐ **Physical Check -** Payment will be mailed to the address provided in Section I above.

## VI. VERIFICATION AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified in Section I and the information provided in this Claim Form, including the number Seresto Products claimed and accompanying supporting documentation, is true and correct, and that nobody has submitted another claim in connection with this Settlement on my behalf or from the same Settlement Class Household.

_____     Date: _____
Your signature                                                    MM          DD          YYYY

_____
Your name

6

...

**EXHIBIT B**

**If you are a person in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before <mark>fourteen (14) days prior to the expiration of the Claims Period</mark>, you could get benefits from a class action settlement.**

*Para el notificación en Español visitor nuestro sitio web.*

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

Settlement has been reached with Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation ("Defendants") in a class action lawsuit alleging that Defendants falsely labeled and marketed the Seresto Products representing that the Products would provide 8 months of protection from fleas and ticks while at the same time failing to disclose that the Products presented health risks to pets that wore the Products. Defendants have denied, and continue to deny, each and every allegation of liability, wrongdoing, and damages. It is Defendants' position that years of robust scientific evidence and broad use of more than 110 million collars around the world affirm Seresto's safety profile and that they appropriately warned of any risk associated with the Product, along with the EPA's recent comprehensive, multi-year review that confirmed Seresto continues to meet EPA standards for product registration. The multidistrict litigation proceeding is known as *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.,* MDL No. 3009, Lead Case No. 1:21-cv-04447 (N.D. Ill.).

**What does the Settlement provide?**
The Defendants have agreed to pay $15,000,000 into a Settlement Fund to pay Cash Payments to Settlement Class Members, Notice and Administration Costs, Attorneys' Fees and Costs, and Service Awards. Settlement Class Members can submit a claim form for a Cash Payment for reimbursement for the purchase of a Seresto collar, reimbursement for pet injuries, and reimbursement for the death of a pet. For a full description of these benefits, please visit *FleaandTickCollarSettlement.com*.

**Who is included in the Settlement Class?**
All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before <mark>fourteen (14) days prior to the expiration of the Claims Period</mark>.

**How do I get a payment from the Settlement?**
To qualify for a settlement payment, you must complete and submit a Claim Form by <mark>**DEADLINE DATE**</mark>. You may complete and submit a Claim Form online at *FleaandTickCollarSettlement.com* or mail a completed Claim Form to Seresto Settlement, c/o Claims Administrator, 1650 Arch St, Ste 2210, Philadelphia, PA 19103. Claim Forms are also available by calling 1-<mark>**XXX-XXX-XXXX**</mark>, or by emailing <mark>**Email Address**</mark>.

**What are my options?**
If you are a Settlement Class Member and do nothing, you will be bound by the Settlement and will give up any right to separately sue any of the Released Persons, including the Defendants, for the claims made in this lawsuit and released by the Settlement. If you don't want to be legally

bound by the Settlement, you must exclude yourself from it by **DEADLINE DATE**. Unless you exclude yourself, you won't be able to sue or continue to sue the Defendants for any claim made in this lawsuit or released by the Settlement. If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your lawyer to appear and speak at the Fairness Hearing – at your own cost – but you don't have to. Objections and requests to appear are due by **DEADLINE DATE**. More information about these options is available a *FleaandTickCollarSettlement.com*.

**The Court's hearing.**
The Court will hold a Fairness Hearing at **XX:XX a.m./p.m. on DATE,** at the United States District Court for the Northern District of Illinois, **COURT ADDRESS**. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  It will also consider whether to approve Class Counsel's request for an award of Attorneys' Fees and Costs, as well as Service Payments to the Named Plaintiffs.  If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing.  You or your own lawyer may appear and speak at the hearing at your own expense, but there is no requirement that you or your own lawyer do so. After the hearing, the Court will decide whether to approve the Settlement.

