UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: SERESTO FLEA AND TICK COLLAR MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION<br><br>**This Document Relates to All Cases** | MDL No.: 3009<br><br>Master Docket<br>Case No. 1:21-cv-04447<br><br>Judge John Robert Blakey |

## BRIEF IN SUPPORT OF MOTION FOR FEE AWARD AND FOR OTHER RELIEF

Bruce H. Nagel, Esq.
**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
Emails: bnagel@nagelrice.com

Joseph LoPiccolo, Esq.
**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: lopiccolo@pllawfirm.com

**PREFATORY STATEMENT**

Nagel Rice LLP ("NR") and Poulos LoPiccolo PC ("PL") move this court for relief pursuant to CMO 4 which granted lead counsel the right to allocate fees and costs. There are several grounds for this application. First, NR and PL were solely responsible for filing and arguing the MDL application which successfully consolidated over 20 cases in this District. For this unique work product which greatly benefited the class and greatly fomented settlement, the firms received nothing.

Second, lead counsel never disclosed to our firms that they would not be compensated for pre-appointment lodestar and costs and when we were asked to consent to the settlement, we specifically raised the issue of receiving the same lodestar and multiplier as the lead firms. We were never told that we would receive nothing for pre-appointment lodestar and that fact would have been material in our firms assessing whether to object to the settlement or consent, as we did. See, Nagel Dec. at par. 5.

Third, unlike other firms, NR and PL engaged an expert who provided valuable insight into the claims and litigation approach. While lead counsel did reimburse NR for these costs, thus recognizing the value of the expert, the time incurred in connection with the expert was not compensated.

1

Nor, despite requests, has lead counsel disclosed what each firm's lodestar was and what the award of fees was. That information is required for a full and fair assessment of the issues raised in this application.

Without any input from many firms, lead counsel determined that they would not award any fees for pre-appointment work. This unilateral decision benefited the lead firms by increasing the amount they would receive to the detriment of those firms that did not have significant post-appointment time or costs. And even more disturbing, distributions of fee awards were made without court approval of the allocation, thus stripping the court of it's responsibility under Fed. R. Civ. P. 23 to insure that fees are reasonable and divided up fairly among plaintiff's counsel. See Strong v. BellSouth Telecomms. Inc., 137 F. 3d 844 , 849 (5th Cir.); Manual for Complex Litigation Sec. 14.11 ( 4th Ed. 2004). In the Seventh Circuit, a blanket delegation to lead counsel to allocate fees is inappropriate where there is any disagreement among counsel, as there is here. See In re TikTok, Inc. Consumer Privacy Litigation, 617 F. Supp. 3d. 904 (2022), citing In re High Sulfur Content Gasoline Products Liability Litigation, 517 F. 3d 220 (5$^{th}$Cir. 2008).

It is grossly unfair, and a stark abuse of discretion, for lead counsel to retain approximately $4.5 million in fees and costs and distribute zero to the firms that were instrumental in filing the MDL engaging our expert, and obtaining the valuable relief that we did.

2

**STATEMENT OF FACTS**

On April 22, 2001, NR and PL filed a class action complaint on behalf of lead plaintiff, Laura Revolinsky, and all others similarly situated against Elanco Animal Health Incorporated and Bayer Healthcare LLC in the District of New Jersey alleging various claims including fraud and consumer fraud related to the defective design of Seresto flea and tick collars for dogs and cats. <u>Revolinksy v. Elanco Animal Health Incorporated and Bayer Healthcare LLC</u>, CA No. 2:21-cv-10003, ECF No. 1. The class action complaint sought to have a nationwide class and New Jersey subclass certified of all persons who purchased a Seresto Collar that has caused injury or death to their pet or is susceptible to causing injury or death to their pet due to the Defect. <u>Id</u>.

