UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: SERESTO FLEA AND TICK COLLAR MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | MDL No. 3009 |
| | Master Docket Case No. 1:21-cv-04447 |
| This Document Relates to All Cases | Hon. John R. Blakey |

**LEAD COUNSEL'S RESPONSE IN OPPOSITION TO NAGEL RICE AND POULOS LOPICCOLO'S MOTION FOR ADDITIONAL FEES**

Court appointed co-lead class counsel Michael R. Reese, Rachel Soffin, and Michael A. Williams ("Co-Lead Counsel") provide the following opposition to Nagel Rice LLP ("NR") and Poulos LoPiccolo PC's ("PL") Motion for Fee Award ("Motion"), whereby NR and PL seek special treatment and payment of additional fees that no other counsel received. Specifically, NR and PL seek payment for pre-centralization lodestar and untimely submitted lodestar in violation of this Court's Orders (and for which no other firms have been paid). The Motion should be denied.

**PREMILINARY STATEMENT**

The Motion has no factual or legal support. It is merely a case of NR's refusal to cooperate with the other Plaintiffs' counsel, who offered NR an opportunity to participate in leadership, but which NR refused in favor of an unsuccessful effort for appointment as lone class counsel. Moreover, Co-Lead Counsel have exercised good faith in their interactions with all counsel, all of whom have been treated equally, including NR and PL. Indeed, by their Motion, NR and PL seek preferential treatment that no other attorney in this matter has received, including, but not limited to, compensation for pre-MDL centralization time and compensation for time that was not properly and timely submitted to Your Honor. Moreover, as explained below, the Motion violates several of this Court's orders in this matter. Accordingly, for the reasons detailed below, the Motion should be denied.

First, NR and PL argue that they "were solely responsible for filing and arguing the MDL application, which successfully consolidated over 20 cases in this District. The firms received nothing for this unique work product, which greatly benefited the class and fomented settlement." Mot. at 1. ***This is false***.

Each attorney appointed to leadership in this action, including Co-Lead Counsel, Liaison Counsel, and every member of the Executive Committee, filed responses supporting transfer and consolidation of this action pursuant to 28 U.S.C. §1407. *IN RE: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, MDL No. 3009, ECF Nos. 25, 34, 35, 37, 39, 40, 43, 44. At the July 29, 2021, JPML hearing, attorneys from several of the firms appointed to leadership argued in support of transfer and consolidation, including, among others, Co-Lead Class Counsel Rachel Soffin (appearing on behalf several members of leadership ultimately appointed in this case) and Executive Committee member Scott Levensten. *Id.* at MDL ECF No. 74 (July 29, 2021, JPML hearing transcript). Indeed, Plaintiffs in all sixteen actions pending at the time of JPML hearing supported centralization. MDL ECF No. 33 (Transfer Order). Accordingly, it was the collective work of all counsel that led to the formation of this MDL.

In addition, consistent with CMO No. 4, counsel was not compensated for work conducted before formation of the MDL and its transfer to the Court. Despite their claims of wanting to be treated the same as all other counsel, **NR and PL are seeking payment for pre-appointment time, for which no other attorneys received compensation**. (ECF No. 68).[1]

---

[1] Another example is that co-lead counsel Michael Reese of Reese LLP filed the first complaint, well before NR filed its complaint. Nonetheless, since investigation and drafting of the first complaint filed by anyone was for pre-MDL centralization work, Reese LLP did not receive any compensation for its investigation and drafting of the first complaint that resulted in the MDL.

The pre-transfer work by NR and PL also did not contribute to the common benefit. As the Court noted in the February 7, 2022, order appointing leadership, "[i]n their motion, Attorneys Matloff and Sammons (of NR) indicate that they have already taken the lead on major parts of the case, including retaining a veterinary expert and filing the first motion to transfer before the JPML. [55-1] at 5. *As to the latter, the Court notes that counsel was not successful in the motion, as they sought to transfer the case to New Jersey and the action wound up here.*" ECF No. 58 ("Leadership Order"), at 2.