**This notice is only a summary.**
**For more information, including the full Notice and Class Action Settlement Agreement and Release, visit *FleaandTickCollarSettlement.com*, email Email Address, or call 1-XXX-XXX-XXXX.**

**EXHIBIT C**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

### United States District Court, Northern District of Illinois

*In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation,* MDL No. 3009, Lead Case No. 1:21-cv-04447

*Para el notificación en Español visitor nuestro sitio web.*

> **If you are a person in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before [fourteen (14) days prior to the expiration of the Claims Period], you could get benefits from a class action settlement.**

*A federal court authorized this Notice. You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached with Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation ("Defendants") in a class action lawsuit alleging that Defendants falsely labeled and marketed the Seresto Products (the "Products") representing that the Products would provide 8 months of protection from fleas and ticks while at the same time failing to disclose that the Products presented health risks to pets that wore the Products. It is Defendants' position that years of robust scientific evidence and broad use of more than 110 million collars around the world affirm Seresto's safety profile and that they appropriately warned of any risk associated with the Product, along with the EPA's recent comprehensive, multi-year review that confirmed Seresto continues to meet EPA standards for product registration. Without any admission of fault, Defendants have agreed to the Settlement to avoid the costs and risks associated with continuing this case.

- You are included in this Settlement as a Settlement Class Member if you are a person in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period.

- The multidistrict litigation proceeding is known as *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, MDL No. 3009, Lead Case No. 1:21-cv-04447, pending in the United States District Court for the Northern District of Illinois.

- Your rights are affected whether you act or don't act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a Cash Payment from this Settlement is by submitting a valid and timely Claim Form. You can submit your Claim Form online at *FleaandTickCollarSettlement.com* or download the Claim Form from the Settlement Website and mail it to the Claims Administrator. You may also call or email the Claims Administrator to receive a paper copy of the Claim Form. | _____, 2024 |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendants related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | _____, 2024 |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Fairness Hearing. If you object, you may also file a claim for a payment. | _____, 2024 |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not get a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendants related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ........................................................................................................ 3

WHO IS IN THE SETTLEMENT ...................................................................................... 4

THE SETTLEMENT BENEFITS........................................................................................ 5

HOW TO GET A PAYMENT—MAKING A CLAIM ........................................................ 6

THE LAWYERS REPRESENTING YOU ......................................................................... 7

OPTING OUT OF THE SETTLEMENT ........................................................................... 7

COMMENTING ON OR OBJECTING TO THE SETTLEMENT ..................................... 8

THE COURT'S FINAL APPROVAL HEARING ............................................................... 9

IF I DO NOTHING ............................................................................................................. 9

GETTING MORE INFORMATION ................................................................................... 9

# BASIC INFORMATION

## 1. Why was this Notice issued?

A federal court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The Honorable John Robert Blakey of the United States District Court for the Northern District of Illinois is overseeing this class action. The multidistrict litigation proceeding is known as *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation,* MDL No. 3009, Lead Case No. 1:21-cv-04447. The people that filed this lawsuit are called the "Plaintiffs" and the companies they sued, Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation are called the "Defendants."

## 2. What is this lawsuit about?

This lawsuit alleges that the Defendants falsely labeled and marketed the Seresto Products representing that the Products would provide 8 months of protection from fleas and ticks while at the same time failing to disclose that the Products presented health risks to pets that wore the Products. It is Defendants' position that years of robust scientific evidence and broad use of more than 110 million collars around the world affirm Seresto's safety profile and that they appropriately warned of any risk associated with the Product, along with the EPA's recent comprehensive, multi-year review that confirmed Seresto continues to meet EPA standards for product registration.

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Class Representatives" or "Named Plaintiffs." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out from a settlement. In this Settlement, the Named Plaintiffs are Rhonda Bomwell, Jennifer Borchek, Anita Boulware-Jones, Regina Bullard, Katherine Byrd, John Czerniak, Darlene Dahlgren, Allison Dirk, David Gjelland, Faye Hemsley, Heather Hitt, Judy Knudson, Thomas Maiorino, Michael McDermott, Christina McDermott, Danielle McQuaid, Amanda Merriman, Deanna Miller, Abraham Mohamed, Michelle Pipeling, Laura Revolinsky, Larry Ruley, Paula Ruley, Karen Schur, Steven Schneider, Michael Shannon, Larry Sites, Rhoda Trotter, Aitana Vargas, and Jennifer Walsh.