At the time, the Revolinsky action was one of twelve class actions filed. All were filed within one month. The Revolinsky action and only three other actions of the twelve sought a nationwide class. Accordingly, NR and PL immediately began preparing briefing in support of a motion before the Judicial Panel on Multidistrict Litigation requesting transfer under 28 U.S.C § 1407 of all filed class actions to a single district for coordinated pretrial proceedings. NR and PL worked diligently and efficiently and filed the motion before the JPML on April 29, 2021. No other firm filed a motion with the JPML. Nagel Rice prepared for and argued before the JPML on behalf of Plaintiff Revolinsky's motion to consolidate. This motion was

opposed by defense counsel. On August 11, 2021 the JPML granted Plaintiff Revolinsky's motion and transferred all 12 Seresto class actions to the Northern District of Illinois.

After the JPML consolidated all the proceedings before this court, attorneys in all filed cases began discussing leadership positions. Unfortunately, they could not agree on a leadership structure. Motions for leadership were filed before this Court. A self-named "Consensus Group" of counsel representing 12 of the 16 actions joined sought appointment of three co-lead counsel (Rachel Soffin of Milberg Coleman Cryson Phillips Grossman, PCCL; Michael Reese of Reese LLP; and Michael A. Williams of Williams Dirks Dameron LLC), one liaison counsel (Carl Malmstrom of Wolf Haldenstein Adler Freeman & Herz LLC) and an eight-member executive committee (Yeremey Krishoey of Bursor & Fisher, P.A.; Michael Laird of Zimmerman Reed LLP; Kevin Laukaitis of Shub Law Firm LLC; Brad Lear of Lear Werts LLP; Scott Levensten of Levensten Law Firm, PC; Alex Lumaghi of Dowd & Dowd, P.C.; Brian Morrison of Tadler Law LLP; and John Nelson of Finkelstein & Krinsk LLP). Separately, Plaintiff Laura Revolinsky moved to appoint Randee M. Matloff and Diane E. Sammons of Nagel Rice, LLP as interim lead counsel. On February 7, 2022 this Court adopted the Consensus Group's proposed leadership structure. (ECF No. 58)

4

On April 6, 2022 this Court entered Case Management Order 4. (ECF No. 68). In CMO 4, the Court adopted guidelines for the management of case staffing, timekeeping, expense reimbursement and related issues. Regarding eligibility to receive attorneys' fees and reimbursement of expenses, CMO 4 states:

> Time and expense submissions shall be made to Co-Lead Counsel on a monthly basis, by the 18th of each month…using monthly reports to be distributed by Co-Lead Counsel. The first submission is due on Monday, April 18, 2022, and should include all time and expense through March 31, 2022. Thereafter, all time and expense reports shall be submitted on the 18th day of each month and shall cover the time period through the end of the preceding month…Generally, only time and expense incurred after the Court's February 7, 2022 Order appointing Plaintiffs' Leadership shall be submitted and considered as potential Common Benefit Work.

CMO No. 4 at 9. Footnote 2 then states:

> In their discretion, Co-Lead Counsel may consider time and expense incurred before the Court's February 7, 2022 Order as Common Benefit Work and Common Benefit Expense if the time or expense benefitted the proposed class members in a material way.

Common Benefit Work is defined as including but not limited to:

> Investigation, discovery, (whether documents, interrogatories, depositions or otherwise), coding or other analytical work relating to documents or evidence, research, motions and response to motions, exhibits, bellwether trials and transcripts, all other work performed under the direction of Co-Lead Counsel for the benefit of the proposed class members involving Common Benefit Work.

Id. at 4.

In accordance with CMO 4 and per leadership's request, NR and PL submitted their time and expenses for work incurred through March 31, 2022, most of which was related to successfully filing and arguing the motion before the Judicial Panel on Multidistrict Litigation requesting transfer under 28 U.S.C § 1407 of all filed class actions to a single district for coordinated pretrial proceedings. Declaration of Joseph LoPiccolo ("LoPiccolo Dec.") at ¶4; Declaration of Bruce H. Nagel ("Nagel Dec.") at ¶2. Thereafter, at the request of Leadership, NR and PL performed discovery work including reviewing documents produced by Defendants and preparing interrogatories and other responsive discovery on behalf of their client Laura Revolinsky, one of the lead plaintiffs in this class action. Nagel Rice submitted all time and expense reports in a timely manner. Nagel Dec. at ¶ 4. Poulos LoPiccolo submitted time, all of which was related to discovery work requested by Leadership, for August 2022 through May 2023 on June 15, 2023. Mr. LoPiccolo was not aware that it was necessary to submit time monthly. He assumed that Leadership, as part of their leadership duties, would request submissions of time and expense reports when necessary. When Mr. LoPiccolo asked co-lead counsel, Carl Malmstrom, who was responsible for collecting monthly time and expense reports from firms, if Leadership sent out such requests, he responded, "Nope. Its just part of the protocol." Mr. LoPiccolo requested that an exception be made for Poulos LoPiccolo's time that was submitted late (related to work performed from August