Moreover, the Motion does not detail any work that allegedly "greatly fomented the settlement." This is because that statement is untrue. While all attorneys appointed to leadership conducted extensive pre-suit investigation, no case was procedurally advanced, and no formal discovery had been conducted until after the formation of the MDL and appointment of leadership. As noted by Defendants in their brief before the JPML panel: "[a]ll of the Subject Actions were filed between March 22 and May 14, 2021, and are all in approximately the same procedural posture. Defendants have yet to respond to any of the complaints, and no discovery has yet begun. By agreement of the parties, the vast majority of the Subject Actions have been stayed or are expected to be stayed pending this Panel's decision regarding centralization."[2] MDL ECF No. 41.

Here, the work that contributed to the settlement was completed by the leadership appointed by Your Honor. After appointment, Leadership Counsel[3] worked tirelessly for years and achieved an exemplary result for the Settlement Class. Pursuant to CMO 4, Leadership Counsel

---

[2] Williams Dirks Dameron LLC was the lone exception because prior to the formation of the MDL by the JPML, its complaint that was pending in the Western District of Missouri had survived a motion to dismiss and had started discovery (specifically, the negotiation of an ESI and discovery protocol). Despite this work, Williams Dirks Dameron was not compensated for any of this time or any other pre-centralization time. See Exhibit C (Docket Report for *Knudson v. Bayer HealthCare*, 6:21-cv-03108-SRB (W.D. Missouri)).

[3] "Leadership" or "Leadership Counsel" includes all attorneys appointed to leadership in this case pursuant to the February 7, 2022, Order. ECF No. 58.

submitted monthly billing and expenses to the Court. Pursuant to CMO 4, Leadership Counsel was compensated for this work and no plaintiffs' counsel, including Leadership Counsel, were compensated for work performed prior to leadership appointment. <u>NR and PL are no exception</u>. *See Co-Lead Counsel Joint Decl.* at ¶¶ 38-39. The reasoning was simple, since none of the pre-centralization pleadings, documents, and/or reports were used during the MDL process, all plaintiffs' counsel were on equal footing and provided ample opportunities to work on committees. Unfortunately, after NR's non-selection to leadership, NR chose not to participate in any meaningful MDL work and only gathered discovery from their client, for which they have been offered compensation.

<u>Second</u>, NR and PL argue that "lead counsel never disclosed to our firms that they would not be compensated for pre-appointment lodestar and costs, and when we were asked to consent to the settlement, we specifically raised the issue of receiving the same lodestar and multiplier as the lead firms." Motion. at 1. NR and PL also argue that "[w]ithout any input from many firms, lead counsel determined that they would not award any fees for pre-appointment work. This unilateral decision benefited the lead firms by increasing the amount they would receive to the detriment of those firms that did not have significant post-appointment time or costs." ***<u>This is false</u>***.

First, it is astonishing that NR and PL state they would not have consented to the Settlement had they known they would not get paid pre-appointment time. In sum, NR and PL admit that they would put their own interests ahead of their client's and the Class.

In addition, all Plaintiffs' counsel, including NR and PL, had notice of the Time and Expense Order issued by Your Honor, which clearly details that plaintiffs' counsel are only eligible to receive attorneys' fees for work performed after the Court's February 7, 2022, Order appointing leadership, and for work that was timely submitted on a monthly basis, by the 18th of each month. The Time & Expense Order was disseminated by this Court on ECF, through which NR and PL

4

received a copy. *Failure by NR and PL to read this Court's Order is no excuse*. Even more, as shown in the email attached as Exhibit A to the Joint Declaration of Co-Lead Counsel, Co-Lead Counsel also sent NR the Time and Expense Order on April 8, 2022. *Id.* And on April 18, 2022, Joseph LoPiccolo, counsel from PL, emailed Co-Lead Counsel acknowledging that his co-counsel from NR sent him the Time & Expense Order. *Id.* Thus, the assertion that NR and PL did not receive the Time & Expense Order is patently false. In sum, *the attorneys from NR and PL either failed to read the Time & Expense Order issued by this Court (and also sent by Co-Lead Counsel) or failed to follow through with their known obligations and instead blame others.*