## 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. The Defendants deny all claims and that they violated any law. Plaintiffs and Defendants agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Settlement Class Members to receive payments from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

## 5. Who is in the Settlement?

The Settlement Class includes all Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period.

## 6. Are there exceptions to being included?

Yes. The Settlement Class does not include: (i) Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;  (ii) Class Counsel;  (iii) The judges who have presided over the Litigation; (iv) Local, municipal, state, and federal governmental agencies; and (v) All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing or writing to Claims Administrator at:

Seresto Settlement, c/o Claims Administrator, 1650 Arch St, Ste 2210, Philadelphia, PA 19103
Email Address

You may also view the Class Action Settlement Agreement and Release at *FleaandTickCollarSettlement.com*.

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

If the Settlement is approved by the Court, Defendants will pay $15,000,000 into a Settlement Fund to pay Cash Payments, Notice and Administration Costs, Attorneys' Fees and Costs, and Service Awards.

### 8. How much will my payment be?

The Settlement provides the following benefits to Settlement Class Members who submit Valid Claim Forms:

**Collar Reimbursement**
Settlement Class Members with Valid Proof of Purchase shall be entitled to a Cash Payment in the amount of $13.00 for each Collar purchased. There is no limitation on the number of Collars that a Settlement Class Member can seek reimbursement for with Valid Proof of Purchase.

Settlement Class Members without Valid Proof of Purchase shall be entitled to a Cash Payment in the amount of $13.00 for each Collar purchased per pet, subject to a maximum Cash Payment of $26.00 per pet.

**Injury Reimbursement**
Settlement Class Members can select from a $25 payment for economic injury (must complete a declaration attesting to the injury or injuries suffered) **or** 100% reimbursement of any out-of-pocket, non-reimbursed costs paid for medical treatment (must provide documentation).

**Pet Death Reimbursement**
Settlement Class Members are eligible to receive both: $300 payment for the death of a pet allegedly related to Seresto (must complete a declaration attesting to the death of the pet and economic losses suffered) **and** 100% reimbursement of costs paid for medical treatment and/or costs paid for burial, cremation or other disposal of the pet (must provide documentation).

All Payments are subject to a pro-rata decrease or increase depending on the amount of claims.

### 9. What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants about any of the legal claims this Settlement resolves. The "Released Claims" section in the Class Action Settlement Agreement and Release describes the legal claims that you give up if you remain in the Settlement Class. The Class Action Settlement Agreement and Release can be found at *FleaandTickCollarSettlement.com*.

## HOW TO GET A PAYMENT – MAKING A CLAIM

### 10. How do I submit a claim and get a cash payment?

You may file a claim if you are a person in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period.

Claim Forms may be submitted online at *FleaandTickCollarSettlement.com* or printed from the website and mailed to the Claims Administrator at: Seresto Settlement, c/o Claims Administrator, 1650 Arch St, Ste 2210, Philadelphia, PA 19103.

You may also contact the Settlement Administrator to request a Claim Form by telephone 1-XXX-XXX-XXXX, by email [Email Address], or by U.S. mail at Seresto Settlement, Attn: Claim Form Request, 1650 Arch St, Ste 2210, Philadelphia, PA 19103.

### 11. What is the deadline for submitting a claim?

If you submit a claim by U.S. mail, the completed and signed Claim Form must be postmarked by **[Deadline Date]**. If submitting a Claim Form online, you must do so by **[Deadline Date]**.

### 12. When will I get my payment?

The Court has scheduled a Fairness Hearing for the Settlement of this case on _____ at _____ a.m./p.m. to consider: (1) whether to approve the Settlement; (2) any objections; (3) the requests for Service Payments to the Named Plaintiffs; and (4) the request for an award of Attorneys' Fees and Costs to Class Counsel for their work in this litigation. If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments cannot be distributed until the Court grants Final Approval of the Settlement and after any appeals are resolved.

The briefs and declarations in support of the Final Approval of the Settlement and the requests described above will be posted on the Settlement Website, *FleaandTickCollarSettlement.com*, after they are filed. You may ask to appear at the hearing, but you do not have to appear. The date and time of the Fairness Hearing is also subject to modification by the Court. Please review the Settlement Website for any updated information regarding the final hearing.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in the case?