6

2022 through April 2023). LoPiccolo Dec. at ¶¶ 7-8. Nothing in CMO 4 states time submitted late cannot be approved for payment.

After the parties negotiated a class action settlement, including on behalf of Nagel Rice and Poulos LoPiccolo's lead plaintiff, Laura Revolinsky, Mr. Nagel spoke to co-lead counsel, Michael Reese regarding payment of fees. When asked directly if all counsel would be treated the same in the fee allocation, Mr. Reese assured Mr. Nagel that all firms would be treated equally and he never disclosed that pre-appointment lodestar would not be honored. This answer to this question was critical in determining whether NR and PL would agree to the settlement or file objections. Nagel Dec. at ¶ 5.

On January 6, 2025, this Court granted final approval of the class action settlement approving attorneys' fees and expenses in the amount of $4,587,383.33. (ECF No. 204 at 18). On February 13, 2025, Mr. Michael Williams, a member of leadership, informed Mr. Nagel that for all the work his firm performed, they would be paid a total of $6,010.00. Nagel Dec. at ¶4. On February 24, 2025, Michael Williams informed Mr. LoPiccolo that for all work his firm performed, it would be paid a total of $12,320.00. LoPiccolo Dec. at ¶ 9. Mr. Williams informed both Nagel Rice and Poulos LoPiccolo that their time for worked performed before leadership was appointed – February 7, 2022 – was not approved. LoPiccolo Dec. at ¶ 10; Nagel Dec. at ¶6. For Nagel Rice, that meant approximately $130,000.00 worth of

work was not approved. In other words, Nagel Rice was paid less than 5% of its billable time. For Poulos LoPiccolo, that meant $49,340.00 worth of work was not approved. Additionally, with respect to Poulos LoPiccolo, their time submitted late (worked performed from August 2022 through April 2022) was not approved. LoPiccolo Dec. at ¶ 10. This meant an additional $14,205.00 worth of billable time was not approved for Poulos LoPiccolo. In other words, in total, Poulos LoPiccolo was paid only 16% of its billable time.

Mr. LoPiccolo and Mr. Nagel both discussed (orally and/or by email) with Mr. Williams the failure to approve these fees which were for work that benefited the class. However, Mr. Williams informed them that leadership refused to approve the fees or any portion thereof. Moreover, despite Mr. Nagel's and Mr. LoPiccolo's requests, leadership has refused to disclose the lodestar and amounts each firm was paid out of the $4,587,383.33 attorney fees and expenses approved by this Court. LoPiccolo Dec. at ¶¶ 10-13.

Pursuant to the Final Approval Order, this Court "retain[ed] jurisdiction over the Claims Administrator, Defendants, the Plaintiffs, and the Settlement Class as to all matters relating to the administration, consummation, enforcement, and interpretation of the terms of the Settlement and Final Order and Judgment." (ECF No. 204 at 22).

## ARGUMENT

**A. LEAD COUNSEL ABUSED ITS DISCRETION IN REFUSING TO COMPENSATE INDEPENDENT COUNSEL FOR WORK THAT CONTRIBUTED TO THE CLASS SETTLEMENT SIMPLY BECAUSE THE WORK WAS PERFORMED BEFORE LEADERSHIP WAS APPOINTED.**

Rule 23(h) allows the Court to award reasonable attorneys' fees and non-taxable costs that are authorized by law. Fed.R.Civ.P. 23(h). This is true even if the applicant seeking fees is not designated class counsel. See Committee Note to subsection (h); Gottlieb v. Barry, 43 F.3d 474, 488 (10th Cir. 1994) ("we fail to see why the work of counsel later designated as class counsel should be fully compensated while the work of counsel who were not later designated class counsel . . . should be wholly uncompensated."); Issues with Non-lead Counsel, 26A Sec. Lit. Damages § 25:4.40 ("Work completed by non-lead counsel before the court appoints a lead attorney can confer substantial benefits on the class, and thus non-lead counsel should be reasonably compensated.").