Further, NR and PL seem to misunderstand that:

(1) All plaintiffs' counsel have been treated equally;

(2) No plaintiffs' counsel received a multiplier;

(3) Several plaintiffs' counsel, including all three Co-Lead Counsel and a number of Executive Committee members, received a **negative multiplier;**

(4) No plaintiffs' counsel received payment for work conducted prior to the Leadership Order;

(5) No plaintiffs' counsel was paid for work billed that was not timely submitted;

(6) Attorneys from NR and PL had an opportunity to participate on the Executive Committee in this case, which would have given them additional opportunities for billable work, but "decline[d] to serve within a collaborative structure and instead [sought] appointment alone." (ECF No. 57, at 2).

*See Co-Lead Counsel Joint Decl.* at ¶¶35-40. These factors further undermine NR/PL's Motion.

Third, NR and PL argue that "unlike other firms, NR and PL engaged an expert who provided valuable insight into the claims and litigation approach. While lead counsel did reimburse NR for these costs, thus recognizing the value of the expert, the time incurred in connection with the expert was not compensated." Motion. at 1. ***This is false***.

Prior to formation of the MDL, Leadership Counsel was in contact with the same expert referred to in the Motion, who Leadership Counsel located independently of NR and PL. *See Co-*

5

*Lead Counsel Joint Decl.* at ¶¶20-22. Solely for goodwill, Leadership Counsel reimbursed NR $5,000 for the retainer paid to this expert. No documents, reports, or data had been provided to Leadership from this expert, and Leadership **did not work with this expert or rely on this expert** for any substantive assistance. *Id.* Leadership Counsel instead retained other experts, including in the fields of veterinary medicine, material sciences, and class damages, who provided valuable insight that contributed to the litigation (and ultimate settlement of this MDL). *Id; See also* ECF No. 204, Final Approval Order, at 16. NR and PL did not work with any of these experts, and the fact that they were unaware that their expert did not work on the case after leadership appointment confirms that NR and PL played no substantive role in the resolution of this case.

## I.  RELEVANT BACKGROUND

### A.  The February 7, 2022, Leadership Order

Two competing leadership applications were filed in this MDL. One application sought appointment of the "Consensus Group" including three co-lead counsel (Rachel Soffin, Michael R. Reese, and Michael A. Williams), one liaison counsel (Carl Malmstrom) and an eight-member executive committee (Yeremey Krivoshey, Michael Laird, Kevin Laukaitis, Brad Lear, Scott Levensten, Alex Lumaghi, Brian Morrison, and John Nelson). ECF No. 55. The other application sought appointment only of counsel at NR and did not seek to include any other firms who had filed actions in the MDL. ECF No. 56.

As shown in the Consensus Groups' leadership application, [t]he attorneys in the Consensus Group conferred on multiple occasions—including with the Nagel Rice firm—in an open and collaborative process to discuss, and ultimately determine, the proposed structure..." ECF No. 57, at 2. The NR firm "decline[d] to serve within a collaborative structure and instead [sought] appointment alone…" *Id.* Thus, the Consensus Group sought to incorporate NR and LP into the leadership structure, which NR and LP rejected, leading to competing applications.

6

On February 7, 2022, this Court adopted the Consensus Group's proposed leadership structure, and denied NR's leadership application. ECF No. 58 ("Leadership Order").

### B. The Time and Expense Order

On April 6, 2022, this Honorable Court entered the Time and Expense Order. ECF No. 68. The Time and Expense Order clearly details the parameters for compensable time, and the requirements for any plaintiffs' counsel to receive payment of fees for work performed in this matter. Pursuant to the Time and Expense Order, "[a]ll counsel who seek to recover Court-awarded fees and expenses agree to the terms and conditions [t]herein." *Id.* at 3. All counsel of record, including those from NR and PL, had explicit notice of the Time and Expense Order and thus agreed to the terms and conditions therein when it was entered three years ago.