Yes. The Court has appointed the law firms of Williams Dirks Dameron LLC, Reese LLP, and Milberg Coleman Bryson Phillips Grossman PLLC to represent the Settlement Class as Class Counsel ("Class Counsel"). You will not be charged for their services.

### 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15. How will the lawyers be paid?

Class Counsel will ask the Court for an award of Attorneys' Fees not to exceed 38% of the Settlement Fund, as well as reimbursement of verifiable litigation costs plus reasonable costs incurred through the Effective Date. They will also ask the Court to approve Service Awards for each of the Named Plaintiffs not to exceed $15,000 each. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid from the Settlement Fund.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 16. How do I opt out of the Settlement?

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately sue the Defendants about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is **[Deadline Date]**.

To exclude yourself from the Settlement, you must a written request for exclusion to the Claims Administrator by mail or online at *FleaandTickCollarSettlement.com*. Your written request for exclusion must include the following information: (i) the name of the litigation: *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.,* MDL No. 3009, Lead Case No. 1:21-cv-04447 (N.D. Ill.); (ii) your name and current address; (iii) your telephone number; (iv) a brief statement explaining the Seresto Products that Settlement Class Member purchased to confirm membership in the Settlement Class; and (vi) a statement clearly indicating your intent to be excluded from the Settlement. Your request for exclusion must be personally signed.

Your request for exclusion must be submitted online at *FleaandTickCollarSettlement.com*, or via U.S. mail at the address below:

Seresto Settlement<br/>
ATTN: Exclusion Request<br/>
PO Box 58220<br/>
Philadelphia, PA 19102

If you exclude yourself, you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive a payment if you exclude yourself. You may only exclude yourself – not any other person.

If submitted electronically, the opt-out must be submitted no later than XX:XX p.m. on or before **[Deadline Date]**.

If submitted by U.S. mail, the written request to opt-out must be postmarked no later than **[Deadline Date]**.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court if I like or do not like the Settlement?

If you are a Settlement Class Member, you can choose (but are not required) to object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

Your objection must provide the following:

(a) the Settlement Class Member's printed name, address, and telephone number;
(b) whether the Settlement Class Member is represented by counsel and, if so, contact information for his or her counsel;
(c) evidence showing that the objector is a Settlement Class Member;
(d) whether the objection applies to that Settlement Class Member or to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;
(e) any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection;
(f) the actual written or electronic signature of the Settlement Class Member making the objection; and
(g) a statement on whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Fairness Hearing.

Settlement Class Members must electronically file via the Court's ECF system, or deliver to the Clerk of the Court, by mail, express mail, or personal delivery, a written notice of objection.

**[Insert Addresses for Objections]**

You or your attorney may speak at the Fairness Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intend to appear at the Fairness Hearing, as well as a description of any evidence the objecting Settlement Class Member may offer at the Fairness Hearing and copies of any exhibits the objecting Settlement Class Member may introduce at the Fairness Hearing.

## 18. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 19. When is the Court's Final Approval Hearing?

The Court has scheduled a Fairness Hearing _____ at _____ a.m./p.m. The hearing will be located at [Insert Courtroom # and Address].

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve Class Counsel's request for an award of Attorneys' Fees and Costs, as well as the Named Plaintiffs' Service Payments. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing (see **Question 17** above). After the hearing, the Court will decide whether to approve the Settlement.

The date or time of the Fairness Hearing may change. Please check the Settlement Website, *FleaandTickCollarSettlement.com*, for any updates.

## 20. Do I have to come to the Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Fairness Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider an objection that was filed on time.

## IF I DO NOTHING

| 21. What happens if I do nothing at all? |
|---|

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in **Question 9**, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendants and the Released Persons about the legal issues resolved by this Settlement. In addition, you will not receive a payment from this Settlement.

## GETTING MORE INFORMATION

| 22. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. Complete details are provided in the Class Action Settlement Agreement and Release. The Class Action Settlement Agreement and Release, and other related documents are available at the Settlement Website, *FleaandTickCollarSettlement.com*.