In Gottlieb, numerous pending securities cases were consolidated and converted into a class action, and the district court appointed class counsel. At the end of the litigation, the district judge submitted the issue of attorneys' fees to a special master, who suggested that 22.5% of the settlement amount be allowed as fees and that 10% of the total fee be paid to those attorneys who had not been appointed to represent the class. Id. at 488. The district judge rejected the master's

9

report, including the suggestion that non-class counsel be compensated, reasoning that the work they had done was duplicative. Id.

On appeal, the Tenth Circuit reversed, and reinstated the special master's fee award. The court found that "numerous actions were initially filed, and counsel vigorously pursued those cases for sixteen months before class counsel was designated." Id. at 488. The district court had encouraged non-designated counsel to coordinate their efforts, and the Tenth Circuit found that those attorneys had vigorously prosecuted their cases. Id. at 489.

The court continued:

> Moreover, it seems implausible that all of sixteen months of work, pursued on multiple fronts by multiple counsel, **suddenly becomes worthless upon the selection of a few counsel to serve as class counsel**. . . . And while there obviously was some duplication in the work of all counsel simultaneously pursuing many actions. . . .

Id. (emphasis added).

The Third Circuit, in In re Cendant Corp. Securities Litig., 404 F.3d 173 (3rd Cir. 2005), pointed out that the concept of rewarding the efforts of non-class counsel applies even in the context of the Private Securities Litigation Reform Act ("PSLRA"), where emphasis on the role of "lead counsel" is particularly great. While the PSLRA limits the court's ability to award fees to non-affiliated counsel after the designation of a lead plaintiff in a shareholder suit, no such restriction exists

for work performed before the formal creation of the class. Id. at 195. The Court noted an attorney is entitled to compensation if he or she:

> . . . creates a substantial benefit for the class in this period -- by, for example, discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class action . . .whether or not chosen as lead counsel.

Id. at 195. The court explained further:

> Attorneys who alone discover grounds for a suit, based on their own investigation rather than on public reports, legitimately create a benefit for the class, and comport with the purposes of the securities laws. Such attorneys should generally be compensated out of the class's recovery, even if the lead plaintiff does not choose them to represent the class. More generally, attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a claim on a share of the class's recovery.

Id. at 196-97. The Cendent court announced that it expected lead plaintiffs who make use of earlier attorneys' legal or investigative work to "request compensation for such attorneys," and warned against lead plaintiffs appropriating that work and trying to deny compensation to the work of other attorneys. Id. at 197

Courts throughout the country have followed Cendent. Indeed, the Eleventh Circuit reiterated that "non-class counsel is generally entitled to a portion of a common fund recovered in a class action as attorneys' fees under Rule 23(h) if non-class counsel confers a substantial and independent benefit to the class that aids in the recovery or improvement of the common fund." Arkin v. Pressman, Inc., 38 F.4th 1001, 1009 (11th Cir. 2022). "Examples of substantial benefits may include,

11

but are not limited to, 'significant factual investigations,' 'legal research on novel or innovative theories,' actions that positively affect the 'ultimate course of the litigation,' or objections that aid in the class's recovery." Id. (citing Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 87 (2d Cir. 2010)("work completed by non-lead counsel prior to the appointment of lead plaintiff can confer substantial benefits on the class.").