The Time and Expense Order (ECF No. 68) states the following, in relevant part:

- "Counsel shall be eligible to receive attorneys' fees and reimbursement of expenses ***only if the time expended, expenses incurred, and activity in question were***: (a) for the Common Benefit of the proposed class members; (b) ***conducted by Co-Lead Counsel and their respective firms or otherwise appropriately authorized by Co-Lead Counsel in writing***; (c) ***timely submitted***; (d) reasonable; and (e) verified by a partner or shareholder in the submitting firm." *Id.* at 2 (emphasis added).

- "Time and expense submissions shall be made to Co-Lead Counsel <u>on a monthly basis, by the 18th of each month</u>, in accordance with the guidelines set forth herein and using monthly reports to be distributed by Co-Lead Counsel." *Id.* at 9. (emphasis added).

- "***Generally, <u>only time and expense incurred after the Court's February 7, 2022, Order</u> appointing Plaintiffs' Leadership shall be submitted and considered as potential Common Benefit Work***. *Id.* (emphasis added).

- <u>In their discretion</u>, Co-Lead Counsel may consider time and expense incurred before the Court's February 7, 2022 Order as Common Benefit Work and Common Benefit Expense if the time or expense benefitted the proposed class members in a material and direct way. *Id.* at 9, fn 2. (emphasis added).

*See* CMO 4 (ECF No. 68).

Thus, the Time and Expense Order very clearly finds that any plaintiffs' counsel, including counsel from NR and PL, are only eligible to receive attorneys' fees for work performed after February 7, 2022, and if the hours expended were timely submitted on a monthly basis by the 18th of each month, and assigned by Co-Lead Counsel. While Co-Lead Counsel reserved discretion to consider time submitted for work incurred before February 7, 2022, as detailed herein, that discretion was exercised in good faith and all plaintiffs' counsel were treated equally. *<u>No plaintiffs' counsel received a multiplier for their time, and no counsel was compensated for work performed prior to February 7, 2022. Instead, several plaintiffs' counsel, including Co-Lead Counsel and several Executive Committee members, received negative multipliers</u>*. *Co-Lead Counsel Joint Decl.,* at ¶¶ 38-40. This was made clear in the fee brief filed on June 17, 2024, to which neither NR or LP objected to by the objection deadline of July 23, 2024. *See Fee Brief* (ECF No. 195), p. 10 ("*only time billed after the formation of the MDL and the appointment of leadership counsel, which was timely submitted to the Court, is included here.*").

### C. Leadership Counsel's Significant Efforts Led to the Settlement

Leadership Counsel undertook substantial work litigating this class action over the last several years. This work is detailed in both the Joint Declaration of Co-Lead Counsel in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 186-2) and again in the Joint Declaration of Co-Lead Counsel in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 201-2). All of this lodestar was submitted to the Court on a monthly basis as required by this Court's Order. *See* CMO 4 (ECF No. 68) at 9.

As shown in these declarations, one or more of Leadership Counsel made multiple court appearances, prepared multiple operative complaints in this matter (ECF Nos. 111-114, 124-127, 130), briefed numerous motions to dismiss filed by Defendants (ECF Nos. 138-144, 148, 150-151, 156-162), attended an in-person session in Washington, D.C. before the United States House of

8

Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy, where two class representatives testified about their pets' experiences with the Seresto Collars, worked diligently with multiple consulting experts, and engaged in written discovery and depositions. (ECF No. 195-1) at ¶¶ 15-39. **NR and LP did none of this work.**

Moreover, as noted in the Final Approval Order, after formation of this MDL, "[t]he Parties engaged in significant discovery, including exchanging hundreds of requests for discovery and document production from Defendants, discovery from numerous third parties, and requests to governmental entities under the Freedom of Information Act. Plaintiffs also worked with consulting experts throughout the Litigation, including veterinary medicine and material sciences experts. Defendants also requested from Plaintiffs various documents related to their Collar purchases, information regarding their pets, and their pets' alleged injuries and deaths. After the exchange of documents, Defendants began to depose Plaintiffs. During this time, while actively participating in discovery, the parties also engaged in settlement negotiations before Magistrate McShain. *It was only at the conclusion of the lengthy mediation process that the parties were able to resolve this matter*." ECF No. 204, at 15-16 (emphasis added).