If you have additional questions, you may contact the Claims Administrator by email, phone, or mail:

Email: [Email Address]

Toll-Free: 1-XXX-XXX-XXXX

Mail: Seresto Settlement, c/o Claims Administrator, 1650 Arch St, Ste 2210, Philadelphia, PA 19103

Publicly filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of Illinois or reviewing the Court's online docket.

***Please do not contact the Court, its Clerks, or the Defendants to inquire about the Settlement or the Claims Process.***

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: SERESTO FLEA AND TICK COLLAR MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | ) ) ) ) | MDL No. 3009<br><br>Master Case No. 1:21-cv-04447 |
| This Document Relates to All Actions | ) ) ) ) ) | Hon. John R. Blakey |

## PRELIMINARY APPROVAL ORDER

Named plaintiffs Rhonda Bomwell, Jennifer Borchek, Anita Boulware-Jones, Regina Bullard, Katherine Byrd, John Czerniak, Darlene Dahlgren, Allison Dirk, David Gjelland, Faye Hemsley, Heather Hitt, Judy Knudson, Thomas Maiorino, Michael McDermott, Christina McDermott, Danielle McQuaid, Amanda Merriman, Deanna Miller, Abraham Mohamed, Michelle Pipeling, Laura Revolinsky, Laura Ruley, Paula Ruley, Steven Schneider, Michael Shannon, Larry Sites, Rhoda Trotter, Aitana Vargas, and Jennifer Walsh (collectively, the "Named Plaintiffs," and, collectively, with the other members of the Settlement Class, the "Settlement Class Members"), on the one hand, and Elanco Animal Health, Inc; Bayer Healthcare LLC; Bayer Healthcare Animal Health, Inc.; Bayer AG; and Bayer Corporation (collectively, "Defendants"), on the other hand, have entered into a Class Action Settlement Agreement and Release filed on December 21, 2023 (the "Settlement Agreement") to settle the above-captioned litigation ("Litigation"). The Settlement Agreement, together with its exhibits incorporated herein, sets forth the terms and conditions for a proposed settlement and dismissal with prejudice of the Litigation. Additionally, Class Counsel has filed an Unopposed Motion for Entry of Preliminary Approval Order ("Motion") pursuant to Federal Rule of Civil Procedure 23(e).

Having reviewed the Settlement Agreement and its exhibits, the Motion, the pleadings and other papers on file in this action, and statements of counsel, the Court finds that the Motion should be GRANTED and that this Preliminary Approval Order should be entered. Terms and phrases used in this Preliminary Approval Order not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement.

NOW, THEREFORE, THE COURT HEREBY FINDS, CONCLUDES AND ORDERS THE FOLLOWING:

1.      For purposes of preliminary approval, this Court assesses the Settlement Agreement under Fed. R. Civ. P. 23(e).  Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner" to proposed Settlement Class Members "if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

### Likely Approval as Fair, Reasonable and Adequate

2.      To determine whether the Settlement Agreement is fair, reasonable and adequate, Rule 23(e)(2) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

3. The Named Plaintiffs are adequately representing the proposed Settlement Class: they share the same alleged injury (that they purchased products with allegedly false or misleading labeling) and the same interest (maximizing recovery). Michael R. Reese of Reese LLP, Rachel Soffin of Milberg Coleman Bryson Phillips Grossman PLLC and Michael Williams of Williams Dirks Dameron LLC are also adequately representing the proposed Settlement Class.

4. There is no question that the Parties are at arm's length. The Settlement Agreement was the result of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through motion practice and extensive discovery. Settlement was the result of a multi-stage mediation led by Magistrate Judge Heather K. McShain.