Here, NR and PL's pre-appointment work substantially benefited the class. They were one of the few firms to file a class action complaint seeking a nationwide class, conducted useful investigations, hired an expert and were the only firms to file and argue the motion to transfer before the JPML successfully. The coordination into an MDL changed the course of this litigation. It put pressure on Defendants to engage in settlement discussions and ultimately agree to the settlement that resulted in a $15 million fund for the class. See Andrew D. Bradt & D. Theodore Rave, It's Good to Have the "Haves" on Your Side: A Defense of Repeat Players in Multidistrict Litigation, 108 Geo. L.J. 73, 90 (2019) ("Defendants are often willing to pay a premium to put the whole litigation behind them--to end the uncertainty, the risk of adverse selection (that is, overpaying to settle weak claims while plaintiffs hold the strong ones out for trial), and the negative publicity and concomitant drag on stock price that goes along with mass litigation.")

12

Class Counsel abused its discretion in not approving compensation to NR and PL for their pre-appointment work. There is no doubt that their pre-appointment work initiated the path to a valuable settlement to the class. Moreover, Lead Counsel must disclose what each firm's lodestar and award of fees for a full and fair assessment of the issues raised in this application.

Moreover, lead counsel never sought approval of their allocation and usurped the court's role under Rule 23. See, cases cited at 2, supra.

Accordingly, the Court should order Lead Counsel to compensate Nagel Rice and Poulos LoPiccolo their lodestar for this work pre appointment work performed. To the extent Lead Counsel firms were paid a lodestar multiplier, then the Court should order that they pay Nagel Rice and Poulos LoPiccolo the same multiplier on their lodestars.

**B.    LEAD COUNSEL ABUSED ITS DISCRETION IN REFUSING TO COMPENSATE INDEPENDENT COUNSEL FOR WORK THAT CONTRIBUTED TO THE CLASS SETTLEMENT SIMPLY BECAUSE TIME WAS SUBMITTED LATE.**

In addition to being denied compensation for pre-appointment work, Poulos LoPiccolo was also denied compensation by leadership for work it performed at the request of class counsel. Denying Poulos LoPiccolo compensation for this work that was requested by class counsel and benefited the class was erroneous. As the Third Circuit explained in Cendant:

13

> Non-lead counsel can refute the presumption, even in cases where lead plaintiff has faithfully discharged its fiduciary duties, simply by demonstrating that lead plaintiff's denial of fees was erroneous—that is, by clearly proving that non-lead counsel reasonably performed work that independently benefited the class. But, given our stated deference to lead plaintiff's managerial decisions, the standard for such a demonstration will be high. Non-lead counsel will need to prove by clear evidence that (1) they performed work on behalf of the class, (2) they did so with some reasonable expectation of being compensated out of the class's common-fund recovery, and (3) their work led to identifiable benefits to the class that would not have been obtained by the work of lead counsel.

Cendant, 404 F.3d at 200.

There is no dispute that the discovery work Poulos LoPiccolo performed at the request of Class Counsel, specifically, responding to Defendants' discovery demands, benefited the class and was done by Poulos LoPiccolo with the expectation of being compensated out of the class's common-fund recovery. Lead Counsel's refusal to compensate Poulos LoPiccolo for this work simply because they submitted their time late was erroneous. Accordingly, the Court should order Lead Counsel to compensate Poulos LoPiccolo their lodestar for this work performed in the amount of no less than $14,205.00. To the extent Lead Counsel firms were paid a lodestar multiplier, then the Court should order that they pay Poulos LoPiccolo the same multiplier.

## **CONCLUSION**

Based upon the foregoing, Nagel Rice and Poulos LoPiccolo, respectfully request that the Court Order Lead Counsel to pay Nagel Rice and Poulos LoPiccolo the fees associated with their pre-appointment work and to also pay Poulos LoPiccolo for all work it performed at the request of Lead Counsel.

Date: April 15, 2025
Roseland, New Jersey

Respectfully submitted,

By: *s/ Bruce H. Nagel*

Bruce H. Nagel, Esq.
**NAGEL RICE LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
Emails: bnagel@nagelrice.com

Joseph LoPiccolo, Esq.
**POULOS LOPICCOLO, PC**
1305 South Roller Road
Ocean, New Jersey 07712
Tel: (732) 757-0165
Fax: (732) 358-0180
Email: lopiccolo@pllawfirm.com