*Notably, NR and LP did none of this work, except for a limited amount of work with respect to their client collecting discovery. For the time they submitted timely for their work with their client, they are to be compensated fully.*

Settlement negotiations were lengthy and hard-fought. Starting on March 28, 2023, Judge McShain held several telephonic settlement conferences with the parties to discuss their positions regarding settlement (ECF Nos. 147, 152, 153, 164). During this time, the Parties continued to correspond regarding settlement and exchanged information relevant to further settlement negotiations. ECF No. 201-2, at ¶21. On May 23, 2023, the Parties attended an in-person settlement conference with Judge McShain, which resulted in an impasse. ECF No. 201-2, at ¶23; ECF No.

9

165. Following the settlement conference, the parties continued to engage in active litigation, while also continuing to participate in ex parte and off-the-record settlement telephone conferences with Judge McShain. ECF No. 201-2, at ¶23; ECF Nos. 167, 170, 172. After conducting the extensive discovery detailed above, the Parties reached an agreement in principle. Over the next five months, the Parties continued to work diligently and expend a substantial amount of time and effort to finalize the material terms of the Settlement Agreement and ancillary documents, and the plan for Class Notice. ECF No. 201-2, at ¶23. In the Final Approval Order, the Court found "that the Settlement was the product of extensive arm's-length negotiations." ECF No. 204, at 7. ***NR and LP did not participate or otherwise contribute to these settlement negotiations.***

Following the Settlement and Final Approval, Leadership Counsel continued to work zealously to effectuate the Settlement, including working with Claims Administrator and Settlement Class Members to ensure appropriate relief is delivered under the Settlement. *See Joint Co-Lead Counsel Joint Decl.* at ¶41. ***NR and LP did not work or otherwise contribute to these settlement efforts.***

### D. The Final Approval Order

On January 6, 2025, following a hearing, this Court granted Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 200) ("Motion for Final Approval") and Motion for Payment of Attorneys' Fees and Reimbursement of Litigation Expenses to Plaintiffs' Counsel, and Payment of Service Awards to the Class Representatives. (ECF No. 194) ("Motion for Fees, Expenses, and Service Awards"). ECF No. 204 ("Final Approval Order").

The details of the significant work performed by Leadership Counsel are again detailed in the Final Approval Order, which are summarized above. When discussing the adequacy of representation in the Final Approval Order, the Court found that "the parties engaged in substantial discovery and information. This shows that Class Counsel had "an adequate information base"

while negotiating the Settlement here. Class Counsel also has extensive experience with class action litigation. Thus, based upon the record as whole, Class Counsel and the Plaintiffs have adequately represented the Settlement Class." ECF No. 204, at 7.

In the Final Approval Order, the Court also "vest[ed] Class Counsel with the authority to distribute… fees to other Plaintiffs' counsel based upon their best judgment and in keeping with the Time and Expense Protocol that has governed the submission of time and expenses in this Litigation." ECF No. 204, at 18-19.

## II. ARGUMENT

### A. NR and PL Should Not Be Compensated for Pre-Appointment Attorney Time Before Formation of the MDL and Appointment of MDL Leadership

Case law holds that counsel here should not receive compensation for work completed before the formation of the MDL. See *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 1474312 (N.D. Cal. Apr. 24, 2017) ("*Volkswagen*") (denying application for work performed prior to formation of the MDL).

Notably, in *Volkswagen*, an MDL where several firms had filed lawsuits, the court held:

> In "common fund" cases, a court may award non class counsel a reasonable attorney's fee ***only if*** counsel's work conferred a benefit on the class, as opposed to on an individual client [and that]…Non-lead counsel will have to demonstrate that their work conferred a benefit on the class beyond that conferred by lead counsel.
>
> \* \* \*
>
> [Here] Non-Class Counsel's filing of individual and class complaints prior to the MDL did not benefit the class. These cases were consolidated before this Court as part of a multidistrict litigation less than three months after the public disclosure of Volkswagen's use of a defeat device…. There consequently was little to any pretrial activity in the cases filed by Non-Class Counsel, and the filings alone did not materially drive settlement negotiations with Volkswagen.