5. The Settlement Agreement provides adequate relief to the proposed Settlement Class. As part of the settlement, Defendants have agreed to pay $15 million dollars to cover Cash Payments to Class Members who submit claims, Notice Costs, Administration Costs, Attorneys' Fees and Costs, and Service Awards. From that amount, Settlement Class Members are eligible to receive $13.00 for each Seresto Collar they purchased per pet, up to a maximum of $26.00 per pet with no Valid Proof of Purchase and with no limitation with Valid Proof of Purchase. In addition, for those Settlement Class Members whose pets allegedly suffered non-fatal injuries, those Settlement Class Members are eligible to receive $25.00 per pet or 100% of their out-of-pocket, non-reimbursed costs paid by the Claimant for medical treatment for their pet evidenced by documentation. Finally, for those Settlement Class Members whose pets allegedly suffered fatal injuries, those Settlement Class Members are eligible to receive $300.00 per pet for pet property or replacement value, 100% of their out-of-pocket, non-reimbursed costs paid by the Claimant for medical treatment for their pet evidenced by documentation, and 100% of their out-

of-pocket, non-reimbursed costs for burial, cremation or other disposal of the pet evidenced by documentation.

6.      If the Settlement Agreement had not been reached, the Parties planned to vigorously litigate this matter, including Defendants' numerous motions dismiss as well as a vigorous opposition to class certification, and Plaintiffs' chances at trial also would have been uncertain.  In light of the costs, risks and delay of trial and appeal, this compensation is certainly adequate for purposes of Rule 23(e)(1).

7.      There is no reason to doubt the effectiveness of distributing relief under the Settlement Agreement.  As further addressed below, the Parties propose a notice plan, which is detailed in the Declaration of Steven Weisbrot, Esq. re: Angeion Group Qualifications & the Proposed Notice (hereafter "Weisbrot Declaration"), filed concurrently with Plaintiffs' Motion for Preliminary Approval, which the Court finds provides "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This Court will fully assess the request of Class Counsel for the Attorneys' Fees and Costs and Service Awards after receiving their motion supporting such request.  At this stage, the Court finds that the plan to request attorneys' fees and costs to be paid from the Settlement Amount creates no reason not to direct notice to the proposed Settlement Class.  In particular, should the Court find any aspect of the requested Attorneys' Fees and Costs unsupported or unwarranted, such funds would not be returned to Defendants, and therefore the Settlement Class would not be prejudiced by directing notice at this time.

8.      No agreements exist between the Parties aside from those referred to in the Settlement Agreement and/or submitted to the Court.

9.      The Settlement Agreement treats members of the proposed Settlement Class equitably relative to each other because all members of the proposed Settlement Class are eligible for the same payments.  These are equitable terms.

10.      Having thoroughly reviewed the Settlement Agreement, the supporting exhibits and the Parties' arguments, this Court finds that the Settlement Agreement is fair, reasonable and adequate to warrant providing notice to the Settlement Class, and thus likely to be approved, subject to further consideration at the Final Approval Hearing to be conducted as described below.

11.      The Court preliminarily approves the Settlement Agreement subject to the Fairness Hearing for purposes of deciding whether to grant final approval to the Settlement.  This determination permitting notice to the Settlement Class is not a final finding, but a determination that there is probable cause to submit the proposed Settlement Agreement to the Settlement Class Members and to hold a Fairness Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement.

12.      Pursuant to Rule 23(e)(1)(B)(ii), the Court also assesses the likelihood that it will certify the proposed Settlement Class under Rules 23(a) and 23(b)(3) (because this Settlement Class seeks damages).  The Court makes this assessment for the purposes of settlement only at this time with no prejudice to the parties' positions either in support of or in opposition to class certification and without making any findings whether a disputed putative class could be certified. Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to 23(a) and (b)(3) of the Federal Rules of Civil Procedure has been met in that: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) Plaintiffs allege (though Defendants vigorously contest) that there are questions of law and fact common to the Settlement Class that

predominate over any individual questions. Without resolving that dispute outside the context of the proposed settlement, these questions of law and fact will be commonly resolved by the settlement; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class; (d) the Class Representatives and Settlement Class Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) for purposes of settlement only, a class action is superior to other available methods for the fair and efficient resolution of the Action. The Court makes no finding whether or not the underlying matters could be certified as litigation classes.

13. For these reasons, pursuant to Rule 23, and for settlement purposes only, the Court finds it will likely certify the Settlement Class defined below in this Order. This finding is subject to further consideration at the Final Approval Hearing to be conducted as described below.