*Volkswagen*, 2017 WL 1474312, at *4. *See also Auction Houses Antitrust Litig.,* No. 00-cv-0648, 2001 WL 210697, at * 4 (S.D. N.Y. Nov. 15, 2006) (denying fee motions seeking payment for pre-appointment time, stating that "the mere filing of complaints did not benefit the class . . .

11

[filing] duplicative complaint[s] . . . served no real purpose . . . There is no reason to compensate such piling on, much less create an economic incentive to repeat it.").

Here, none of the firms were paid for any work done before formation of the MDL and appointment of leadership. Nonetheless, NR and PL seek special treatment and compensation for pre-MDL leadership appointment time. NR and PL should not receive preferential treatment.

The same is true for all other pre-centralization fees that NR belatedly seeks. NR falsely claims that its MDL petition conferred a benefit on the class. Not true. NR's MDL petition sought to have the cases centralized in the District of New Jersey (where NR and PL are based) as opposed to the Northern District of Illinois. Indeed, centralization in New Jersey would have been detrimental to the class because Third Circuit precedent has an ascertainability requirement that would have been detrimental to the case (as it would make class certification nearly impossible), which the Seventh Circuit has specifically rejected. Compare *Carrera v. Bayer Corp.,* 727 F.3d 300, 306–09 (3d Cir. 2013)(reversing certification where consumers did not typically have receipts of purchases, holding that such a class was "unascertainable") with *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015)(rejecting *Carrera*, holding that: "The Third Circuit's approach in *Carrera*, which is at this point the high-water mark of its developing ascertainability doctrine, goes much further than the established meaning of ascertainability **and in our view misreads Rule 23**."). Accordingly, just as in *Volkswagen,* the NR Motion here should be denied.

NR erroneously relies on a Tenth Circuit case to support the flawed argument that pre-appointment work always confers a substantial benefit on the class. The Tenth Circuit case is a pre-PSLRA securities action in which the special master awarded independent counsel attorneys' fees for pre-appointment work. See *Gottlieb v Barry*, 43 F.3d 474 (10th Cir. 1994). The justification for the award, which was affirmed by the Tenth Circuit, was that certain non-leadership counsel vigorously prosecuted cases for sixteen months prior to appointment of other

12

counsel as leadership and contributed to the settlement with a high-quality work product. *Id*. In that case, the lead counsel acknowledged that the other counsel's work product benefited the class. *Id*. Lead counsel opposed the fee award because some of the t counsel's work was duplicative. *Id.*

*Gottlieb* also has been rejected as a precedent for awarding fees to all attorneys who perform pre-appointment work. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 190 (3d Cir. 2005) ("in determining who is entitled to attorneys' fees for pre-appointment work, the court's only consideration must be whether or not the attorney's work provided benefits to the class. The mere fact that a non-designated counsel worked diligently and competently with the goal of benefiting the class is not sufficient to merit compensation…To the extent that the Tenth Circuit's… decision in *Gottlieb*… is in tension with this holding, we reject *Gottlieb*' s suggestion that duplicative but useful work will always be compensable."). Indeed, when considering a fee request, the court should give "substantive deference" to lead counsel who "may well have a better sense of what early work was useful than will the court." *Id*. at 195. In order to merit compensation, the pre-appointment work must confer an "independent" and "substantial" benefit on the class:

> If a hundred lawyers each perform admirable but identical work on behalf of a class before the appointment of the lead plaintiff, the court should not award fees to each of the lawyers, as this would over incentivize duplicative work. Instead, while all of lead counsel's work will likely be compensable . . . other attorneys who merely duplicated that work – however notable their intentions, however diligent their efforts, and however outstanding their product – will not be entitled to compensation. Only those who confer an independent benefit upon the class will merit compensation.

*Id.* at 173.

**B. The Motion Should Be Denied Because It Violates This Court's Preliminary Approval Order and Is Untimely.**

On January 24, 2024, this Court issued its order granting preliminary approval of the settlement. ECF No. 192 ("Preliminary Approval Order"). The Court's Preliminary Approval Order directed that attorneys seeking compensation for fees and expenses submit their fee brief no later than June 17, 2024. *Id*. at 16. NR and PL received copies of this order on January 24, 2024.