14. The Court conditionally certifies for settlement purposes only the following Settlement Class:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Seresto Product on or before fourteen (14) days prior to the expiration of the Claims Period.

Excluded from the Settlement Class are the following persons:

i. Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;

ii. Class Counsel;

iii. The judges who have presided over the Litigation;

iv. Local, municipal, state, and federal government agencies; and

v. All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

The Court expressly reserves the right to determine, should the occasion arise, whether Plaintiffs' proposed claims may be certified as a class action for purposes other than settlement, and Defendants hereby retain all rights to assert that Plaintiffs' proposed claims may not be certified as a class action except for settlement purposes.

### **Additional Orders and Deadlines**

15.     The Court appoints the following attorneys to act as Settlement Class Counsel:

Michael R. Reese
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Rachel Soffin
Milberg Coleman Bryson Phillips Grossman PLLC
3833 Central Avenue
St. Petersburg, Florida 33713
Telephone: (865) 247-0080

Michael Williams
Williams Dirks Dameron LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7110

16.     The Court appoints Named Plaintiffs as representatives of the Settlement Class.

17.     The Court appoints Angeion Group as Claims Administrator in accordance with the provisions of Section IX of the Settlement Agreement.

18.     The Court approves the Short Form Notice, the content of which is without material alteration from Exhibit B to the Settlement Agreement and directs that the Short Form Notice be published in accordance with the provisions of the Settlement Agreement.

19.     The Court approves the Long Form Notice, the content of which is without material alteration from Exhibit C to the Settlement Agreement, and directs that the Long Form Notice be distributed in accordance with the provisions of the Settlement Agreement.

20.     The Court approves the Claim Form, the content of which is without material alteration from Exhibit A to the Settlement Agreement and directs that the Claim Form be available for request (either by letter, telephone, or email) from the Claims Administrator and downloadable from the Settlement Website.

21.     The Court approves the creation of the Settlement Website, as defined in Section IX.9.c. of the Settlement Agreement, that shall include, at a minimum, copies of the Settlement Agreement, the Notice of Settlement, and the Claim Form, and shall be maintained in accordance with the provisions of Section IX.9.c. of the Settlement Agreement.

22.     The Court finds that, the Class Notice Plan memorialized in the Weisbrot Declaration filed concurrently with Plaintiffs' Motion for Preliminary Approval, including the Short Form Notice and Long Form Notice  (i) is the best practicable notice, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation and of their right to object or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law.

23.     The Court orders the Claims Administrator to file proof of publication of the Class Notice, proof of providing the required CAFA Notice, and, and proof of maintenance of the Settlement Website at or before the Fairness Hearing.  After Notice has been given, the Claims Administrator shall file with the Court a declaration of compliance with the notice requirements, including the CAFA notice requirements.

24.     The Claim Deadline is 180 Days from the date of this Order.

25.     The Court orders any Settlement Class Member who wishes to exclude himself or herself from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked no later than one hundred and eighty (180) days after the Preliminary Approval Date to the Claims Administrator at the address on the Notice.

26.     The Court **PRELIMINARILY ENJOINS** all Settlement Class Members unless and until they have timely excluded themselves from the Settlement Class from (i) filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; (ii) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; and (iii) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims.

27.     The Court orders that any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class (*i.e.*, becomes an Opt-Out) will be bound by all proceedings, orders, and judgments in the Litigation, even if such Settlement Class Member

has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release.

28.     The Court orders that each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement or to the Attorneys' Fees and Costs must file with the Court and serve on Class Counsel no later than one hundred eighty (180) days after the Preliminary Approval Date, or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing all of the following information:

        a.     The objector's printed name, address, and telephone number;

        b.     whether the objector is represented by counsel and, if so, contact information for his or her counsel;

        c.     evidence showing that the objector is a Settlement Class Member;

        d.     whether the objection applies to that Settlement Class Member or to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;

        e.     any other supporting papers, materials, or briefs that the objector wishes the Court to consider when reviewing the objection;

        f.     the actual written or electronic signature of the objector making the objection; and

        g.     a statement on whether the objecting objector and/or his or her counsel intend to appear at the Fairness Hearing.