The Motion by NR and PL was not filed until April 16, 2025, more than nine months after the deadline. As a result, NR and PL's fee request violates the Court's Order and is untimely and for this additional reason, should be denied.

Moreover, if NR and PL intend to argue that they did not file a fee motion by the deadline because they relied on the fee motion submitted by Class Counsel, then their argument is further undermined. Specifically, the fee motion timely submitted by Class Counsel stated that:

> Pursuant to this Court's Case Management Order No. 4, only time billed after the formation of the MDL and the appointment of leadership counsel, which was timely submitted to the Court, is included here.

*See* ECF No. 195 at 10 (June 17, 2024, Memorandum of Law in Support of Plaintiffs' Motion for Payment of Fees).

### C.  The Motion Should Be Denied Because It Includes Untimely Submitted Lodestar in Violation of the Court's Case Management Order.

In order to receive compensation for work requested by Leadership, counsel must follow all of the requirements of the court orders entered in the case. See *In re Fine Paper Antitrust Litig.*, 751 F.2d at 562 (no fee award because counsel violated the Pre-Trial Order), *In re Vioxx Products Liability Litig.*, 802 F.Supp.2d 740, 788-798 (E.D. La. 2011) (no fee award because independent counsel violated the Pre-Trial Order).

In the present matter, the Case Management Order required all counsel to submit **monthly** fee and expense invoices to leadership for work performed at the request of leadership. (See Case Management Order 4 (ECF No. 68) at 9). PL completely failed to submit monthly invoices to leadership as required by the Case Management Order. PL was aware of the requirements of the Case Management Order No. 4 (it received the Order through ECF) but simply failed to comply. Indeed, PL did not submit time until **after** the case had settled. In other words, PL violated the Court Order and did not submit time monthly and submitted time after the case settled.

PL might claim that it did not have notice that monthly submissions were required. What this means is that PL ignored the Court's Order. It is also belied by the following emails that clearly show that PL knew about the requirement of monthly time submissions:

> Attached is the spreadsheet you and your firm should use to submit your hours and expenses pursuant to the CMO entered by the Court. Each month by the 18th of the month please provide your time and expense report to me (Michael Reese); Rachel Soffin, Michael Williams and Carl Malstrom. Carl will then compile the time and expenses and send that report to the Court on the 21st of every month.

(Email of April 8, 2022, from Michael Reese to Randee Matloff, attached as **Ex. A**).

> Randee forwarded me the email below. We are co-counsel with Nagel Rice on the Revolinsky case filed in NJ. Attached is our report and our expense report for time through March 2022. Please let me know if you need any other information

(Email of April 18, 2022, from Joseph LoPiccolo to Michael Williams, attached as **Ex. B**).

Only after the case settled, PL requested fees in the amount of $14,205.00 from leadership. Leadership denied those fees because PL failed to submit its lodestar on a monthly basis to the Court in violation of this Court's Order (*See* ECF No. 68 at 9) Leadership's denial is proper.

## CONCLUSION

**WHEREFORE**, and for the foregoing reasons, leadership respectfully request that the Court deny Nagel Rice and Poulos LoPiccolo's requests for fees for pre-appointment tasks and Poulos LoPiccolo's untimely request for fees for work performed at the request of leadership, and for such other and further relief as the Court deems just and proper. No other firms were paid for pre-centralization time or untimely submitted lodestar, and it would be unfair to those firms to now give special treatment to the two firms—NR and PL—who failed to follow this Court's orders.

Date: June 6, 2025                             Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
mreese@reesellp.com

*/s/ Rachel Soffin*
Rachel Soffin
**PEARSON WARSHAW, LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, California 91403
rsoffin@pwfirm.com

*/s/ Michael A. Williams*
Michael A. Williams
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel: (816) 945-7110
Fax: (816) 945-7118
mwilliams@williamsdirks.com

*Court Appointed Co-Lead Class Counsel*