29.     Any response to an objection shall be filed with the Court no later than seven (7) days prior to the Fairness Hearing.

30.     The Court orders that any Settlement Class Member who does not file a timely written objection to the Settlement or who fails to otherwise comply with the requirements of this Order shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

31.     The Court orders that any attorney hired by a Settlement Class Member for the purpose of objecting to the Settlement Agreement or to the proposed Settlement or to the Attorneys' Fees and Costs will be at the Settlement Class Member's expense.

32.     The Court orders that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Attorneys' Fees and Costs and who intends to make an appearance at the Fairness Hearing must provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and must file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date.

33.     The Court orders that any Settlement Class Member who files a written objection and who intends to make an appearance at the Fairness Hearing must provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and must file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date.

34.     The Court orders the Claims Administrator to establish a post office box in the name of the Claims Administrator to be used for receiving requests for exclusion, objections, notices of intention to appear, and any other communications. The Court further orders that only the Claims Administrator, Class Counsel, Defense Counsel, Defendants, the Court, the Clerk of the Court, and their designated agents shall have access to this post office box, except as otherwise provided in the Settlement Agreement.

35.     The Court orders that the Claims Administrator must promptly furnish Class Counsel and Defense Counsel with copies of any and all written requests for exclusion, notices of

intention to appear, or other communications that come into its possession, except as expressly provided in the Settlement Agreement.

36. The Court orders that Class Counsel shall file their applications for Attorneys' Fees and Costs and Named Plaintiffs' Service Awards in accordance with the terms set forth in Section XI of the Settlement Agreement.

37. The Court orders the Claims Administrator to provide Class Counsel and Defendants' Counsel with copies of all requests for exclusion to counsel for the Parties on a weekly basis by email and will provide the Opt-Out List on or before two hundred days (200) after the Preliminary Approval Date. Class Counsel must then file with the Court the Opt-Out List with an affidavit from the Claims Administrator attesting to the completeness and accuracy thereof no later than three (3) business days thereafter.

38. The Court orders that a Fairness Hearing shall be held on _____ at the United States Courthouse for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604 to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court pursuant to a final approval order and judgment.

39. The Court reserves the right to adjourn or continue the Fairness Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Fairness Hearing or at any adjournment or continuance thereof, and to approve the settlement with modifications, if any, consented to by the counsel for the Settlement Class and Defendants without further notice.

40.     All pretrial proceedings in the Litigation, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement and this Order, are **STAYED** and suspended until further order of this Court.

41.     If the settlement proposed in the Settlement Agreement, this Order and the Final Order and Judgment contemplated by the Settlement Agreement do not receive full and final judicial approval in all material respects, or are reversed, vacated, or modified in any material respect, the neither the Settlement Agreement, this Order, not the contemplated Final Judgment and Order shall have any force or effect; the Parties shall be restored, without waiver or prejudice, to their respective positions immediately prior to entering into the Settlement Agreement; any conditional certification of the Settlement Class shall be vacated; the Litigation shall proceed as though the Settlement Class had never been conditionally certified.

42.     The Court may supplement this Order as it deems necessary and appropriate and may extend any of the deadlines set forth in this Order.

43.     The Court sets the following schedule for the Fairness Hearing and the actions which must precede it:

| Date | Deadline |
|---|---|
| _____, 2024<br>*[35 days prior to Opt-Out/Objection Date]* | Deadline to File Motion for Approval of Payment of Attorney Fees and Costs to Plaintiffs' Counsel and Service Awards to the Class Representatives |
| _____, 2024<br>*[180 days after Preliminary Approval Order]* | Opt-Out/Objection Deadline |
| _____, 2024<br>*[200 days after Preliminary Approval Order]* | Parties to Provide Opt-Out List to Court |

_____, 2024                                    Deadline to File Motion for Final Approval
*[30 days prior to Final Approval Hearing]*      of Class Settlement

---

_____, 2024                                    Final Approval Hearing

*[no less than 310 days*
*after Preliminary Approval Order]*

**IT IS SO ORDERED.**

Dated: _____


_____

U.S. District _____ Judge